# Oscar Stilley

BOP #10579-062 Cimarron Correctional Facility, 3200 S. Kings Highway, Cushing OK 74023

January 28, 2025

Christopher Wolpert, Clerk
Attn:  Team 2
Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257-1823

**RECEIVED**
United States Court of Appeals
Tenth Circuit

**FEB 03 2025**

**CHRISTOPHER M. WOLPERT**
**Clerk**

Re:    *USA v. Stilley*
       10th Circuit Case No. 24-5133
       OKND Case # 4:09-cr-43 SEH

Dear Mr. Wolpert:

Enclosed please find an entry of appearance and a motion for remand of this case to the district court. Please cause these to be filed.

I haven't received a scheduling order, stating a deadline for the opening brief. I know your January 2, 2025 letter says a brief is due in 40 days of that letter, but an order entered the same day says, on page 2, that a briefing schedule will be entered at a later date. I assume that the enclosed motion will result in remand, and that there will be no briefing schedule until the matter is returned to the court of appeals for the prosecution of the appeal. Please let me know if that does not appear to you to be the case.

This private CoreCivic prison is breathtakingly inept (or worse) with the mail. I recently placed pleadings in the outgoing prison mail receptacle, addressed to the OKND district court clerk, marked "Legal Mail," on January 2nd. The envelope was postmarked the 8th. An inmate friend here tells me that this is standard operating procedure. Nothing the inmate does, up to and including hand delivery to the mail clerk, seems to make a difference. Please keep this in mind when you look at my signature dates, as opposed to the postmark dates on the envelopes.

Thanks very much for your kind assistance in these matters.

Kindest personal regards,

Oscar Stilley

Copy of this letter only to: Elissa Hart-Mahan, for herself and also for Katie Bagley, S. Robert Lyons, Joseph Syverson

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES                                    PLAINTIFF/APPELLEE

V.                          **Tenth Circuit Appeal No. 24-5133**
                            (OKND Criminal 4:09-cr-43 SEH-2)

OSCAR STILLEY                                    DEFENDANT/APPELLANT

**APPELLANT STILLEY'S VERIFIED MOTION FOR REMAND FOR
FINDINGS AND ORDER CONCERNING RELEASE PENDING APPEAL,
AND TO SUPPLEMENT THE RECORD, AND FOR DUE PROCESS
RELIEF**

Comes now Appellant Oscar Stilley (Stilley) and for his verified motion for

remand for findings and order concerning release pending appeal, and to

supplement the record, and for due process relief, and states:

1.      Stilley has not been able to make contact with opposing counsel in this

appeal. Indeed, Stilley has not yet received the paperwork which shows who has

entered appearance for the government on this appeal, but assumes that certain

lawyers copied with the Clerk's letter 1-2-2025 have entered appearance. Stilley

has exceedingly limited communication capacities, which make it vastly more

difficult to ascertain the position of opposing counsel.

2.      The District Court in the person of Stephen P. Friot, a judge of the Western

District of Oklahoma (OKWD) but **not** the Northern District of Oklahoma,

(OKND) entered its criminal judgment 11-13-2024, imposing 2 years

incarceration, denied self surrender, and denied stay pending appeal. District Court Docket (DC Dkt.) 816.

3.     The District Court did not make the findings required by pertinent statutes and rules, in support of an order or ruling granting or denying release pending appeal.

4.     Stilley filed a motion in District Court, filestamped 1-13-2025, requesting the necessary findings and a ruling on those findings, necessary and proper for a lawful decision concerning release/stay pending appeal. Dkt. 837. To the extent not prohibited by law or rule, Stilley incorporates that pleading and any exhibits as if set forth herein word for word.

5.     Stilley simultaneously filed a motion in District Court, requesting that the matter be decided by a district judge of the US District Court for the Northern District of Oklahoma (OKND). Dkt. 836. To the extent not prohibited by law or rule, Stilley incorporates that pleading and any exhibits as if set forth herein word for word.

6.     Later that week Judge Friot removed himself from Stilley's criminal case and other cases. Judge Friot did not mention Stilley's motion or assign that motion as a reason for his action.

7.     The Honorable Sara E. Hill was thereupon assigned to Stilley's district court criminal case.

2

8.      Judge Hill entered an order the same week, saying that the district court had lost jurisdiction to the 10th Circuit, due to Stilley's notice of appeal.

9.      Stilley filed his notice of appeal out of fear that jail or prison authorities would prevent him from filing within the 14 day time period.

