UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES                                   PLAINTIFF/APPELLEE

V.              **Tenth Circuit Appeal No.  24-5133**
(OKND Criminal 4:09-cr-43 SEH-2)

OSCAR STILLEY                                   DEFENDANT/APPELLANT

**APPELLANT STILLEY'S VERIFIED MOTION FOR DETERMINATION OF WHETHER ANY BRIEFING DEADLINE EXISTS, IF SO WHEN, FOR EXPEDITED ASSIGNMENT OF A THREE JUDGE PANEL, AND OTHER RELIEF**

Comes now Appellant Oscar Stilley (Stilley) and for his verified motion for determination of whether any briefing deadline exists, if so when, for expedited assignment of a 3 judge panel, and for other relief, and states:

1.      Stilley on 1-30-2025 was abruptly and without notice shipped to Greene County Jail in Springfield, Missouri. He remained there for three weeks and was returned to Cimarron Correctional Facility. No reason, legitimate or otherwise, was given for these movements.

2.      Stilley refused to eat, primarily in protest of extreme acts of suppression of constitutional due process rights.

3.      Stilley was placed in "Male Watch," a housing unit that involved solitary confinement, lights 24/7, denial of virtually all communication with the outside world including court personnel, and sensory deprivation. It took about 5 days just to get a

bible.

4.    Stilley skipped 21 consecutive meals and then ate, on Thursday, February 6, 2025.

5.    Jail personnel refused to allow Stilley to leave "Male Watch" until after close of business Tuesday, February 11, 2025.

6.    At that time Stilley's housing unit was full and it was nearly impossible to get time on the phones, especially considering the fact that Greene County Jail locks the inmates down for much of the day, refuses to issue headphones for the tablets, and engages in myriad other actions plainly designed to crush constitutionally protected due process rights.

7.    For example, paper is listed on commissary, but it is out of stock, has been for a long time, and will be out of stock indefinitely. Greene County treated paper as contraband and did not allow Stilley to acquire, possess, or use any during his stay at that jail, despite repeated polite request, both orally and in writing. Stilley had paper in the legal papers brought along with him but was not allowed to access or use his own blank paper, for any purpose.

8.    At Stilley's request, his legal papers were brought to his cell on a cart by a jail employee named Ms. Rhodes. She scanned the documents, shredded the originals, and gave the (rather skewed) copies to Stilley. Stilley asked Ms. Rhodes if she could give him some of the copy paper on her cart. Ms. Rhodes responded that giving paper to an

inmate was a firing offense. On another occasion another employee stated that if an inmate obtained paper without authorization it would be confiscated as contraband.

9.      Prior to departure to return to Cimarron on 2-20-2025, Stilley put the copies of his legal papers back in his satchel and gave them to personnel to be sent back to Cimarron with him.

10.     As of Thursday, 2-27-2025, Stilley still doesn't have any of his legal papers. He is being told that efforts are being made to find them, in Receiving and Discharge. Stilley has been cobbling together a new sheet of phone numbers and other important information.

11.     Stilley as soon as possible on February 12, 2025 inquired of "Michael" in the office of the Clerk of this Court, and was informed that the deadline for his appellate brief had expired the previous day.

12.     Stilley asked when the last transcript was filed. Michael told Stilley that the last transcript was filed on January 30, 2025. When Stilley asked whether he should be entitled to 40 days from completion of the record, Michael responded, almost apologetically, to say that the court's computer records indicated that the time for filing the opening brief had expired the previous day, but that Stilley could nevertheless file a motion to extend that time.

13.     Stilley called Elyssa Hart-Mahan, one of four lawyers for appellee United States, asking whether the government would oppose an extension of time for Stilley to file his

brief. Stilley briefly explained the circumstances.

14.    Ms. Hart-Mahan explained that her managers had instructed her to oppose any extension of time for Stilley to file his opening brief. Thus Stilley would not be authorized to say that the government didn't oppose an extension of time to file the opening brief.

15.    Upon his return to Cimarron Correctional Facility, Stilley discovered that prison officials now claim that all of Stilley's papers were somehow lost in transit. They say that they are looking for them.

16.    Stilley has neither possession of nor access to so much as one order, motion, or other official paper concerning this appeal, save and except those documents that he prepared and filed himself, which he has on a thumb drive.

