# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES | PLAINTIFF/APPELLEE |
| V. | **Tenth Circuit Appeal No. 24-5133**<br>(OKND Criminal 4:09-cr-43 SPF-2) |
| OSCAR STILLEY | DEFENDANT/APPELLANT |

## APPELLANT STILLEY'S VERIFIED SECOND MOTION FOR RELEASE PENDING APPEAL OR FOR OTHER RELIEF ESSENTIAL FOR DUE PROCESS

Comes now Appellant Oscar Stilley (Stilley) and for his verified motion states:

1. This is Stilley's second motion at circuit court, requesting release pending appeal. This motion is without prejudice to Stilley's other pending motions, including one for remand and one for permission to donate those things necessary for due process.

2. The government responded to Stilley's motion for relief pending appeal on 4-7-2025.

3. Judges Carson and Federico on 4-21-2025 denied Stilley's motion on grounds that it improperly incorporated motions filed at

district court. Stilley presumes that the denial was without prejudice to a motion prepared in compliance with the rules.

4. Stilley in March 2025 was ejected from the Cimarron Law Library for the pretended offense of writing a request to the Warden for permission to buy books from Amazon, mostly those of a legal nature.

5. On 3-20-2025, Stilley was sentenced to and actually served a two-week suspension at the Cimarron Law Library for stating those facts in a legal pleading. Both the request and the pleading were confiscated and not returned. The sentence was imposed orally, and Stilley never received written notice or right to be heard, despite repeated polite requests.

6. The Monday after the suspension ended, 4-7-2025, Stilley attempted to return to the law library. He was informed by Mr. Hodgkins, the law librarian, that he was now permanently suspended from the law library. Stilley asked for the reasons for this harsh penalty. Mr. Hodgkins refused to answer and became angry. Stilley was never provided any official reasons for the permanent suspension.

7. After lock-down that evening, Stilley was informed that he would be leaving the facility that night. Stilley was denied even the small comfort of telling his friends goodbye. That night, Stilley finds himself incarcerated at another CoreCivic facility divested of his books, papers, commissary, and precious thumb-drive. He is invited to start again, from scratch, without the slightest assurances that the bad behavior won't be repeated.

8. Stilley was transferred from Cimarron Correctional Facility to Tallahatchie County Correctional Facility, ((TCCF) another CoreCivic facility) on Tuesday, April 8, 2025. TCCF is a massive facility, with an inmate capacity of, 2,672 inmates, about 90-miles north of the Yazoo City Camp, to which the district court recommended Stilley.

9. Stilley on 4-10-2025 inquired of contract monitor Jason Cundiff about when he'd arrive at Yazoo City Prison Camp. On 4-23-2025 he responded, disclaiming knowledge on the subject.

10. Cimarron personnel told Stilley he couldn't take his thumb-drive, or his satchel of legal papers, or his notes that he religiously carried around in the solitary pocket on a full set of inmate

clothing. In other words, he was unceremoniously divested of every scrap of legal information except that which resides in his brain.

11.     Stilley sent his precious legal papers home because the only other option presented was the trash can. Stilley is denied information about where his papers should be sent, because he doesn't know where he'll be when the papers will arrive.

12.     Stilley can't refresh his recollection about anything. He has access to neither hard nor soft copies of any of his files.

13.     Stilley is denied certainty and predictability about his confinement, both indispensable to effective prosecution of his appeal.

14.     The government hasn't actually served Stilley with any of his pleadings. Stilley has been to the library and was informed it follows the policies of TCCF.

15.     TCCF disclaims any knowledge of Stilley's pro se status, which was undisputed at Cimarron. Pro se status requires legal papers, court verification, approval, and placement on a list. He

has been told that at present, not a solitary inmate at this massive
prison qualifies as pro se, according to their rigid requirements.

16.    Nothing can be saved on the computers in the library. If
Stilley's pro se status is accepted, he'll get a thumb-drive, which
will have to stay in the law library.

17.    Pro se status means he would be entitled to 6.5 hours of law
library time per week, but his first session was reduced from the
official 70-minutes to about 30-minutes. At this point, Stilley has
no reasonable expectation of more than perhaps one-hour per
week in the library, which will be virtually worthless without the
means to save work to thumb-drive.

18.    Emailing legal files in and out is impossible regardless of
status. Thus, Stilley has no assurance that he won't work for a
week or more and have his work product unceremoniously
expropriated yet again.