10.     If Stilley had not had this fear and had not been deprived of reasonable access to the courts, he would have filed the motions[1] that appear as Docket 836 and 837 prior to filing the notice of appeal. However, Stilley would not under any circumstance allow the 14 days to expire without 1) a filemarked notice of appeal, or 2) ironclad assurances that his right to appeal would be preserved and could be prosecuted after the conclusion of proceedings related to release pending appeal.

11.     Stilley's motion for a lawful judge (Dkt. 836) includes solid evidence that Judge Friot engaged in ex parte communications with counsel for Stilley's adversary. Counsel for the government tacitly admitted as much in an email to Stilley, attached as Exhibit "1" to that motion. This email is also attached as Exhibit "1" to this motion. All exhibits to this motion are incorporated herein as if set forth herein word for word.

---

[1]     Stilley does not have filemarked copies of these pleadings, nor does he have access to the docket (or anything else) online. Stilley prays the Court's indulgence if he uses the wrong docket number.

3

12.    Stilley also filed a motion to disqualify Judge Friot prior to the felony criminal trial 11-13-2024. DC Dkt. 815. Judge Friot denied this motion without requesting a response from the government, whether oral or written.

13.    Stilley was and still is entitled to have the stay/ release pending appeal decision made by a disinterested and impartial tribunal.

14.    Judge Friot was not a disinterested and impartial judge.

15.    Nor did Judge Friot project the public appearance of a disinterested and impartial judge, in Stilley's criminal proceedings.

16.    Stilley's right to an impartial tribunal requires that this cause be remanded to District Court for the required findings and for a decision on stay/release pending appeal, by 1) a judge authorized by statute and rule to make such findings and decisions, and 2) by an impartial tribunal, within the meaning of applicable law.

17.    Stilley in his district court motion docketed as 836 proved that Judge Stephen P. Friot had made a *de facto* order in an *ex parte* communication with counsel for the government.

18.    Stilley does not know the date or the exact terms of this *ex parte* order. Nor is this order actually reflected in the official records below, or on this appeal.

19.    Stilley needs to seek and obtain proper proceedings at the district court below, to ascertain the date and terms of the *ex parte* order, so that such will be part of the official record on appeal.

20.    The unjust terms and conditions of Stilley's current incarceration drastically

reduces Stilley's litigating capacity, and drastically reduces Stilley's chances of

obtaining just and complete relief on this appeal.

21.    Stilley prepared and submitted a two page list of due process deficiencies at

Cimarron Correctional Institution. Exhibit "2."

22.    On 12-19-2024 Stilley met with Mr. Thomas, Chief of Security for

Cimarron Correctional Facility. Mr. Thomas gave Stilley a receipt for the 2 pages,

and said that the 2 pages would be transmitted to CoreCivic corporate offices for a

decision. The receipt is basically illegible save for signatures and dates, but is

nevertheless attached hereto as Exhibit "3."

23.    Page 37 of the current version of the Cimmarron Correctional Facility

Inmate Handbook is attached hereto as Exhibit "4." This page demonstrates that

the maximum specified time for an administrative remedy response by correctional

or corporate personnel is 20 days.

24.    On information and belief, Stilley has exhausted all administrative remedies

"available" to him within the meaning of the law, concerning the due process

claims raised herein.

WHEREFORE, Stilley respectfully requests that this Court remand this cause to

the district court, for

1) particularized findings and for a decision on the question of stay/release pending appeal;

2) findings and ascertainment of the date and specific terms of Judge Friot's *ex parte* order attached hereto as Exhibit "1;"

3) findings and ascertainment of the date and specific terms of any other *ex parte* orders by Judge Friot, thoughout the conduct of the litigation below;

4) and furthermore that this 10th Circuit Court order *or recommend* that Stilley's custodians permit Stilley's receipt and use of his own property for the preparation of legal pleadings, or otherwise compel or encourage CoreCivic to provide the due process upgrades contemplated by Exhibit "2," in whole or in part;

5) and for such other and further relief as may be appropriate, whether or not specifically requested.

## VERIFICATION

Comes now Defendant Oscar Stilley pursuant to 28 USC 1746 on the date stated below and by his signature set forth below declares under penalty of perjury that the foregoing facts are true and correct to the best of Stilley's knowledge and belief.

Respectfully submitted,

By: _____          *1-28-2025*
Oscar Stilley, BOP #10579-062, *Pro se*          Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

## BRIEF IN SUPPORT OF MOTION

**1.    STILLEY IS ENTITLED TO A RELEASE DECISION AND FINDINGS BY AN IMPARTIAL AND LEGALLY AUTHORIZED JUDGE.**

Appellant Oscar Stilley (Stilley) was entitled to an impartial judge, *at the district court. Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927).