17.    Stilley at the present time has possession of none of the transcripts from the proceedings below.

18.    Trevor Reynolds was Stilley's standby lawyer at district court, and the lawyer who was appointed to get this appeal ready for Stilley to prepare the opening brief *pro se*.

19.    This Court upon granting the motion to proceed *pro se* ordered Mr. Reynolds to provide a set of his appeal paperwork to Stilley. Stilley has no reason to believe that Mr. Reynolds is operating with anything less than full competence and diligence.

20.    Stilley has received nothing from Mr. Reynolds subsequent to his termination from the case. Stilley on 2-26-2025 called the law office of Mr. Reynolds, and was told

that he was out of the office until March 10, 2025. His personnel weren't immediately able to inform Stilley about any mailings to Stilley.

21.    Stilley procured a mail log including all incoming and outgoing mail for Stilley for 2025. This mail log is attached as Exhibit "1" and incorporated herein as if set forth word for word.

22.    From the mail log it is plain that Stilley received mail from Mr. Reynolds 1-7-2025. However, this was taken from Stilley during the trip from Greene County Jail to Cimarron, and hasn't been returned to Stilley's possession.

23.    Furthermore it is plain to see that although Stilley returned to this prison February 20, 2025, official mail from the US Department of Justice, Tax Division, and from the 10th Circuit Clerk, both on February 20, 2025, was inexplicably returned to the sender. Stilley doesn't know what was sent in these mail pieces. Stilley was never given notice of the returned mail, and didn't know about it until he received the attached mail log.

24.    This Court in an order informed Stilley that he must comply with all rules of the court. The date of the order, by Stilley's recollection, was January 2, 2025.

25.    Judges Bacharach and Phillips in an order 1-2-2025 said that the Court would enter a briefing schedule order *after* the record was completed.

26.    This pleading is being filed based upon the most expedited and diligent efforts that Stilley could muster. At Greene County Jail, Stilley could not enter a change of address unless he somehow learned how to do so orally. Also, a change of address notice

would be useless in light of the plan to ship Stilley back to Cimarron.

27.    Stilley has been led to believe that the Court Clerk entered an order saying that Stilley's motion for remand to the district court will be decided after a 3 judge panel is assigned. Stilley has not been served that order and has not actually read that order. Nor has Stilley been served with, or had a chance to read, the government's response to Stilley's motion for remand. Stilley suspects that these documents were in the mail pieces returned 2-20-2025, but is not sure of that.

28.    The interests of justice require that the 3 judge panel be assigned promptly, and that Stilley's motions be promptly considered and decided.

WHEREFORE, Stilley respectfully requests:

1) A determination and finding that no lawful scheduling order has been entered in this case;

2) A determination that Stilley's motion for remand, proceedings at the district court, and correction and/or supplementation of the record as requested by Stilley, must occur before the issuance of any scheduling order setting a deadline for Stilley's opening brief;

3) An order for the expedited selection of a 3 judge panel to preside in this case, for the motion to remand and such other matters for which a 3 judge panel is necessary and proper;

4) and for such other and further relief as may be appropriate, whether or not

specifically requested.

## VERIFICATION

Comes now Defendant Oscar Stilley pursuant to 28 USC 1746 on the date stated below and by his signature set forth below declares under penalty of perjury that the foregoing facts are true and correct to the best of Stilley's knowledge and belief.

Respectfully submitted,

By: _____          3-4-2025
Oscar Stilley, BOP #10579-062, *Pro se*          Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

## BRIEF IN SUPPORT OF MOTION

### 1.    BACKGROUND.

Both incoming and outgoing mail at this prison are generally delayed by about a week. Stilley has lost access to all his notes, which means that he must operate from memory. The palest ink beats the sharpest mind. However, Stilley has been informed that his appeal brief time expired while he was in harsh solitary confinement, incommunicado, with no access to so much as pen[1] or paper.

In mid-January 2025 Stilley received an envelope from the clerk, including 1) an order by judges Bacharach and Phillips, and 2) a letter from the clerk.

The order stated that a briefing schedule would be entered after the record was complete. Stilley knew that the record wasn't complete because Trevor Reynolds told him the deadlines for the transcripts. Stilley concentrated on his motion for remand, so as to get release pending appeal.

If Stilley gets release pending appeal, there is not the slightest doubt that he will win this appeal. He will have access to his computer, software, legal research tools, etc. He will be able to prepare a first class appellate brief, just as he has done in the past. It made logical sense to first work to get the tools to allow him to prepare, and electronically file, a competent opening brief in this appeal.