19.    Stilley promptly asked to enroll in a computer class that has
the Microsoft Suite. Education personnel immediately responded,
saying that paperwork would be sent to Stilley. More than a week
later, he hasn't even been to the classroom.

20.     Plain copy paper is neither sold nor dispensed at this prison. Stilley is not aware of any legal method to acquire plain copy paper.

21.     It also appears that it is impossible to prepare a hard copy brief in compliance with the rules. Inmates are not allowed any legal method of binding. Inmates don't have access to blue or gray card-stock as required by the rules.

22.     CoreCivic is notorious for routinely delaying mail by a week to 30-days, and occasionally up to three-months.

23.     The tablet that Stilley shared with the inmates in other cells was taken from him, and replaced with a defective tablet. It is impossible to make phone calls on the replacement tablet.

24.     Stilley has asked for an operable tablet. On 4-23-2025, he was told that there are no more tablets, and he cannot get an operable tablet.

25.     Stilley has offered to pay for a new tablet in order to get phone service on the tablet. Stilley has been told that this will not be allowed.

26.     A tablet with phone service functionality is mission critical because the only reliable means Stilley has to get pleadings filed is to dictate them over the phone.

27.     Stilley was transferred to Yazoo City Prison Camp on Thursday, April 24, 2025.

28.     Stilley has been informed that he will not be allowed to receive or possess any thumb-drive with legal files, for any of his legal cases including this one and his felony charges in Crawford County, Arkansas Circuit Court.

29.     This prison of course has computers with software sufficient to allow Stilley to use all his legal files, prepare a proper brief using Microsoft Word, transmit the file to a trusted friend for electronic filing, etc.

30.     This prison only allows 300 minutes of phone time per month, places a 30-minute waiting period between calls, and only allows 30 minutes of phone time per day, maximum. All of these restrictions could be lifted if Stilley's persecutors/prosecutors picked up the phone, called the prison, and told them to let Stilley have as much phone time as he needs for his legal work.

31.    Ditto for computer files on a thumb-drive, and access to a suitable computer for legal work. Stilley is in the custody of the U.S. Department of Justice-Federal Bureau of Prisons (DOJ-FBOP), which is a subsidiary of the U.S. Department of Justice, the entity that prosecuted Stilley. The powerbrokers who have thus far stomped out Stilley's capabilities could, with a phone call or two, grant to Stilley the full ability to work on his appeal brief, equally as if he was not incarcerated.

32.    When the prosecutor is also the custodian, the temptation to use that power to deprive their target of due process and peaceful petition is simply more than the fundamental principles of due process and 1st Amendment peaceful petition will bear.

33.    To the extent that Stilley doesn't have his full natural capabilities to prepare a competent appeal brief, by the time the government files its response, it is because the prosecutorial/custodial machine that has been relentlessly beating Stilley over his proverbial head for the past 5 months simply cannot bring itself to do the honorable thing, even under the pressure of this motion.

34.     Stilley's thumb-drive has already been placed in the mail by

Stilley's friend. The tracking number is

9505515807515105095396. This Court may be certain that Stilley

will pursue every administrative or other reasonable possible

remedy, with the utmost care and vigor, seeking official

permission to possess and effectively use his files and information

in time to prepare his brief.

35.     There is no legitimate reason that Cimarron allows 1) the

use of thumb-drives and 2) the emailing of legal files to the outside

world for proper purposes including the seeking of 6th

Amendment assistance of counsel, filing of pleadings, etc., but the

DOJ-FBOP does not.

36.     The DOJ-FBOP rules and policies of which Stilley complains

make a complete mockery of due process, 1st Amendment peaceful

petition, and the 6th Amendment right of assistance of counsel.

37.      It is altogether unnecessary that an attorney enter

appearance in specific litigation, for the protections of the 6th

Amendment to attach. Stilley is entitled to the CAPABILITY to

quickly send a properly formatted draft of a brief or motion to a lawyer, to seek the confidential assistance of counsel.

**WHEREFORE**, Stilley prays for an order granting a stay/release pending appeal; alternatively for relief sufficient to allow Stilley to prepare and cause to be filed a brief that conforms to all the requirements of FRAP and this court's local rules, with substantially the same speed and efficiency as if he were not incarcerated; and for such other and further relief as may be appropriate whether or not specifically requested.