Stilley did not receive a trial[2] before an impartial tribunal. He did not receive the required consideration of his stay/release pending appeal decision by a judge of the district court having jurisdiction – which is his right.

Stilley has (to the extent of legal propriety) incorporated district court dockets #836 and 837 herein as if set forth word for word.[3] Perish the thought that Stilley would needlessly increase the word count, but the following statutes make it clear that Stilley is entitled to findings and an order regarding stay/release pending appeal, by the newly assigned US District Judge Sara E. Hill.

18 USC 3145. **Review and appeal of a release or detention order**

---

2      Stilley's adversaries prefer the term "hearing," as a means of evading constitutional rights that attach to a felony criminal trial.

3      This Court "may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

(a) Review of a release order.   If a person is ordered released by a magistrate [United States magistrate judge], or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court--

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

(b) Review of a detention order.   **If a person is ordered detained** by a magistrate [United States magistrate judge], **or by a person other than a judge of a court having original jurisdiction over the offense** and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

(Emphases added)

Federal Rule of Appellate Procedure (FRAP) sets out the requirements:

**Rule 9. Release in a Criminal Case**

(a) Release Before Judgment of Conviction.

(1) The district court **must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case**. A party appealing from the order must file with the court of appeals a copy of the district court's order and **the court's statement of reasons** as soon as practicable after filing the notice of appeal. An appellant who questions the factual basis for the district court's order must file a transcript of the release proceedings or an explanation of why a transcript was not obtained.

(2) After reasonable notice to the appellee, the court of appeals must promptly determine the appeal on the basis of the papers, affidavits, and parts of the record that the parties present or the court requires. Unless the court so orders, briefs need not be filed.

(3) The court of appeals or one of its judges may order the defendant's release pending the disposition of the appeal.

(b) **Release After Judgment of Conviction**.  A party entitled to do so may obtain review of a district-court order regarding release after a judgment of conviction by filing a notice of appeal from that order in the district court, or by filing a motion in the court of appeals if the party has already filed a notice of appeal from the judgment of conviction. **Both <u>the order</u> and the review are subject to <u>Rule 9(a)</u>**. The papers filed by the party seeking review must include a copy of the judgment of conviction.

(c) Criteria for Release.  The court must make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, and 3145(c).

(Emphases added)

The Federal Rules of Appellate Procedure *require* Stilley to provide this court with a statement of reasons, set forth by the district court. How else could the appellate court efficiently review the release decision below? Yet District Judge Friot made no such statement of reasons.

Even if Judge Friot had made such a statement of reasons, that's not good enough. *Tumey* and progeny make it clear that Stilley was and still is entitled to an impartial judge *at the district court*. Stilley is entitled to his bite at the apple in district court. If that doesn't work out, he is entitled to a second bite at the apple, in the court of appeals. This motion is Stilley's effort to get his *first* bite at a lawful

apple. Stilley is fully convinced that this first bite will render the second bite at the apple unnecessary – provided that external forces do not materially degrade his litigation capabilities.

Stilley is entitled to a ruling on the motion for stay/release pending appeal by 1) an impartial district court judge, and 2) a judge lawfully qualified by federal statutes and rules. He is equally entitled to a ***statement of reasons*** by such impartial and duly qualified judge.

The fundamental essence of due process is the right to be heard in a meaningful time and a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965). Refusal to speak when speaking would force a concession does not comport with due process.

The only reason Stilley has been convicted and served any time whatsoever is the fact that the government has switched legal theories as often as they feel like switching their theory. Once they have multiple theories in play they refuse to commit to ***any*** theory.

Stilley filed a motion for a true and correct record on the first as well as the second revocation petition. DC Dkt. 749, 808. Both times the request was denied.

Remand is required by due process – and also outcome determinative. The government has refused to commit to a theory of criminal liability, precisely because they know that committing to a theory – any theory – is fatal to their

cause. Consider the pretrial and sentencing theories, and why findings sufficient for a release decision also guarantee a showing that Stilley is 1) both factually and legally innocent, and 2) legally entitled to reversal and dismissal of any and all judgments of conviction against him.