---

[1]     Pens could be used to fill out requests to staff, etc. The pen was immediately retrieved after the writing was done. Requests to staff were generally useless because they brought no response from staff. Stilley never got a grievance form despite repeated polite request.

Stilley saw the language in the letter from the clerk, saying that he had 40 days from the date on that letterhead to file a brief. Stilley could not see the docket, to learn which came first. It was already mid-January when this mail arrived, and Stilley was hard at work on legal pleadings. He had no idea that he would be unceremoniously subjected to "diesel therapy" some 12 days before the expiry of that 40 day period.

He assumed that the transcripts would be filed, which might trigger the issuance of a scheduling order for briefs in this appeal. However, it might not since a remand for findings and a determination on stay pending appeal, by a lawful and unbiased district court, would eliminate any need for a scheduling order. The apparent error in the clerk's letter could be mooted in various ways.

Stilley could not imagine that a clerk's letter would trump a formal written order by two named 10th Circuit judges. He never dreamed that a motion for remand would, *de facto,* be placed "on ice."

Stilley has not seen the government's response to his motion for remand. Every route for the entry of legal pleadings into Cimarron Correctional Facility is either grievously "slow-walked" or cut off altogether. There is scarcely any pretense that the slow-walking of legal materials is inadvertence or oversight. CoreCivic[2] stomps out constitutional due process with every fiber of its corporate being, and dares anyone to do anything about it. Stilley on 2-26-2025 re-sent a petition for certiorari to the US Supreme Court. He mailed it timely on 1-21-2025, to the clerk and two counsel for

---

2        Cimarron Correctional Facility is owned and operated by CoreCivic.

parties to the proceedings. These mail pieces just "disappeared."

## 2.    STILLEY IS ENTITLED TO A COMPLETE RECORD PRIOR TO THE ISSUANCE OF ANY SCHEDULING ORDER.

The record on appeal is defined by Federal Rule of Appellate Procedure (FRAP)

10(a), as follows:

**(a) Composition of the Record on Appeal. The following items constitute the record on appeal:**

1. the original papers and exhibits filed in the district court;

2. the transcript of proceedings, if any; and

3. a certified copy of the docket entries prepared by the district clerk.

The record must be forwarded to the circuit clerk. See 10th Cir. Rule 11.1:, as

follows:

**11.1    Record transmitted to court of appeals (when required).**

**(1.A)            Designated record.** In an appeal in which an appellant is represented by appointed counsel, the district court clerk must forward the record to the circuit clerk as required by Federal Rule of Appellate Procedure 11(b). *See also* 10th Cir. R. 10.3(A). The record must include any transcript that has been filed for the appeal.

**(1.B)            Pro se record.** In pro se appeals, a record on appeal will be prepared and docketed. *See* 10th Cir. R. 10.3(C).

It is impossible to docket a record that has not yet been completed. Therefore

there is no possibility that Stilley's appellate record was docketed prior to January 30,

2025.

Where was Stilley on 1-30-2025? He was on a bus headed to Greene County Jail, a facility apparently designed specifically for psychological torture. From that day until the alleged conclusion of the "briefing deadline," Stilley had no access to any part of the record. Indeed, most of that time was spent in solitary confinement, incommunicado, with lights 24/7, with no pen, and with no paper.

The time for filing an opening brief is controlled by FRAP 31(a) which provides:

### (a) Time to Serve and File a Brief.

The appellant must serve and file a brief **within 40 days <u>after the record is filed.</u>** The appellee must serve and file a brief within 30 days after the appellant's brief is served. The appellant may serve and file a reply brief within 21 days after service of the appellee's brief but a reply brief must be filed at least 7 days before argument, unless the court, for good cause, allows a later filing.
(Emphases added)


The same rule, subsection (c), provides the means by which an appeal may be dismissed for failure to prosecute, as follows:

**(c) Consequence of Failure to File.** If an appellant fails to file a brief within the time provided by this rule, or within an extended time, **an appellee may move to dismiss the appeal**. An appellee who fails to file a brief will not be heard at oral argument unless the court grants permission.
(Emphasis added)

This requirement is essential to due process. The Appellant must be given a chance to rebut any claim that the briefing deadline has expired, or to show some other reason that the appeal should not be dismissed.