## VERIFICATION

Comes now, Appellant Oscar Stilley, pursuant to 28 U.S.C. 1746 on the date stated below and by his signature set forth below, declares under penalty of perjury that the foregoing facts are true and correct to the best of Stilley's knowledge and belief.

April 29, 2025 by:

/s/ Oscar Stilley
Oscar Stilley, DOJ-FBOP # 10579-062
FCC Yazoo City Camp
PO Box 5000
Yazoo City, MS 39194-5000
oscarstilley@gmail.com

### APPELLANT STILLEY'S BRIEF IN SUPPORT
### OF HIS VERIFIED SECOND MOTION FOR RELEASE PENDING
### APPEAL OR FOR OTHER RELIEF ESSENTIAL FOR DUE PROCESS

Comes now Appellant, Oscar Stilley (Stilley), respectfully offering the following arguments in support of his verified motion.

## I. Background

Judges Carson and Federico denied Stilley's prior motion for release pending appeal on 4-21-2025, saying that Stilley improperly incorporated other pleadings. This was done out of necessity because Stilley's ability to prepare pleadings in the normal way has been crushed by the Department of Justice, which holds Stilley's custody.

Judges Carson and Federico seem to believe that Stilley didn't request release pending appeal at the district court level, but the minute sheet shows the motion was denied. Docket #816. (https://ecf.oknd.uscourts.gov/doc1/14713443122).

The 4-21-2025 denial cited 18 U.S.C. § 3143(b)(1), which requires (a) a showing that the appellant isn't a flight risk, and (b) that the appellant has a meritorious appeal. Stilley exhaustively briefed this issue in a motion at the district court. Stilley would gladly copy and

paste and edit, but is without access to his documents, plus he lacks the capability to dictate or send such files to friends on the street.

This pleading is coming to the court by way of dictation over the telephone. The length of this pleading already stretches the bounds of a cobbled solution. Cimarron Correctional Facility was the last place Stilley was allowed to draft pleadings on a computer. The ability to send and receive legal files existed for a few inmates at Cimarron. It can scarcely be denied that transferring Stilley from Cimarron to Tallahatchie County Correctional Facility, (TCCF), was part of a concerted attack on his constitutional right of reasonable access to the courts.

Stilley will meet the elements of 18 U.S.C. § 3143(b)(1) in the following ways:

First, he will prove not only that he has an indisputably meritorious appeal, but that the government by its unethical behavior has legally barred itself from raising any defense whatsoever.

Second, by that very fact he will show that since Stilley is rational—he will not flee. Flight would be the biggest gift Stilley could

ever give the government by giving them a claim to the doctrine of fugitive disentitlement.

Third, Stilley has other avenues to attack the bogus judgment under which he is incarcerated, in multiple court systems.

Denying Stilley the relief to which he is entitled would inflict monumental damage on the public reputation of the federal bench and bar.

## II. Lines of Argument Thus Far

Please consider the sum and substance of Stilley's pleadings in this appellate case, 10th Circuit 24-5133, thus far. There are three lines of pleadings, as follows:

1.  Request for remand to district court primarily to (a) complete the record, and (b) get findings and a ruling on the question of relief pending appeal (Dkt. #32),

    https://www.courtlistener.com/docket/69676349/united-states-v-stilley/#entry-32; and,

2.  Request for permission to donate goods and services necessary for due process, (Dkt. #42),

https://www.courtlistener.com/docket/69676349/united-states-v-stilley/#entry-42; and,

3. Request for release pending appeal without prejudice to the other two motions (Dkt. #48),

https://www.courtlistener.com/docket/69676349/united-states-v-stilley/#entry-48.

What's the common thread? It cannot reasonably be denied that Stilley seeks the wherewithal to prepare and file a competent brief on direct appeal. Not just any old brief, but rather the best brief of which Stilley's mind, motivation, and endurance is capable.

What's the common thread to the orders of this court? The court opts to delay rulings on Stilley's motions until he has submitted his opening brief. Said differently; not now, but later, you will receive decisions. Only after the matter is fully briefed, we will consider your motions regarding the preparation, hardships, and rules related to your briefing. The common thread is prejudicial delay, which is to say delay that will materially degrade Stilley's due process and peaceful petition capabilities.