The pretrial theory was that Stilley's co-defendant Lindsey Springer earned money and that Stilley paid the money to him at the direction of Stilley's clients. The problem with that theory, for the government, is that it proves that Stilley is innocent, not guilty. The government switched their theory of liability after a *sua sponte* dispositive motion deadline *for a reason.*

The sentencing theory of "stealing" is no better. For one it is an admission that the government abandoned the purported indictment wholesale. For another, there is ***absolutely no evidence*** that Stilley stole anything or helped anyone else steal anything. Indeed, the evidence is to the indisputably to the contrary.

That's why Judge Friot engaged in unethical *ex parte* communication with counsel for the government, and then lied about it from the bench. That's why Charles O'Reilly sat silent, failing to speak up to correct the record. If the government has to take a firm and fixed position about the core issues of this case, they *necessarily* lose.

## 2.    REMAND FOR SUPPLEMENTATION OF THE RECORD IS ALSO REQUIRED.

The record on appeal is defined in Federal Rule of Appellate Procedure (FRAP) 10. Those parts pertinent to this case are reproduced below.

(c) **Statement of the Evidence When the Proceedings Were Not Recorded or When a Transcript Is Unavailable**.

If the transcript of **a hearing** or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

…....................

(e) **Correction or Modification of the Record.**

(1) If any difference arises about whether the record truly discloses what occurred in the district court, the **difference must be submitted to and settled by that court** and the *record conformed accordingly.*

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the **omission or misstatement may be corrected and a supplemental record may be certified and forwarded:**

(A) on stipulation of the parties;

(B) by the district court *before or after the record has been forwarded*; or

(C) by the court of appeals.

(3) All other questions as to the form and content of the record must be presented to the court of appeals.
(Emphases added)

The party asserting an issue on appeal has the duty of providing the appellate court with an adequate record on appeal. *United States v. Dago*, 441 F.3d 1238, 1251 (10th Cir. 2006); *Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist.*, 226 F.3d 1170, 1175 (10th Cir. 2000); *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1550 (10th Cir. 1991). Any discrepancies in the record are resolved in Appellee's favor. *Arkla Energy Resources v. Roye Realty and Developing, Inc.*, 9 F.3d 855, 865 (10th Cir. 1993).

This Court's Local Rule 1.4 is explicit, providing as follows:

> **10.4   Content of record.**
>
> **(A)      Essential items.** Counsel must designate a record on appeal or prepare an appendix that is sufficient for considering and deciding the appellate issues. Only essential parts of the district court record should be designated for the record on appeal.
>
> **(B)      Inadequate record.** The court need not remedy any failure by counsel to designate an adequate record or to prepare an adequate appendix. **When the party asserting an issue fails to provide a record or appendix sufficient for considering that issue, the court may decline to consider it.**
> (Emphasis added)

## 3.      THIS COURT SHOULD ALSO COMMAND OR AT LEAST RECOMMEND THAT THE GOVERNMENT NOT CAUSE OR

**PERMIT ANY MATERIAL DIMINUTION OF STILLEY'S LITIGATION CAPACITY.**

District Judge Friot stated from the bench that he could have sentenced Stilley to 2 years on each of 3 counts to run consecutively, for a total of 6 years.[4] He also denounced Stilley as a fraud, now as much as he was at the original 2010 sentencing. That proves that in Judge Friot's mind, Stilley was subjected to jeopardy for the third time on counts 1, 3, and 4 of the original purported indictment. The slightest violation of any condition of supervised release whatsoever, in Judge Friot's mind, seems to be enough for a prison sentence up to the max revocation sentence, for each of the original counts. That puts all three indictment counts against Stilley into play, on this appeal, as to all three criminal judgments entered against Stilley.

Remand thus puts the government into the unenviable position of trying to show record evidence to support the findings to the effect that Stilley stole or helped steal money. There is no such evidence. In fact, there is direct evidence to the contrary – which Stilley can prove from the record – if he has reasonable facilities for his defense. The government likewise has to provide plausible proposed findings for irrefutable Stilley's 6th Amendment claim, as well as a host of other meritorious defense claims that may be raised on appeal.

---

4       Stilley doesn't yet have the transcripts available to him, and thus must  proceed on the basis of memory.

14

The government has put Stilley into a "trick bag." Stilley is an authorized electronic filer at this court as well as the District Court below. Indeed, Stilley is an authorized electronic filer in other state and federal courts as well.

Stilley is in the custody of the US Marshals, who have contracted with CoreCivic, a private corporation which operates Cimarron Correctional Facility, (Cimarron) where Stilley is confined.