This Court by its local rules requires precise references to the record. See 10th Cir.

R. 28.1(1.A) which provides:

**28.1    References to appendix or record.**

> (1.A)    **Record references.** For each issue raised on appeal, **all briefs must cite the precise references in the record where the issue was raised and ruled on**. Counsel are encouraged to include a footnote in the briefs at the point of the first record citation to confirm the citation convention.

**(1.A.1)    Appendix.** References to the appendix should be by volume and page number (e.g., App. Vol. 2 at 27, or Supp. App. Vol. 2 at 14).

**(1.A.2)    Record.** In cases without an appendix, **references to the record should be to the record volume and page number** (e.g., ROA, Vol. II, at 6). References to the transcript should be by volume and page number.

> (1.B)    **Particular record references.** Briefs must *cite the precise references in the record where a required objection was made and ruled on, if the appeal is based on*:

**(1.B.1)    **a failure to admit or exclude evidence;

**(1.B.2)    **the giving of or refusal to give a particular jury instruction; or

**(1.B.3)    **any other act or ruling for which a party must record an objection to preserve the right to appeal.

**28.2    Additional requirements.**

> (2.A)    **Appellant's brief.** In addition to

all other requirements of the Federal Rules of Appellate Procedure and these rules, **the appellant's brief must include as an attachment the following** (even though they are also included in the appendix or record):

**(2.A.1)**                     copies of all pertinent written findings, conclusions, opinions, or orders of a district judge, bankruptcy judge, or magistrate judge (if the district court adopts a magistrate's report and recommendation, that report must also be included);

**(2.A.2)**                     **if any judicial pronouncement listed in (1) is oral, a copy of the transcript pages**;

(Emphases added)

Keep in mind that Stilley is currently not in possession of 1) any of the transcripts of the proceedings below, 2) any of the orders of the 10th Circuit Court, 3) any pleadings filed in this 10th Circuit court by counsel for the Appellee, or 4) the official filed record in the court. This isn't an accusation that they weren't mailed. It is the statement of fact that they either were never received or that they were seized by Stilley's custodians.

This Court's local rules include very specific provisions about the preparation and filing of transcripts. Please see 10th Cir. Rule 10.2(C), which provides as follows:

(C)    Preparing, filing, and delivering transcripts.

(1) Preparation and filing. The Appellate Transcript Management Plan for the Tenth Circuit governs the preparation and filing of transcripts for cases on appeal. See Local Appendix A.

(2) Delivery. When the transcript is complete, the court reporter must:
(2.a) **deliver the original to the requesting party** or to counsel later appointed;

(2.b) file a certified copy with the district court clerk; and

2.c)   notify the circuit clerk.
(Emphasis added)

The point is absolutely ___not___ to criticize the court reporters. They are VIPs. Stilley

specifically told Mr. Reynolds to treat the court reporters most cordially, to be

accommodating to any reasonable request they might make, and to accept digital files

only so as to lighten their load.

If Stilley gets the release pending appeal to which he is entitled, he can get the

transcripts directly from the court reporters, via email. It will be very easy and painless.

He will be able to download and print the official record at this 10th Circuit, so as to cite

consistent with Court preferences.

What is the consequence of not getting release pending appeal? This pleading and

prior pleadings in this court and district court have laid out the disastrous consequences

of being forced to defend from prison. Prison utterly devastates 1) the ability to defend

criminal charges, on appeal or otherwise, and 2) the ability to work together to make the

6th Amendment right to _the assistance of_ counsel meaningful.

### 3.    THE FACTS SUGGEST THE DELIBERATE USE OF PRISON TO STOMP OUT STILLEY'S RIGHT OF DUE PROCESS.

Consider the facts. Stilley read an order by Bacharach and Phillips dated 1-2-2025

saying that a scheduling order would be entered when the record was complete. On 1-

30-2025 Stilley lost his legal files as a result of a transfer to a jail that is extremely and

unabashedly hostile to the slightest inmate access to the tools indispensable to due

process.

Per the Court clerk Stilley's brief filing deadline expired the very day Stilley got out of the harshest solitary confinement he's ever experienced – *after* close of business. The deputy clerk confirmed this even when Stilley mentioned the fact that the transcripts weren't completed until Stilley was in transit to Greene County Jail.