What's the common thread of the government's defense? Not any actual defense, but rather efforts to stomp out Stilley's ability to litigate. Somebody dropped a dime on Stilley, to get him shipped to Greene County Jail on 1-30-2025, which fundamentally crushed his due process. Greene County put Stilley in solitary confinement until the closing of business on the day that the first appeal deadline expired. Then the government opposed any extension of time to file the opening brief. They may as well have said that Stilley has an irrefutable appeal, and that they intend to stomp it out by hook or crook.

The fundamental point of this motion is to ask the following question. Is this court willing to ensure any solution that guarantees Stilley reliable and sufficient access to the resources necessary for the production of a competent appeal brief? Stilley is attacked along every path that might reasonably allow a pro se appellate to prepare and file a competent brief, which can be distilled to two branches. First, please let Stilley use his own resources at home to prepare the brief, just as Stilley did prior in the Tenth Circuit's 22-5113. If the court cannot see a way to do that, let's find another way to ensure Stilley's incarceration

doesn't materially impact his ability (or other inmates similarly situated) to prepare and file a competent brief.

Consider the two dissents in United States v. Hohn, 123 F.4th 1084 (10th Cir. 2024), one by Judge Bacharach the other by Judge Rossman. The facts of the case were as follows. An unscrupulous U.S. attorney in conspiracy with CoreCivic intercepted and used attorney-client confidential legal cases, then lied, dissembled, and deceived in order to cover up the wrongdoing. Nobody even argues that this is lawful or ethical. The key question for the court had to do with what remedy, if any, would be available to the defendants who suffered the wrong.

A *sua* sponte en banc court overruled 10th Circuit precedent, to hold that the injured defendants must prove prejudice, after which the court would rule "no harm, no foul." Judge Bacharach wrote an 11-page masterpiece, arguing for a rebuttable presumption of prejudice and also questioning the unorthodox *sua sponte* en banc consideration. Judge Bacharach also joined Judge Rossman's 38-pages of eloquence and logic in support of an unrebuttable presumption of prejudice.

### III. Stilley's Claims Are Irrefutable

Why is this important? Because Stilley has already shown that U.S. Supreme Court caselaw unanimously and decisively holds that a complete denial of the assistance of counsel results in a void judgment. Docket #752 (https://ecf.oknd.uscourts.gov/doc1/14713059417), the first revocation judgment against Stilley, has all the efficacy of a blank sheet of paper.

Who believes Stilley's claims? Five esteemed lawyers at the Arkansas Attorney General's Office, who defaulted on Stilley's motions to suppress, the six Arkansas Supreme Court justices who failed to rule on motions to suppress docket #752 and #338 (https://ecf.oknd.uscourts.gov/doc1/14711063494), the special master who did the same, the law clerk who wrote the per curiam, Judge Stephen P. Friot who in an *ex parte* hearing told U.S. Dept. of Justice attorney, Charles O'Reilly that he needn't respond to Stilley's motions to vacate docket #338 and #752, and Charles O'Reilly who foolishly accepted the invitation without considering the consequences.

Here's the problem for the government and for this court. Because the government defaulted on Stilley's motions to vacate the original

judgment (Dkt. #338), and the first revocation judgment, (Dkt. #752), and because the district court gave no reasons for the denial of motions, the government cannot raise or argue any defenses whatsoever. No arguments whatsoever were raised at district court. Issues cannot be raised for the first time on appeal. Judge Bacharach said so himself, with footnote 7 of his big, beautiful dissent in U.S. v. Hohn United, 123 F.4th 1084 (10th Cir. 2024) See also, Horne v. Flores, 557 U.S. 433, 490 (2009).

The government, by its unethical *ex parte* hearings and orders, painted itself into a corner. The district court's summary denials of the two motions, without the slightest explanation or reasoning, are simply the outgrowth of a near total abandonment of legal and ethical norms.

The prohibition on new issues on appeal (with minor exceptions not relevant here) binds the government, but not the court. However, if the court *sua sponte* permits the government to raise new issues on appeal, due process requires that Stilley be given fair notice with sufficient particulars and opportunity to present his position. Day v. McDonough, 547 U.S. 198, 210 (2006).

Courts of appeal are not well adapted to such proceedings. To date, this motion for remand for findings and ruling on the issue of relief pending appeal, and for completion of the record, hasn't been decided.

Therefore, if the court wishes to help the government dredge up some new issue or issues, not raised below, it seems highly appropriate that Stilley's motion for remand be granted. Then Stilley would be allowed to have due process notice and opportunity to be fairly heard, by a lawful and impartial judge. The case can then be brought back to this court for prosecution of the appeal.