Cimarron's law librarian allows Stilley about 3 hours, 3 days a week.[5] When the substitute librarian serves, inmates are allowed 7-8 hours per day, 4 days per week, and about 4-5 hours the other day, in order to allow female inmates library access for a short time, one day a week. At present, Stilley's litigating capacity is about 10 to 20% of what it would be, if he were not in custody.

Cimarron does not allow electronic filing. The law librarian has a computer with internet access. Stilley could file his pleading in scant minutes, under the watchful eye of the librarian, if he was given authorization. Thus far this has been denied, but this might change if CoreCivic's evil deeds were brought to the light of day.

Cimarron grotesquely delays the US mail. Stilley's DC Dkt. 837 was placed in the outgoing mail receptacle on 1-2-2025. It was postmarked the 8[th,] and filemarked the 13th. This is standard operating procedure at this facility. Incoming

---

5       At first it was only 2 days per week. After a lengthy ordeal to prove his pro se status, he started getting 3 days per week.

mail delivery is delayed similarly. Mail amounts to a roughly 10 day ordeal, in both directions.

Responses to motions at the district court are due within 7 calendar days. OKND LcrR47-2. That's not unreasonable with electronic service and electronic filing. But how can a litigant follow those rules when his or her due process rights are stomped out by a private corporation, greedy for filthy lucre? How does one respond to a motion within seven days when the motion won't even be *delivered* in seven days?

Just this summer, Stilley routinely used his FedEx account to ship via FedEx Priority overnight packages, in Arkansas Supreme Court CV24-453, an original action petition. This was necessary (and done) only until Stilley qualified for electronic filing in Arkansas courts.

Electronic filing is not allowed at this facility. Electronic noticing and electronic filing would be easy – if respect for due process was any part of the goal. Stilley's hands routinely come within a foot of the keyboard that he could use for electronic filing, if that were permitted. The librarian could look over Stilley's shoulder, watching every keystroke, as he electronically filed his pleadings.

In Ark. Sup. Ct. CV24-453, Stilley moved to suppress the original judgment, DC Dkt 338, as well as the first revocation judgment, DC Dkt. 752, on 6th Amendment grounds. The 5 lawyers assigned to the case all defaulted on those

16

motions. See DC Dkt. #805, which is roughly comparable pleading to the Arkansas Supreme Court pleading. See DC Dkt. 809 for the motion to vacate DC Dkt. 338. In the instant case, the government likewise defaulted on Stilley's motions to vacate both of these judgments.

Charles O'Reilly, counsel for the government, stated in a November 11, 2024 email that:

> [T]he Court notified the United States it needn't respond to your motions. I will see you Wednesday at 9:00 a.m. in Tulsa.

Stilley believes that the *ex parte* order issued by Judge Friot is far from the only *ex parte* order that he has issued in the proceedings below. However, Stilley is extremely handicapped by the absurd limitations of this facility. Imagine the frustration of knowing that a motion has been filed, but that Stilley probably won't even see it for 10 days. Imagine the frustration of being in a place in which all work-arounds have been blockaded, with the apparent intent to crush due process and peaceful petition.

Stilley owns all the equipment, supplies, and software or software licenses necessary to quickly prepare first class pleadings. If he was allowed to possess and use this equipment in his prison housing unit, with access to the internet,[6] his

---

6    They have internet in the inmate housing units, which is used for the inmate tablets. (The tablets cannot be used to draft pleadings.) Stilley would only need access credentials, to use this internet access for his rights of due process and peaceful petition.

litigating capacity would be essentially equivalent to his litigating capacity at home. The famous rapper Sean "Diddy" Combs possesses a laptop in his jail cell. Eric Robert Rudolph, the infamous Atlanta Olympics and abortion clinic bomber, was allowed to keep a laptop in his cell for the purpose of collaborating with his lawyer. Why can't Stilley have his own laptop to draft and file his own *pro se* pleadings?

The upcoming district court proceedings may be the most momentous and consequential proceedings of Stilley's criminal ordeal. Yet the core issue on the table – release pending appeal – will upon proper resolution restore Stilley to his full litigation capacity. Stilley hopes to be able to possess and use his own property and rights to property *for those critical proceedings*.

Stilley has exhausted all remedies "available" within the meaning of the law. *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 195 L. Ed. 2D 117 (2016). Stilley's final remedy to CoreCivic corporate offices, dated 12-19-2024, has been pending for twice the maximum amount of time specified in the current inmate handbook, for any official response to an administrative remedy request. See Exhibit "4" hereto. The "staff response" is virtually illegible on Stilley's only copy, but the date is plain, and the "unresolved" status is at least marginally legible. See Exhibit "3" to this motion.