There are 4 lawyers for the appellee United States. Their managers have told them to oppose any extension of time to file Stilley's opening brief. This decision was *necessarily* made while Stilley was in solitary confinement, with no access to even the slightest facilities for due process. When Stilley called Elyssa Hart-Mahan, she was ready for him. She knew the answer. She spoke courteously and kindly, perhaps even apologetically, but she delivered the message. Not her own decision, but the decision of her *managers*.

From the 12th of February until the day this is filed, this court can be absolutely certain that Stilley has exerted every fiber of his being to prepare this pleading and get it filed ASAP.

These unnamed managers plainly plan to direct their lawyers to argue that Stilley had no time at all to draft a brief, from the time the transcripts were *completed*. Stilley still doesn't have the transcripts, or the governments opposition to his motion for remand. The rules plainly require that the transcripts be served on any *pro se* appellant, and that notice be given to the clerks of the district court and this circuit court. The idea

that the time for preparing a brief should commence before the appellant gets access to the transcripts is preposterous, contrary to the rules, and contrary to the most elementary principles of due process.

This Court's rules plainly and repeatedly require pinpoint cites to the record. The judges of this court are not like pigs, hunting for truffles buried in briefs. *United States v. Dunkel*, 927 F2d. 955, 956 (7th Cir. 1991).

The judges have a right to expect that an appellant at least substantially comply with the rules. In the Court's order 1-2-2025, the Court expressly stated that Stilley would be expected to comply with the rules.

Stilley never asked to do otherwise. Stilley had no intention to do otherwise. In a past appeal arising out of the criminal case below, Stilley filed a corrected brief to correct a small error. The Clerk said it wasn't necessary – but doing the minimum, or what is absolutely required, isn't Stilley's goal. Stilley is a *rules kind of guy*. He doesn't object to the rules. He wants to follow them. He wants to prepare and file a quality brief.

Why would *managers* of US DOJ appellate lawyers oppose any extension of time for filing a brief for which no lawful briefing order was ever entered, or could have been entered? Why would it be that Stilley is kept in solitary confinement for some 5 days after he started eating? Why has it come to be that Stilley's brief time is purportedly concluded, but he has never laid eyes on the transcript?

Are these actions related? These facts are beyond suspicious.

That's far from the end of it. Stilley has asked for the *ex parte* order entered by Judge Stephen P. Friot. He's entitled to that. As set forth in this court's local rule above, he's entitled to the terms of that order. He's entitled to the date of the order. He is entitled to know the circumstances under which the order was pronounced. If nothing better can be done, he is entitled to at least the substance of the order, what motions it was intended to cover, express or implied promises to deny Stilley's motions, etc.

Stilley's copy of the email from counsel for the government is not in his possession, as Stilley writes this brief. Based on Stilley's recollection the message was: "[T]he Court notified the government that it needn't file responses to your motions."

Who initiated this communication? Based on the text it sounds like the Judge Friot initiated contact with the government, to tell them they didn't have to respond to any motion filed by Stilley. However, there is no good reason to speculate. Stilley is not satisfied with speculation. He wants the facts, on the record. He wants that corrected record certified to this court by the district court clerk and/or the court reporter(s).

Stilley filed a motion for a true and correct record prior to the first revocation, in 2022, and for the second revocation, from which this appeal is brought. Both motions were denied.

Now it appears that the record was materially incomplete and incorrect, and that the district court judge deliberately occasioned at least part of the deficiencies.

It is furthermore a near certainty that District Judge Friot also engaged in *ex parte*

contact when he cut off Stilley's right to file any dispositive motions in early 2010, immediately prior to the government's switch to a theory of criminal liability *in irreconcilable conflict with the trial and pretrial theories*.

It is hard to imagine a more prejudicial order than an order telling the government that they need not respond to a *motion to vacate* 1) the original criminal judgment, and 2) the revocation judgment upon which the current revocation depended.

It gets worse. Stilley in Arkansas Supreme Court #CV24-453 filed *motions to suppress* both of those judgments. Five esteemed lawyers in the Arkansas Attorney General's Office *defaulted* on those motions. Yet neither the Arkansas Supreme Court[3] nor the assigned Special Master ruled on either of those defaulted motions.

Why? Because Stilley is undeniably right. Because Stilley has proven his innocence. The United States cannot respond to these motions without confessing that Stilley is innocent, and entitled to immediate release and restoration of his good name. The United States cannot forthrightly respond to an appeal brief by Stilley without confessing to the same facts and conclusions of law.