Stilley is persuaded that both the government and this court have given up hope of saving docket #752, the revocation judgment, or the current judgment. It appears that the government is trying to save the original judgment, docket #338, by deceitful and dishonest means. They will stiff arm Stilley so that he cannot litigate effectively. Then they will allow the entry of an order setting aside docket #752 and the current bogus judgment and conviction order, and set Stilley free from prison. The government will then say that because Stilley is no longer in custody, he cannot attack the original judgment and conviction order,

docket #338. Therefore, he cannot recover his good name, civil rights, unlawfully collected restitution, et cetera.

Stilley plans to make his first point on appeal an attack on the original judgment, docket #338, and ask that it be decided first. The government defaulted on Stilley's motion to vacate #338, just as it defaulted on the motion to vacate docket #752. The government can't raise an issue in defense of either of those judgments, unless and until Stilley is given notice and opportunity to be heard. Why then should Stilley not first chop off the head of the snake?

The District Judge claimed the right to sentence him to two-years on each of three-counts of the 2009 indictment, all to run consecutively. To this day, Stilley hasn't seen the transcripts, but he certainly remembers. It can hardly be denied that the validity of docket #338 is a linchpin upon which everything else hangs.

Stilley was locked up April 23, 2010. He has been in one form of custody or another for over 15 years, the maximum custodial time according to the government's theories. The government's fraudulent schemes are unraveling. The people who made the phone call to send Stilley to Greene County Jail and solitary confinement, are about to

have their time to explain their behavior, under oath. Ditto for the people who decided to kick Stilley out of the library for two-weeks, and then put him on the bus to save themselves the duty of explaining the plausible basis for such action.

## IV. Stilley's Appeal Cannot Be Defeated Without Outrageous Conduct

The plan to stomp out Stilley's appeal is undeniable, but it is doomed to failure. Worst case scenario, Stilley will use a motion to vacate docket #338 as point one on appeal, and the motion to vacate docket #752 as point two. If Stilley has to do it over the phone by directions to a friend, the formatting is going to be odd. But it's going to be the same arguments that the government couldn't rebut previously.

It's going to be the arguments and claims that the government is legally forbidden to challenge, because they made the conscious decision to default the motions at the district court. See footnote 3 of the dissent in Day v. McDonough, *supra*.

Judges Bacharach and Rossman in U.S. v. Hohn, *supra*, wrote beautiful prose in support of values that lie at the foundation of the American legal system.

This case is no less than a test of the structural integrity of the federal bench and bar. At this point in time, there is not the slightest doubt that every additional day that Stilley spends in prison is false imprisonment. Nor can there be any reasonable doubt that the fundamental goal of Stilley's incarceration is the wrecking of Stilley's First Amendment peaceful petition and Fifth Amendment due process rights.

Stilley must consider the possibility that the Tenth Circuit has a trick-card up its sleeve. Please understand why a trick-card will be worse than useless.

First, Stilley has the right to his 28 U.S.C. § 2255 at the district court. He has a new judge, the Honorable Sarah E. Hill. Somebody at the Tenth Circuit thinks she's going to supplement the record and also give Stilley release during appeal. Why else would Stilley get stiff-armed on his motion for remand to district court? Can this court cite to any other instance of forcing an appellant to proceed without so much as a pretense of a complete record?

A § 2255 litigant can do discovery, under proper circumstances. What could be more compelling than requests for admissions, requests

for documents, and interrogatories that five lawyers at the Arkansas
Attorney General's Office avoided having to answer only because
Stilley's petition was dismissed on the day before those admissions
would have been deemed admitted by operation of law? Those
admissions would require the government to confess that both #338 and
#752 are void judgments, legally required to be vacated. Will they again
be, "saved by the bell," in § 2255 litigation?

That's not Stilley's last hurrah. Stilley should get this information
in the criminal case filed against him in Crawford County, Arkansas.
Assuming arguendo he fails there, that's still not his last hurrah.

If that doesn't work, the same Arkansas Supreme Court dismissal
order that referred Stilley to the Crawford County Prosecutor's Office
for criminal prosecution also referred Stilley to the county clerk's office
for the revocation of his voter registration. Stilley is entitled to file a
state court action for declaratory and other relief, showing that his
voter registration is valid. Stilley can simply serve the same discovery
that the Arkansas Attorney General and Secretary of State dodged in
Arkansas Supreme Court number CV-24-453. Then they will have to

respond, or the admissions will be admitted. Then they will have no choice but to admit that both judgments against Stilley are void.