If CoreCivic or any of its enablers feel themselves aggrieved by this request for a judicial remedy, they should come prepared to explain the willful and extensive delays in both incoming and outgoing mail, the absence of any more speedy methods of delivery, in conjunction with their suppression of any capacity to transmit documents electronically, whether by email or otherwise. They should come prepared to explain why an extensive set of behaviors that appear to lawlessly increase corporate revenues at the expense of due process are really just isolated circumstances not motivated by any unlawful purpose.

Of course, they should also consider the possibility of adopting an honest and honorable approach at this late hour. Stilley would be most delighted if counsel for the government, in response to this motion, could report to the Court that due process is now fully and fairly protected at all CoreCivic facilities, through an agreement that has the express blessing of Stilley.

Stilley emphatically does not wish to unduly delay the decision of this motion for remand. If an order would unduly complicate the matter, Stilley most respectfully requests a recommendation, or at least some language indicating that this 10th Circuit Court of Appeals supports the right of inmates to reasonably access the courts, using their own equipment.

Words have power. The words of the members of this august tribunal have enormous power. The words of counsel for the government likewise have massive power, both hard and soft.

## CONCLUSION

This Court should remand this case for a stay/release pending appeal decision with appropriate findings, and furthermore for supplementation of the record. This Court should also include an order or recommendation to the effect that the government should not procure or permit any material diminution of the litigating capacity Stilley possessed prior to going to prison.

Respectfully submitted,


By: _____            1-28-2025
Oscar Stilley, BOP #10579-062, *Pro se*         Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

### CERTIFICATE OF SERVICE

Stilley hereby certifies that on the date stated above he filed this pleading using the CM/ECF system, whereby all interested persons using CM/ECF will be served with this pleading.

### CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS

I, Oscar Stilley, by virtue of my signature above, certify that I produced this brief in an unknown version of OpenOffice Writer, that I have performed a word count, and that this motion has 4,519 countable words, which is less than 5,200 words.

 Gmail

Oscar Stilley <oscarstilley@gmail.com>

## Schedule for responses to motions
1 message

**Oscar Stilley** <oscarstilley@gmail.com>
To: Charles O'Reilly <charles.a.o'reilly@usdoj.gov>

Mon, Nov 11, 2024 at 9:30 AM

Dear Charles:

Can you give me estimates of when you might file responses to my pending motions?

Thanks,

Oscar



--
Oscar Stilley
10600 North Highway 59
Cedarville, AR 72932
479.384.2303 cell phone
oscarstilley@gmail.com
www.bustingthefeds.com

 Gmail

Oscar Stilley <oscarstilley@gmail.com>

## RE: [EXTERNAL] Schedule for responses to motions
1 message

**O'Reilly, Charles A. (TAX)** <Charles.A.O'Reilly@usdoj.gov>
To: Oscar Stilley <oscarstilley@gmail.com>

Mon, Nov 11, 2024 at 9:46 AM

Mr. Stilley:

The Court notified the United States it needn't respond to your motions.
I will see you Wednesday at 9 a.m. in Tulsa.

Take care.

Charles O'Reilly

Trial Attorney

## LIST OF UPGRADES

**COMPUTER UPDATES**

Exhibit "2"

1. Update the computers so that all of them accept USB thumb drives.
2. Give all inmate computers direct access to the printers. It is beyond absurd to criticize personnel for not having tech credentials and not make this elementary efficiency upgrade. These machines have had this byzantine system for at least the last 2 years, for no lawful reason.
3. Get 3 spare computers, so upgrades don't disturb the flow of work. Upgraded machines can be rotated in with virtually no interruption. Most online subscriptions will tolerate a reasonable schedule of having the machine online for upgrades to the software. Of course, with suitable tech personnel the upgrades can be done online, a massive improvement in efficiency.
4. Move the law library to the big room near the entrance. Keep the old law library for females.
5. Add enough computers to stock the new men's law library. Keep the existing machines where they're at. If money's an issue please say what it would take to acquire sufficient suitably equipped machines.
6. Add personnel (including at least one with computer tech support proficiency) sufficient to support law library operations 8:00 AM - 8:00 PM Sunday through Thursday, and Friday 8:00 AM to 5:00 PM, except federal holidays. We've had huge downgrades in the amount of usable time in the library. The resource was already insufficient for a 1,600 inmate facility, under the best of circumstances. Also, lack of tech skills has been cited for getting rid of personnel, yet we have issues that could be fixed in 5 minutes tops, by a tech savvy person, or even someone who can do basic computer work with the assistance of a learned inmate.
7. Give every inmate at least 1 gigabyte of password protected networked file storage, supplemental to the use of thumb drives. With suitably qualified personnel, the same result could be had by using OneDrive or similar service to share the necessary files. This would be faster and save time and trouble for the mailroom.