That is why the government is desperate to deprive Stilley of his appeal by dishonest and deceitful means.

### 4.    INTEGRATION OF THE LAW AND FACTS.

Some person gave the order to send Stilley to Greene County Jail for 3 weeks, thus depriving Stilley of about 30 hours of computer time. That person has a name and

---

[3]       Justice Baker did not participate in this *per curiam* order.

that name is ascertainable. Someone decided to proceed under a theory that Stilley's time for filing an appeal brief expired while Stilley was in solitary confinement, with all other legal impediments explained in this brief. That person too has a name, likewise ascertainable. The same can be said for attacks on Stilley's right to possess legal papers, and other attacks on due process. Those things don't just happen. Some person or persons *make them happen.*

This prison demands that ordinary mail be sent to a scanning facility, whereupon the inmate gets a copy. The theory is that this will cut down on contraband. However, this prison is utterly hostile to the idea that inmates might be allowed to get copies of the pdf documents which are publicly available on PACER. Of course. Any allowance of access to PACER and Recapthelaw would virtually nullify the government's ability to cheat inmates out of effective access to their legal paperwork.

It is plain to see that the government has concluded that Stilley's appeal cannot be defeated through lawful and normal processes of appeal briefing. The government lawyers in this case have the same problem that the 5 Arkansas Attorney General lawyers in *Stilley v. Thurston et al*, Ark. Sup. Ct. # CV-24-453 had. If they allow Stilley to prepare an appellate brief, and forthrightly respond to it, they ***necessarily lose***. Indeed, if they allow Stilley to get the particularized findings to which he is entitled, on release pending appeal, they have for all practical purposes already lost the case – *and justice has prevailed.*

Stilley has been incarcerated for almost 4 months. He could have done all the litigation work he's done so far in 3 weeks on his home computer, with time to spare. He is watching his life drain away as his litigating capacity is reduced to a mere shadow of what it normally is. The government's core goal was *getting time*, taking away days of Stilley's life. They're succeeding, one day at a time.

Stilley has the ***right*** to this one direct appeal. Should that fail he has the right to a petition under 28 USC 2255. Should that fail he has the right to a petition under 28 USC 2241. The only way to defeat Stilley's lawful claims is to slow-walk everything until Stilley's incarceration is completed, and then declare all other remedies moot. Those remedies are for persons *in custody*.

The government might win by "diesel therapy," attacks on due process, and "slow-walking" everything, but if so it will be a Pyrrhic victory. Such "wins" make a mockery of due process. The fundamental essence of due process is the right to be heard in a meaningful time and a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965). Stilley has seen the placards on the walls of US Attorney offices, saying that a prosecutor may strike hard blows, but never foul.

America prides itself on equal justice for all, even (perhaps especially) for political dissidents and the politically disfavored. Defeating Stilley through obviously foul and flagrantly lawless means is a tacit admission that Stilley cannot be defeated any other way. It is a tacit admission that Stilley's "justice" is equivalent to that meted out by

Moscow to Evan Gershkovich, neither more nor less.

The government should be invited to say specifically who is responsible for the attacks on Stilley's right of due process. They should be invited to explain, if explanation is possible, any lawful basis for the acts and omissions with respect to which Stilley complains.

## CONCLUSION

This Court should conclude and rule that no scheduling order has been or lawfully could have been entered in this case, nor will be entered prior to remand and correction and completion of the record. This Court should cause a 3 judge panel to be promptly selected, whereupon Stilley's motion for remand should promptly be granted. This Court should order the government to furthermore make all necessary inquiry, and explain in detail to this Court why Stilley was subjected to transfer to another detention facility without lawful excuse or explanation, and also why Stilley is currently suffering under myriad other attacks on his right of due process, as explained in pleadings in this Court and in the district court below.

Respectfully submitted,

By: _____          3-4-2025
Oscar Stilley, BOP #10579-062, *Pro se*          Date
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

## CERTIFICATE OF SERVICE

Stilley by his signature above certifies that on the date stated above he placed this pleading in the prison outgoing mail addressed to the Clerk of Court, with sufficient 1st class US postage, for filing via the CM/ECF system, whereby all interested persons using CM/ECF will be served with this pleading. There is no prison legal mail system. Stilley claims all the protections of the prison mailbox rule.