If the government doesn't want to be accused of crushing Stilley's right of peaceful petition, it's easy. Someone made the phone calls to rain abuse down on Stilley. The same people could make a call to the proper personnel, to ensure that Stilley has consistent access to everything that he would normally have on the street, to prepare and file competent pleadings. It's their choice.

## V. Stilley Is Willing To Spot The Government a Head Start

Stilley has asked for release pending appeal, in this motion. He's willing to withdraw it, on conditions. If the government will allow all federal inmates including but not limited to Stilley access to their files and thumb-drives, a computer with the Microsoft Suite and other suitable software, and access to personnel who will reliably and routinely email necessary legal files back and forth to lawyers or family or friends on the outside, Stilley will withdraw this motion (but not any other pending motion). The government must respond by close of

business Friday, May 1, 2025, stating in the response that Stilley's conditions will be met, and that the government accepts Stilley's offer.

This amounts to giving the government a head start. Stilley couldn't find U.S. v. Hohn, *supra*, on legal research computers at Yazoo City Prison Camp, without a workaround. Those opinions were hidden from nearly all inmates, on the pathetic legal research software made available to federal inmates. Stilley won't be able to copy and paste from decisions, as he would on the street. His capabilities will be markedly less than they would be on the street.

Why would Stilley make this offer? Because Stilley intends to expose the government's motivations, for all the world to see. They can pretend they didn't make the phone calls, to suppress Stilley's litigation capabilities, if they so choose. It won't be credible. The phone calls didn't make themselves. Only the mighty U.S. Department of Justice has both the power and motive to perpetrate these wrongs against Stilley.

The transcripts of the original trial, the first revocation, and the instant revocation are on the thumb-drive headed to Yazoo City Camp. The transcripts total over 4,000 pages, and the docket items over 8,000

pages. There is no practical way for Stilley to draft an appeal brief without that information.

Four of Stilley's thumb-drives are floating around, including 1) the thumb-drive Stilley regularly used at Cimarron, 2) the thumb-drive sent to Cimarron by the Crawford County Prosecutor, containing discovery in his state felony charges for perjury, 3) the thumb-drive that arrived at Tallahatchie County Correctional Facility the day before Stilley left, and 4) another copy of the foregoing, which has an up-to-date set of Stilley's transcripts.

Stilley is already approved for a prison job that will seat him in front of a computer with the Microsoft Suite. Stilley is just waiting to complete orientation, to take the job. In the government's response, perhaps the government can provide explanations. One, why is Stilley safe to use the Microsoft Suite for DOJ-FBOP purposes, at the princely sum of 23 cents per hour, but not safe to use the same equipment to draft an appeal brief? Two, why do two private prisons, both federal contractors and both intensely hostile to due process and peaceful petition, find it safe to allow inmates to use computers and word processors to prepare pleadings, but the DOJ-FBOP doesn't?

The government doesn't have to accept the Stilley's offer. The government can continue to oppose any relief whatsoever. Alternatively, the government can simply agree that Stilley is entitled to release pending appeal, and stop the accrual of damages for false imprisonment.

What the government can't do, with the slightest credibility, is to claim that their strategy and their actions are for any purpose other than a lawless attack on constitutional rights. They cannot logically claim that their approach has so much as a fig-leaf of legitimacy or respectability.

## CONCLUSION

This court should promptly grant Stilley's motion for release pending appeal, or alternatively should enter an order that will ensure that incarceration isn't used to materially degrade Stilley's ability to litigate. Time is of the essence. The deadline for Stilley's opening brief is ten-days away.

Respectfully submitted April 29, 2025 by:

<u>/s/ Oscar Stilley</u>
Oscar Stilley, DOJ-FBOP # 10579-062
FCC Yazoo City Camp
sfPO Box 5000
Yazoo City, MS 39194-5000
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Oscar Stilley by his signature and date above, certifies that he filed and served this pleading via CM/ECF, and that all parties entitled to service will be served electronically.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Oscar Stilley by his signature above certifies:

1. This document complies with the word limit of Fed. R. App. P. Rules because this document contains less than 4,700 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.