**BOOKS AND SUBSCRIPTIONS**

8. Get sufficient Microsoft subscriptions, to equip all inmate computers. One family plan will support up to 6 computers for $99 per year on the annual plan. It doesn't have to be online to work. This isn't costly, it is highly educational, and it would cost CoreCivic nothing as long as the inmates are allowed to pay the cost. Proficiency with Microsoft Word or other parts of the Microsoft Suite are required for many jobs. OpenOffice is not professional software, and is not recognized in the business world.
9. Maintain subscriptions to Adobe Acrobat full edition for at least half of all inmate computers. A current one seat subscription is about $24 per month, it's not a big issue and the inmates would pay if that's permitted and required to get access to the software.
10. Allow the inmates to pay for paper, toner cartridges, Ibico punch/bind machine, Ibico combs, clear covers, cardstock, etc., and use them as needed so long as the inmates pay to keep everything replaced.
11. Publish the list of the authorized booksellers in each housing unit.
12. Provide procedures to ensure that inmates have access to law and law related books, at prices not to exceed the customary cost for a similar book on Amazon, in good condition or better.
13. Move outdated legal resources (Federal Criminal Code and Rules) to the housing units, distribute them to where they're most needed. Save shelf space, they'll get more use.

14. Get current versions of the Federal Criminal Code and Rules (Thomson Reuters) and USSG Sentencing Guidelines, and allow inmates to acquire copies for their use in the housing units, at the customary cost on Amazon, for a similar book in good condition.

## ACCESS TO FILES AND INFORMATION

15. Publish the procedures for receiving thumb drives containing pleadings, dockets, discovery, transcripts, form pleadings, etc. Also include instructions for sending thumb drives out in order to allow friends and family to file pleadings, print material, solicit expert advice and assistance, etc. Also cover the procedure for mailing out thumb drives when departing this institution, to ensure that work product is not lost. This should be posted in each housing unit. Inmates should be allowed to maintain at least one backup copy for at least 90 days after leaving the institution, in case of loss or failure of the media.

16. Publish the procedures for getting free legal calls to lawyers, and for pro se litigants also to court clerks, opposing counsel, and other persons or entities necessary or proper for the efficient conduct of litigation. This should be posted in each housing unit.

17. Allow the inmates to subscribe to PACER and PACERPRO and do batch downloads so as to maintain a current docket and all docket items in the criminal case and any civil litigation to which they're a party or in which they may have an arguable legal interest. Any computer savvy employee would be able to monitor every keystroke and ensure that the computers aren't misused. This would increase efficiency and cut down on the volume of paper going through the mail room.

18. Allow pro se inmates with electronic filing privileges to file pleadings electronically, and also to check their cases at least every other day, to ensure that they don't miss any filing or miss any deadlines. Once again, total monitoring and oversight isn't even difficult. This does not raise material security concerns if qualified personnel is available.

## EQUIPMENT NEEDED

19. We need an Ibico hole punch machine for the men's law library and another for the women's law library. A good one can be had on Ebay for less than $100. New ones aren't that much more, but make sure you're getting a good one, not an off brand piece of junk.

20. We need a workhorse sheet feed scanner, duplex capable, for both law libraries. Inmates will be able to scan and save papers, thus reducing work for the mail room as well as personnel processing inmates into and out of the institution.

## OPENING LINES OF COMMUNICATION

21. Enable the use of the tablets in the housing units to make requests to staff, file grievances, etc.

22. Create a procedure for identifying tablets with disabled functions, so full functionality can be restored.

23. Get full size keyboards that will pair with the tablets for efficient drafting and editing of inmate requests, etc. The tablets do support that function.