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS

I, Oscar Stilley, by virtue of my signature above, certify that I produced this brief in an unknown version of OpenOffice Writer, that I have performed a word count, and that this motion has 4,994 countable words, which is less than 5,200 words.

CIMARRON CORRECTIONAL FACILITY
MAIL LOG HISTORY

| NAME: | STILLEY, OSCAR AMOS |
|---|---|
| AGENCY #: | 10579062 |
| PERM #: | 6097378 |
| HOUSING: | RELEASED |

| MAIL DATE | MAIL FROM/TO | ADDRESS | CITY | STATE | ZIP | MAIL TYPE |
|---|---|---|---|---|---|---|
| 02/20/2025 | US DEPT. OF JUSTICE-TAX DIVISION | 1275 1ST ST., N.E., WASHINGTON, DC 20002 | | | | RETURN TO SENDER |
| 02/20/2025 | US CRT. OF APPEALS 10TH CIRCUIT CLERK | 1823 STOUT ST., DENVER, CO 80257 | | | | RETURN TO SENDER |
| 01/29/2025 | ELISSA HART-MAHAN-DEPT. OF JUSTICE | PO BOX 972, WASHINGTON, DC 20044 | | | | OUTGOING-LEGAL |
| 01/29/2025 | CHRISTOPHER WOLPERT-APPEALS CLERK | 1823 STOUT ST., DENVER, CO 80257 | | . | | OUTGOING-LEGAL |
| 01/22/2025 | SCOTT HARRIS-CLERK SUPREME CRT. U.S. | 1 FIRST ST., N.E., WASHINGTON, D.C. 20543 | | | | OUTGOING-LEGAL |
| 01/22/2025 | JUSTIN BRASCHER-ASS.ATTY.GENERAL | 323 CENTER ST, STE.200, LITTLE ROCK, AR 72201 | | | | OUTGOING-LEGAL |
| 01/22/2025 | PETER SHULTS-ATTY. | 200 W. CAPITOL AVE., STE.1600, LITLTE ROCK, AR 72201 | | | | OUTGOING-LEGAL |
| 01/09/2025 | US COURT OF APPEALS, 10TH CIRUIT | BYRON WHITE US COURTHOUSE, 123 STOUT ST, DENVER, CO 80257 | | | | INCOMING-LEGAL |
| 01/07/2025 | TREVOR L. REYNOLD, TULSA LAW GROUP PC | 1700 SW BLVD, TULSA OK 74107 | | | | INCOMING-LEGAL |
| 01/06/2025 | US DIST. CRT. CLERK | 411 US COURTHOUSE, 333 2. FOURTH ST., TULSA, OK 74103 | | | | OUTGOING-LEGAL |

**TOTAL ENTRIES: 10**

Exhibit 1

Print Date:03/01/2025  12:43 PM

| NAME: | STILLEY, OSCAR AMOS |
|---|---|
| AGENCY #: | 10579062 |
| PERM #: | 6097378 |
| HOUSING: | B/S/127/A |

| MAIL DATE | MAIL FROM/TO | ADDRESS | CITY | STATE | ZIP | MAIL TYPE |
|---|---|---|---|---|---|---|
| 02/27/2025 | JUSTIN BRASCHER, ASS. A.G.-ARKANSAS | 323 CENTER ST. STE.200, LITTLE AROCK, AR 72201 | | | | OUTGOING-LEGAL |
| 02/27/2025 | SCOTT S. HARRIS-CLERK | 1 1ST ST. N.E., WASHINGTON, D.C. 20543 | | | | OUTGOING-LEGAL |
| 02/27/2025 | PETER SHULTS-ATTY.-SHULTS LAW FIRM LLP | 200 W. CAPITOL AVE. STE.1600, LITTLE ROCK, AR 72201 | | | | OUTGOING-LEGAL |

**TOTAL ENTRIES: 3**

Oscar Stilley 10579-062
Cimarron Correctional Facility
3200 S. Kings Highway
Cushing, OK 74023

US POSTAGE PITNEY BOWES
FIRST-CLASS
ZIP 74023   $ 002.87⁰
02 7W
0008030349 MAR 22 2025

LEGAL

MAIL

Christopher Wolpert, Clerk
10th Circuit Court of Appeals
Attn: Team 2
Byron White US Courthouse
1823 Stout Street
Denver, CO 80257-1823

LEGAL MAIL

Scanned by US Marshal