24. Acquire sufficient tablets to ensure that there is not excessive competition for the use of a tablet.

14-105A (USMS)

**Dates and times of contact with staff members concerning the inmate/resident's issue:**

_Exhibit "3"_

**Additional information received from meetings with staff members:**

**STAFF RESPONSE:**

**Tentative completion date if remedy suggested:**_____

**Completion of Informal Resolution Process:**

**By signing below, the inmate/resident verifies agreement with the remedy suggested above. If the inmate/resident is not satisfied with the remedy suggested above, the inmate/resident is not required to sign below and may choose to file a formal grievance with the Facility Grievance Officer. In either case, the inmate/resident will receive a copy of this form on the day the final resolution process is completed.**

Inmate Signature:_____     Date:_12-19-2024_

Designated Staff Signature:_____     Date:_____

*Witness Signature:_____     Date:_____

*In the event the inmate/resident refuses to sign this form, a witness signature must be obtained to verify that the inmate/resident was offered the opportunity for informal resolution.

**Informal Resolution Outcome:**     ☐ **RESOLVED**     ☐ **UNRESOLVED**

INMATE/DETAINEE HANDBOOK
CIMARRON CORRECTIONAL FACILITY

Barring extraordinary circumstances, a grievance will be considered settled if the decision at any step is not appealed by the inmate/detainee within the given time limit.

*Exhibit "4"*

## Informal Resolutions (form 14-105A):

Detainees may use the informal resolution process concerning questions, disputes, or complaints before submitting a formal grievance. If a detainee is not satisfied with the results of the informal resolution process, the detainee may file a formal grievance. Detainees may bypass or terminate the informal resolution process at any point and proceed directly to the formal grievance process.

1. The 14-105A Informal Resolution form must be utilized to initiate the informal resolution process.
2. All 14-105As related to medical care and treatment must be submitted to qualified health services staff through facility mail and/or designated grievance mailboxes.
3. With the exception of grievances related to medical care and treatment, detainees are required to submit 14-105A through facility mail, in person, via designated grievance mailboxes, or to the appropriate unit staff. In the absence of unit management, the Warden/Administrator will designate a staff member to receive informal resolution forms.

The staff member assigned to complete the informal resolution process will be responsible for:

1. Conducting an initial meeting with the detainee to discuss the issue
2. Meeting with all staff members involved with the issue
3. Researching necessary information to determine if a remedy is possible (staff investigation procedures)
4. Developing a response to present to the detainee to resolve the issue informally (appropriate response to grievances).
5. Ensuring the detainee receives a copy of the completed 14-105A at the time the response is provided

## Formal Grievances (form 14-105B):

1. A Formal Grievance is used to appeal the decision given on the Prisoner Information Request (if submitted) or to begin the grievance process.
2. The 14-105B Inmate/Detainee Grievance form must be used to file a formal grievance.
3. The inmate/detainee will complete Page 1 of the 14-105B, including signature, and place it in the grievance box. The inmate/detainee will maintain the pink copy.
4. Inmates/Detainee in Segregation/Restrictive housing have access to the grievance box while going to showers and/or outside recreation.

### The Process:
1. The detainee must:
   a. Fill out the 14-105B form completely
   b. Remove and retain the pink copy
   c. Place remaining two copies (White and Yellow) in the locked Grievance box
2. The assigned staff will have three (3) business days, from the date the 14-105B is picked up to respond to the detainee. A copy of 14-105B will be given to the detainee when the resolution is presented for signature.
3. In the event that the inmate/detainee is not satisfied with the response, the inmate/detainee will have fifteen (15) calendar days from the date 14-105B was signed, to submit an appeal.
4. The Warden (or designee) will have twenty (20) calendar days to provide a response on the appeal. **Note:** This is considered the first level of appeal.
5. If the inmate/ detainee is not satisfied with the first appeal's decision to the Warden/Facility Administrator, a 2nd level appeal can be submitted by completing a 14-105B, addressed to the Division Managing Director.
6. The 2nd level appeal must be submitted within fifteen (15) calendar days from receipt of the 1st level appeal response.
7. Upon receipt of the Division Managing Director's response, the attempt to administratively resolve the issue will be considered exhausted.

### Emergency Grievances:
1. If the subject matter of the grievance is such that compliance with the regular time guidelines would subject the inmate/detainee to risk of personal injury, the inmate/detainee may request that the grievance be considered an emergency grievance.
2. The emergency grievance must detail the basis for requiring an immediate response.
3. When the grievance is an emergency, use of the informal resolution process is not required.
4. The 14-105B Inmate/Detainee Grievance form must be used to file an emergency grievance.

Oscar Stilley 10371-002
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023



Scanned by
US Marshal

Legal Mail

Christopher Wolpert, Clerk
10th Circuit Court of Appeals
1823 Stout Street
Denver, CO 80257-1823

CONFIDENTIAL

Legal Mail

This correspondence is from an offender housed at Cimarron Correctional Facility. The facility is not responsible for substance or content.