APPEAL NO. 24-5133

In the United States Court of Appeals
for the Tenth Circuit

UNITED STATES                               PLAINTIFF/APPELLEE

v.                        (OKND 4:09-cr-43 SPF-2)
                          (OKWD 5:22-cr-357 F-1)

OSCAR STILLEY                               DEFENDANT/APPELLANT

AN APPEAL FROM JUDGMENT AND COMMITMENT ORDER
REVOKING APPELLANT'S SUPERVISED RELEASE


IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

THE HONORABLE STEPHEN P. FRIOT PRESIDING
(since replaced by the
HONORABLE SARA E. HILL)


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPELLANT'S OPENING BRIEF
AND REQUIRED ADDENDA**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Oral argument waived.



By:   Oscar Stilley, DOJ-FBOP 10579-062
      FCC Yazoo City Camp
      PO Box 5000
      Yazoo City, MS 39194-5000
      oscarstilley@gmail.com



i

## CERTIFICATE OF INTERESTED PERSONS (FRAP 26.1(d)(2) and 28(a)(1))

Appellate Court No. 24-5133
Short Caption: United States v. Oscar Stilley

1. The undersigned pro se Appellant, Oscar Stilley, certifies that the following listed persons and entities have an actual, plausible, or potential interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

   a. Co- defendant Lindsey Kent Springer is not a direct party to this appeal, but may have an interest in this litigation and/or the outcome of this litigation. Springer's direct appeal (10-5055) was consolidated with Stilley's attempt at a direct appeal, 10-5057. Pursuant to the rules, Springer may be entitled to join part or all of Stilley's appeal. FRAP 28(i); 10th Cir. R. 31-2. Appellant Stilley has been instructed by US Probation not to serve Springer with pleadings.

   b. Jeffrey Gallant is local counsel to Charles O'Reilly. O'Reilly is a California attorney.

   c. Vani Singhal is an attorney for the Northern District of Oklahoma enforcing the monetary portion of the judgment under attack. The State of Arkansas, Department of Finance and Administration, will receive the funds collected from Stilley until the alleged "tax losses" of the State of Arkansas are fully satisfied.

   d. Jerold Barringer, an attorney from Nokomis, IL, is a former attorney for Lindsey Springer.

   e. Government attorneys on the direct appeal of Lindsey Springer, (10-5055) which Stilley was allowed to join, include Frank P.

   f. Cihlar, Alexander P. Robbins, and Gregory Victor Davis.

     g. Clinton J. Johnson, US Attorney for the Northern District of Oklahoma, has certain duties to supervise Gallant, Singhal, and

     h. O'Reilly, over whom he has supervisory control. Oklahoma Rules of Professional Conduct, Rule 5.1.

     i. Appellate Case: 24-5033.

     j. Charles Robert Burton, IV, was standby counsel for Stilley. Robert Williams was standby counsel for Springer. Kenneth Snoke participated in the prosecution until his retirement. Terry Lee Weber was involved as CJA attorney, in some capacity, early in the criminal litigation.

2. The names of all law firms whose partners or associates have appeared for any party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Appellant is pro se and has been such at all stages of litigation, with the possible exception of Terry Lee Weber – see docket. The appellate docket shows Katie Bagley, Elissa Hart-Mahan, Samuel Robert Lyons, and Joseph Brian Syverson as counsel for Appellee.

    Appellant's signature: <u>/s/ Oscar Stilley</u>    Date: May 9, 2025
    Appellant's Printed Name: Oscar Stilley
    Oscar Stilley, DOJ-FBOP 10579-062
    FCC Yazoo City Camp
    PO Box 5000
    Yazoo City, MS 39194-5000
    E-Mail Address: oscarstilley@gmail.com

## WAIVER OF ORAL ARGUMENT

Appellant waives oral argument. Appellant takes the position that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. FRAP 34(a)(2)(c)

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS (FRAP 26.1(d)(2) and 28(a)(1))...................................................................................ii

WAIVER OF ORAL ARGUMENT .........................................................iv

10th CIRCUIT RULE 30.1 ADDENDA ...................................................vi

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES PRESENTED ....................................2

STATEMENT OF THE CASE ...............................................................5

SUMMARY OF ARGUMENT ..............................................................12

APPELLANT'S ARGUMENT ..............................................................16

I.    JUDGMENT AND COMMITMENT ORDER #338 IS VOID AND MUST BE VACATED.............................................................................17

II.   JUDGMENT AND COMMITMENT ORDER #752 IS VOID AND MUST BE VACATED.............................................................................26

III.  APPELLANT WAS DENIED AN UNBIASED AND IMPARTIAL TRIBUNAL, AN INDISPENSABLE ELEMENT OF DUE PROCESS. ...................................................................................................46

CONCLUSION ......................................................................................68

CERTIFICATE OF SERVICE..............................................................69

CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS ...................................................................................................69

## 10th CIRCUIT RULE 30.1 ADDENDA

<u>Please note:</u> Stilley doesn't have access to the thumb-drive containing *inter alia* the transcripts of revocation, but anticipates getting access soon, since the thumb-drive was delivered to FCC Yazoo City on May 8, 2025. See USPS <u>9505 5158 0751 5122 1025 41</u>. Assuming Stilley gets access to the thumb-drive and the ability to send and receive computer files by email, he will be able to supplement this brief with oral orders from the transcript of the hearing.

Stilley profusely apologizes for the inconvenience and spareness of his Addenda.

Judgment And Commitment Order, Docket 338 ........................ 2

Judgment And Commitment Order, Docket 752 ........................ 8

Judgment And Commitment Order, Docket 820 ..................... 16

# TABLE OF AUTHORITIES

## Cases

_____ 703 S.W.2d, at 876 ...........................................................................36

*Burgett* v. *Texas*, 389 U.S. 109 (1967) ...................................................35

*Burgett v. Texas*, 389 U.S. 109, 114-15 (1967) ......................................34

*Carnley* v. *Cochran*, 369 U.S. 506 .........................................................34

*Chapman* v. *California*, 386 U.S. 18 ....................................................35

*Doughty* v. *Maxwell*, 376 U.S. 202 ........................................................34

*Gideon* v. *Wainwright* ...........................................................................34

*Greer* v. *Beto*, 384 U.S. 269 ...................................................................34

*Hobbs v. U.S. Office of Personnel Management*, 485 F. Supp. 456 (M.D.

   Fla. 1980) .........................................................................................45

*Horne v. Flores*, 557 US 433, 490 (2009) .........................................27, 66

*Kitchens* v. *Smith*, 401 U.S. 847 (1971) ................................................35

*Lewis v. United States*, 445 U.S. 55, 59-60 (1980) ................................35

*Lewis v. United States*, 445 U.S. 55, 71-72 (1980) ................................37

*Linkletter* v. *Walker*, 381 U.S. 618, 639, and n. 20 (1965) ....................35

*Loper* v. *Beto*, 405 U.S. 473 (1972) ........................................................35

*Lorance v. Commandant*, 13 F.4th 1150 (10th Cir. 2021) ...............25, 66

*Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 649,

14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972) ................................................45

*Old Wayne Mutual Life Association* v. *McDonough*, 204 U.S. 8. ............45

*Parke v. Raley*, 506 U.S. 20, 24 (1992).................................................35

*Pickelsimer* v. *Wainwright*, 375 U.S. 2..................................................34

*Ritchie v. McMullen*, 159 U.S. 235, 242 (1895) .....................................20

*United States v. Blackwell*, 127 F.3d 947, 950 (10th Cir. 1997)............17

*United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998) ................17

*United States* v. *Tucker*, 404 U.S. 443 (1972) .......................................35

*US v. Hohn*, 123 F. 4th 1084 (10th Cir. 2024).......................................27

*US v. Hohn*, 123 F.4th 1084 (2024).......................................................66

*Valley v. Northern Fire and Marine Ins. Co.*, 254 U.S. 348, 353-354, 41

S. Ct. 116 (1920) ..................................................................................45

## Statutes

18 USC 2................................................................................................65

28 USC 1291 ...........................................................................................1

28 USC 2255............................................................................................63

## Rules

Arkansas Supreme Court Rule 2-1(d) ..................................................... 44

Federal Rule of Criminal Procedure 32.1 .............................................. 46

Professional Conduct, Rule 5.1 ............................................................ iii

Rule 1 Arkansas Rules of Civil Procedure ............................................. 21

**Related Cases** (taken from the District Court docket)

09-5165 10th Circuit Court

10-5101 10th Circuit

11-10096 US Supreme Court

13-5113 10th Circuit

14-5111 10th Circuit

17-8312 US Supreme Court

Related Case: 4:13-cv-00145-SPF-tlw

Appeals court case numbers:[1]

10-5055 (#340) 10th Circuit,

---

[1] There is some overlap between the related case and appeals court case number lists.

10-5156 (#428) 10th Circuit,

11-5053 (#447) 10th Circuit,

13-5062 (#497) 10th Circuit,

14-5047 (#554) 10th Circuit,

14-5109 (#588) 10th Circuit,

15-5109 (#607) 10th Circuit,

18-5104 (#659) 10th Circuit,

20-5000 10th Circuit,

22-5000 10th Circuit,

22-5113 10th Circuit.

## JURISDICTIONAL STATEMENT

1) This is an appeal from a judgment and commitment order revoking Appellant's supervised release and sentencing him to 2-years incarceration, with no supervised release to follow.

2) Jurisdiction to appeal to the 10th Circuit is at 28 USC 1291, for appeal from a final decision of a US District Court.

3) The judgment and commitment order was entered 11-15-2024. Dkt. 820. Notice of appeal was filed in open court 11-13-2024, which is within 14 days and thus timely. Dkt 817. The opening brief was originally due 2-11-2025. 10th Cir. Dkt. 26. The brief deadline was extended to 3-11-2025. 10th Cir. Dkt. 36. The clerk later extended the brief deadline to 4-9-2025. 10th Cir. Dkt. 38. Judges Bacharach and Phillips extended the time to 5-9-2025. 10th Cir. Dkt. 46. Appellant on 4-29-2025 filed 10th Circuit Dkt. 52 requesting an additional month to file his opening brief, but no ruling on this motion was entered.

This appeal is from a final order of the District Court revoking supervised release and sentencing Appellant to prison. Stilley by this

appeal brings up all prior adverse orders, including but not limited to the original judgment and commitment order, Dkt. #338.

## STATEMENT OF THE ISSUES PRESENTED

1.   Whether a criminal judgment taken in defiance of the 6th Amendment right of assistance of counsel is void.

2.   Whether a criminal judgment taken contrary to the 5th Amendment right to indictment and contrary to the evidence at trial is nevertheless a valid judgment.

3.   Whether a judgment procured by fraud, perjury, fraud upon the court, falsehoods, evidence contrary to the doctrine of judicial estoppel, contrary to the due process clause, protected by stomping out the victim's right to one direct criminal appeal, protected by *ex parte* communications and orders, where there is a lack of evidence sufficient to support guilt, where the evidence is affirmatively and indisputably contrary to the judgment, in which the defendant was ethically and legally required to perform the acts allegedly constituting the "crime," where the government made a complete mockery of its duties under Brady, Giglio, and progeny, where government lawyers violated their

own oaths of office as Oklahoma Attorneys at Law, and where the government has DEFAULTED AS TO ALL THE ISSUES LAID OUT IN THIS PARAGRAPH, the government nevertheless has the right to protect and enforce its thoroughly lawless and corrupt criminal judgment.

4.    Whether a judgment by a district court that engaged in *ex parte* communication with government counsel, entered a highly prejudicial *ex parte* order, then lied about it from the bench, then shut down any further discussion, and furthermore where the government attorney who participated in the *ex parte* hearing, got the *ex parte* order, relied upon the *ex parte* order, and sat like a lump on a log while the district judge lied about the whole thing, is nevertheless a lawful judgment entitled to respect and enforcement.

5.    Whether a party, in this case the United States of America, is entitled to raise new issues on appeal, not raised below, simply because the USA DEFAULTED ON TWO DISPOSITIVE MOTIONS, didn't raise any issues during the "revocation proceeding" that would arguably defeat Stilley's dispositive motions, and where the district court gave no reasons for his summary denial of the defaulted motions.

3

6.    Whether the 10th Circuit panel has any authority to help the government by suggesting issues for them to raise and argue for the first time on appeal.

7.    Whether a patently fraudulent and wrongful original criminal judgment and conviction order may somehow "spring back to life" when it appears that a subsequent "revocation" judgment is laughably illegal and void because the criminal defendant was unceremoniously denied 6th Amendment assistance of counsel as guaranteed by the 6th Amendment, during the criminal trial while his liberty was in jeopardy, despite persistent efforts to get 6th Amendment assistance of counsel.

8.    Whether void judgments may be sustained by continued attacks on the 6th Amendment right of assistance of counsel, with the obvious purpose and effect of stomping out the criminal defendant/appellant's right to prepare pro se appellate pleadings including but not limited to the opening brief in the one direct criminal appeal to which he is by law and rule entitled.

9.    Whether a trial, judgment, commitment, and immediate incarceration are lawful and valid when the district judge was plainly and indisputably not a disinterested and unbiased judge.

10.    Whether Stilley is entitled to remand for completion of the record, if the 10th Circuit is less than fully convinced that District Judge Friot engaged in prejudicial *ex parte* communications and orders throughout the course of this litigation.

### STATEMENT OF THE CASE

This material is being drafted "blind." Appellant Oscar Stilley (Stilley) was denied release/stay pending appeal, denied home confinement, and denied self-surrender. Rather, he was sent first to 1) Tulsa County Jail, then to 2) Cimarron Correctional Facility (Cimarron) in Cushing, Oklahoma, then to 3) Greene County Jail in Springfield, Missouri, where he was promptly tossed in solitary until after close of business on the day his first filing deadline expired, then 4) Back to Cimarron, then 5) to Tallahatchie County Correctional Facility (Tallahatchie) in  Tutwiler, Mississippi, and then 6) on 4-24-2025, to FCC Yazoo City Camp. Stilley's papers were repeatedly taken from him. The thumb-drive upon which he kept his files is still at Cimarron because he was told he couldn't take it with him. He arrived at FCC Yazoo City Camp with a solitary page of notes – and that only because

of a thinly veiled threat of litigation as Stilley was being processed for departure from Tallahatchie.

Appellant Oscar Stilley (Stilley) was tried for two-counts of tax evasion and one of defraud clause conspiracy in 2009. He was tried by a judge from the Western District of Oklahoma hand-picked for his ability and willingness to use dishonest and dishonorable means to get and hold criminal judgments contrary to the law. There was no actual vacancy to be filled, since the docket plainly shows that only one of the judges of the Northern District of Oklahoma (OKND) actually recused from Stilley's criminal case.

After the trial, the district court *sua sponte* struck Stilley's meritorious Motion For Judgment As A Matter Of Law – likely as a result of *ex parte* communications with government counsel. The government pretrial had stated, not less than 6 times, that Stilley's codefendant, Lindsey Kent Springer had earned money but didn't declare the income on a tax form and pay income taxes on it. Springer argued that the money was either gifts or donations, or loans, and that he thus had no duty to declare such on a federal income tax form. Indeed, the official tax forms don't have a place for such declarations.

Stilley in his Motion For Judgment As A Matter Of Law with brief in support explained that if Springer earned the money, Stilley had a legal, ethical, and moral duty to pay it over. Ditto if the client directs the payment lawfully, as a gift or donation. Anything less would be a conversion of client funds. Judge Friot struck it as overlength, denying any opportunity to reduce it. To get the page-count he wanted, he arbitrarily declared the motion to be "brief." On information and belief this has never been done to any litigant before or since Judge Friot did it to Stilley.

Judge Friot later entered a *sua sponte* Order setting a deadline for dispositive motions. Scant days after expiry of that deadline, the government switched to the "theft theory." It is all but certain that the dispositive motion deadline was entered as a direct result of government counsel explaining to Judge Friot that any criminal judgment against Stilley, on the pretrial or trial theories, would be a total embarrassment to the government and the court. Therefore, the *sua sponte* scheduling order, with a change of theory hard on its heels.

Stilley's one direct appeal was stomped out by the government, so he wasn't allowed the one direct criminal appeal to which he was

7

entitled by law and rule. He did however join the counseled Appeal
Brief of Lindsey Springer.

The government filed a petition to revoke in 2022. Stilley begged
and pleaded for 6th Amendment assistance of counsel, to no avail. He
was found guilty and sentenced to 3-months imprisonment plus an
additional 33-months of supervised release.

Stilley filed motions to vacate the original judgment and
commitment order, Docket #338, and Docket #752, and revocation
judgment. Stilley showed that #752 was taken in defiance of the 6th
Amendment right to assistance of counsel, and thus void. Not
void-ABLE, but VOID. Furthermore, he showed that #338 was itself a
pure unadulterated fraud, taken in defiance of due process, etc.
Therefore, it would not be possible punish Stilley for violating the
supervision provisions of #338. He'd already been sentenced and
punished for that, and #338 was as bogus as a $3 bill anyway.

District Judge Stephen P. Friot conducted an *ex parte* hearing, in
which Judge Friot ordered that the government needn't respond to
Stilley's motions. The date-and-time and circumstances of this order,

and the precise terms of the order, aren't available despite their great importance.

Mr. O'Reilly accepted the invitation and defaulted on Stilley's meritorious motions. He responded to none of Stilley's motions, including but not limited to the two dispositive motions discussed herein. Plus, Judge Friot denied the dispositive motions summarily, without explanation or reasoning. Thus, the rule against raising issues for the first time on appeal bars the government from raising ANY DEFENSE OR ISSUE WHATSOEVER in opposition to Stilley's dispositive motions and this Appeal Brief.

The bar on raising issues for the first time on appeal applies to parties. Courts can get around it, but only upon notice and opportunity for the opposing party to be heard. Stilley has already invited this 10th Circuit court to come up with issues worthy of the panel's time and attention – on condition that Stilley receive the notice and opportunity to be heard required by the due process clause of the 5th Amendment. Thus far nothing has been mentioned. Then again, that would be difficult so long as the court (court Clerk?) won't select a 3-judge panel until after briefing.

9

Stilley in District Court on 1-13-2025 filed #836, a Motion for Authorized Judge for Review of Denial of Release Pending Appeal, and #837, a Motion for Review of Denial of Release Pending Appeal, with Specific Findings. Judge Friot on 1-15-2025 got off the case, although Stilley hasn't seen that Order either. Apparently Judge Friot didn't acknowledge Stilley's motion or arguments, but simply got off the case.

The District Court case below was re-assigned to the Honorable Sara E. Hill. She declined to consider the merits of Stilley's Motion For Release Pending Appeal, on grounds that jurisdiction over Stilley's case was now at the 10th Circuit. That's why Stilley on 2-3-2025 filed his motion for remand to district court (10th Cir. 24-5133 #32). The CLERK ordered that this motion won't be decided until a 3-judge panel is selected.

**Stilley is confused about dates of mailing and filing, because he doesn't, at the time of drafting this document, have access to the case filings.** He's working on Trulincs, which doesn't allow copy and paste. Thus, the stilted organization and lack of specific information. Stilley feels himself highly aggrieved at having to work for over 5-months, under the extreme limitations of his incarceration, and have nearly all

of his work product stranded elsewhere. It appears that this was primarily an intentional attack on Stilley's 1st Amendment peaceful petition and 5th Amendment due process rights, as opposed to something incidental and without malice.

Stilley filed a motion for extension, (Dkt. #52) explaining that he still didn't have copies of the transcripts, or for that matter the other material that he had on his thumb-drive. He also filed a Motion For Release Pending Appeal. Dkt. #51. Stilley has been told that he must include pinpoint cites to the record, but at the same time denied access to the transcripts. It's a Catch-22 situation.

Faced with a deadline and denied reasonable access to resources, Stilley in this appeal will NEVERTHELESS prove that the government's default on dispositive motions means that Stilley is entitled to the reversal and dismissal of all three criminal judgments below. The government raised no issues below, that would call Stilley's entitlement to that relief into question. The government is therefore barred from raising any issues AT ALL on appeal, since ANY issue would by definition be a new issue. The government did this to themselves when they deliberately chose to default on dispositive

11

motions, trusting a highly unethical *ex parte* Order to save themselves from any adverse consequences.

### SUMMARY OF ARGUMENT

The government defaulted on all of Stilley's motions in the revocation proceedings below. Two of those motions were dispositive motions, which would overturn the original judgment, #338, and the first revocation judgment, #752. With the props knocked out from under both of those criminal judgments, Stilley couldn't possibly be guilty of violating the terms of any supervised release order. An order taken in derogation of the 6th Amendment right of counsel is not merely void-ABLE. It is VOID. It has all the force and effect of a blank sheet of paper.

This was not an accidental default. The default was a conscious decision. Prior to the deadline, the government responded to an email from Stilley, saying that the court had informed the government that it needn't respond to Stilley's motions.

Charles O'Reilly disclosed the fact that the district court had informed the government that it needn't respond to Stilley's motions, in an email to Stilley. Dkt. #836. Mr. O'Reilly didn't choreograph things

very well with the District Court, who clearly believed that his *ex parte* hearing and order were both still well-kept secrets. Judge Friot denied having told counsel for the government any such thing. Asked if his personnel had told government counsel any such thing, he angrily and emphatically said "MOVE ON!"

The *ex parte* communications and Order(s), which the District Court intended to conceal from Stilley, were highly unethical and illegal. Nor is this an isolated incident. It is a virtual certainty that Judge Friot and government counsel have on several other occasions engaged in *ex parte* contacts, with *ex parte* de facto orders, nearly all exceedingly prejudicial to Stilley.

That's why the government and the Court don't want this case remanded to district court. The systematic and pervasive lawlessness of government counsel as well as Judge Friot are almost certain to be disclosed. Judge Friot will be exposed for what he is – a biased and prejudiced judge who regularly makes a mockery of the law and applicable rules to crush the constitutional rights of his victims.

Because the government raised no issues below, it cannot raise any issues on appeal. In other words, its hands are tied, and justifiably

so. This court will be duty bound to reverse this cause, with instructions to dismiss all three criminal judgments against Stilley. The government's house of cards will collapse under the weight of the frauds perpetrated by both government counsel and the district court. Judge Friot was caught in embarrassing lies, trying to cover up embarrassing violations of legal and judicial ethics, etc.

Stilley first attacked #338, then #752. Then for his third point on appeal he used many words to show that Judge Friot was not a disinterested and unbiased court, with respect to Stilley. To the extent that anything is left of any of Stilley's bogus criminal judgments after these appellate proceedings, this cause should be remanded for supplementation and completion of the record, to include proof of the various times Judge Friot engaged in unethical *ex parte* contacts and/or issued *ex parte* orders.

Stilley has no way to count words, and doesn't even have a way to get a reasonably accurate estimate. He's drafting this brief on Trulincs. He's dependent on outside help to put his arguments into proper format. Once everything's stitched together, he has no realistic way to edit. Meeting a length limit will be exceedingly difficult. How does one

DESCRIBE to another person how to make the changes necessary to meet a brief length limit? Stilley has only crude tools, so edits are necessarily crude.

Stilley claims the right to a decision on his attack on #338 FIRST. If #338 is void, all the other judgments are equally void. Nobody can violate a void order.

Stilley currently has **no access to the transcripts**. They were in the Tallahatchie mailroom when Stilley left that facility. He was told that the thumb-drive would follow him to Yazoo City Camp. It did not. Stilley caused another thumb-drive to be sent. It arrived at the FCC Yazoo City Mailroom on Wednesday, 5-7-2025, where it awaits processing.

Nothing about this brief should be construed as a waiver of Stilley's objections. Stilley in the last appeal, 10th Cir. 22-5113, drafted a brief carefully and filed it electronically. Then he substituted another brief because the original one had a small error.

Stilley is filing this **Provisional Brief** because it is the best he can do, and there is a deadline coming up. Nothing in this brief or omitted

from it should be construed as a waiver of rights. However, a fundamental principle should be kept in mind.

Stilley suffers because the government essentially bombed him back into the stone age. The government suffers because through their perfidy they waived any and all issues that they might raise on appeal.

Therefore, Stilley's weak effort at a brief NECESSARILY TRUMPS anything that the government may attempt to say. They deserve it. They are caught up and embarrassed in their own web of deception. They have demonstrated the lengths that they will go to, in order to keep an innocent man in prison.

## APPELLANT'S ARGUMENT

<u>Please note</u>: Devoid of all legal papers, Stilley is unable to pinpoint cites and records *infra,* indicated by ___. Stilley respectfully reserves the right to supplement his Provisional Opening Brief when he gains access to his papers, references, and thumb-drive.

### Standard of Review

For all argument *infra*, the 10th Circuit reviews the district court's legal rulings de novo and its findings of fact for clear error. *United*

*States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998); accord *United States v. Blackwell*, 127 F.3d 947, 950 (10th Cir. 1997).

## I. JUDGMENT AND COMMITMENT ORDER #338 IS VOID AND MUST BE VACATED.

Stilley filed a motion to vacate the original judgment and commitment order, #338. The government defaulted. The default was done because the government and District Judge Stephen P. Friot held an *ex parte* hearing, at which Judge Friot ordered that the government needn't respond to Stilley's motions.

By defaulting, the government confessed these allegations. What allegations? Stilley doesn't concede a requirement to list them all in this brief. They're in the record. Dkt. 808. However, it may be helpful to lay out a sampling of that which the government confessed / conceded.

1) Docket #338 is void because it was procured by fraud, perjury, falsehoods, and frauds upon the court within the legal meaning of that term.

2) Docket #338 is void because it was entered contrary to the doctrine of judicial estoppel.

3) Docket #338 is void because it was entered on the basis of a factual theory in irreconcilable conflict with the pretrial theory set forth by the government not less than 6-times, in written pleadings.

4) Docket #338 is void because it was entered after a *sua sponte* deadline for the filing of dispositive motions, which means Stilley was formally barred from EVER filing a dispositive motion challenging that bogus, Johnny-come-lately theory of criminal liability.

5) Docket #338 is void because Stilley's adversaries stomped out his ability to prosecute the one direct appeal to which he is by law and rule entitled.

6) The trial testimony affirmatively proved that Stilley didn't steal anything, contrary to the government's sentencing theories.

7) Stilley merely followed the lawful directives of his clients, and failure so to do would have been an ethical violation worthy of a presumptive 3-month suspension of the practice of law, according to the rules of the California bar. (O'Reilly is a California bar licensed attorney.)

8) Compliance with the oath of office of Oklahoma attorneys would guarantee that Stilley is totally exonerated from any criminal liability whatsoever.

Stilley filed his petition in <u>Oscar Stilley v. John Thurston et al</u>, Ark. Sup. Ct. 24- CV-453 on July 16, 2024. The Arkansas Supreme Court expedited the matter, ordering a response by the 18th of July at 3:00 PM. The first sentence of their motion to dismiss described Stilley as "a convicted felon, disbarred lawyer, and fraudulently registered voter."

The Arkansas Supreme Court expedited Stilley's response. Stilley responded Thursday, July 25, 2024, along with a set of exhibits,[2] explaining how Stilley's current judgment and commitment order (Dkt. 752) *could not possibly be valid*. The Supreme Court referred the matter to the Special Master Friday the 26th of July, 2024. On Monday the 29th, two additional Assistant Attorney Generals entered their appearances in this case.

---

[2] These versions have operable links. The Luddites of Arkansas do not allow working links in their pleadings.

Respondent Thurston's answer was filed July 31, 2024. Respondent Thurston persisted in denying that Stilley is a lawfully registered voter, and perhaps more tellingly persisted in the false claim that Stilley is a "convicted felon."

Stilley is not a convicted *felon*. He is a convicted *innocent person*. Stilley went to prison for doing what was an *ethical duty*, based on the government's pretrial theories in their criminal case. Both Oscar Stilley and Evan Gershkovich have facially valid criminal judgments in their background. Neither are the product of looking at the relevant facts in a different way. In each case, the judgments are the product of *fiction*. Stilley is no more a *felon* than Evan Gershkovich.

"To warrant the impeaching of a foreign judgment because procured by fraud, fraud must be distinctly alleged and charged." *Ritchie v. McMullen*, 159 U.S. 235, 242 (1895).

By the admission of government counsel in the criminal case, Stilley could not *possibly* be guilty based upon the pretrial theories of the government. The post-trial "theft theory" was raised only after the expiration of a deadline for the filing of dispositive motions.

So why wouldn't the Arkansas Attorney General formally take the pretrial theories off the table? Because he *couldn't* – if he wanted an order dismissing Stilley's petition in Ark. Sup. Ct. 24-CV-453.

Respondent John Thurston, Arkansas Secretary of State had five bar licensed attorneys, all officers of the court. In addition to their duty to represent their client zealously, they had numerous ethical duties to the tribunal and *to the people*. Rule 1 Arkansas Rules of Civil Procedure says that those rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action."

Would that not include at the very minimum an early stipulation to at least which of three contradictory theories of criminal liability these five lawyers plan to urge the Arkansas Supreme Court to accept?

Stilley pushed his chips to the middle of the table. What chips? How about 1) a $5,000 bond for expenses for the Special Master proceedings,[3] 2) a potential fine, in the warning on the face of the application for voter registration, of up to $10,000, and 3) incarceration

---

[3] See Stilley's docket number 20. This order may also be reviewed on the official docket.

in state and/or federal prison, for up to ten years, also set forth on the face of the voter registration application. *Id.*

Stilley paid $165 to file his petition into one of the most hotly contested initiative petition contests of the election cycle. The first sentence of the first paragraph was "Stilley is a registered voter of the State of Arkansas." Nobody does that, with both eyes open, unless they are utterly convinced of the merits of their position – *and ready to defend it*. Nobody does that unless they have **supreme confidence** that they are right.

The Arkansas Attorney General has enormous resources. The US Attorney for OKND doubtless armed Arkansas Attorney General Tim Griffin and his team of 5 elite lawyers with all the information at his command. Both officials had every incentive to defend Judgment and Commitment Orders #338 and #752 against Stilley's assaults. Both offices are doubtless endowed with the best artificial intelligence, to scour the records of the various court proceedings, looking for chinks in Stilley's armor.

Stilley offered Thurston's counsel a set of the links he uses in his pleadings, in support of his arguments, for the asking. He also offered

frank discussion, with answers to questions about the proceedings. They didn't ask for any of these things. They doubtless got their information elsewhere, almost certainly from the US Attorney's Office for the OKND.

Stilley's already made his arguments elsewhere. Five of the best lawyers in the office of the Arkansas Attorney General *defaulted* on the motion to suppress #338.[4] Why? Because there are no words in the English language to justify #338, or to warrant allowing it to maintain the appearance of validity for another day.

Five of the best lawyers in the office of the Arkansas Attorney General tacitly admit that #338 is a pure unadulterated fraud. Five lawyers by their actions demonstrated a *sincere belief of the invalidity of #338*, with a confidence no less than that of Oscar Stilley when he filed into a white-hot election contest, in which the first sentence of his first pleading was "Stilley is a registered voter of the State of Arkansas."

---

[4] The official docket likewise confirms Stilley's assertions.

#338 is utterly indefensible. It is inexcusable evil, on par with the jailing, prosecution, and conviction of Evan Gershkovich. The time has come for it to be dumped into the dustbin of history.

Stilley's motion, #808, was defaulted by the government. They engaged in *ex parte* contact with the District Court, which is evil. They got an *ex parte* order to the effect that they could safely ignore Stilley's motions. That's tantamount to saying that the District Court will pay no attention to anything that Stilley says, however meritorious. That's also tantamount to saying that the district court is BY DEFINITION biased and prejudiced and has no right to stay on the case.

This is one of the reasons Stilley needs to know the exact date-and-time of the *ex parte* hearing and Order. Did Judge Friot intend to say that NOTHING WHATSOEVER that Stilley might raise COULD POSSIBLY result in a favorable ruling? The date of the *ex parte* Order will likely provide material information about Judge Friot's intentions, and the extent of his bias and prejudice.

Judge Friot got off the case. The Honorable Sara E. Hill is now on the case.

The best way to dispose of the majority of this case is to cut the head off the snake, by reversing and remanding with instructions to grant the motion to vacate #338. #338 was the pernicious evil that gave rise to the following two revocations. It was a void judgment, which should have been vacated.

Judge Friot's *ex parte* Order was not valid. Curiously, he denied entering the Order, despite the fact that he denied Stilley's motions without giving reasons or findings or justifications. Why would he do so if he hadn't already promised the government that no adverse consequences would befall them, if they defaulted altogether?

A criminal appeal is not moot if the court can grant "any effectual relief whatever." <u>*Lorance v. Commandant*</u>, 13 F.4th 1150 (10th Cir. 2021) Therefore, if the Court reverses with instructions to vacate #338, and orders both of the other judgments (#752 and #820, the judgment from which this appeal is taken) to be vacated for lack of a predicate judgment that might give rise to any duties under supervised release or otherwise, with further proceedings as may be necessary and proper, nothing further is technically necessary. Stilley would be able to move the district court to compel the return of "restitution," and would be

able to pursue false imprisonment and related claims in proper civil litigation.

The reverse isn't true. Stilley faces 3-10 years in prison in a felony perjury charge in Arkansas. Arkansas and federal prosecutors tag-teamed to get these charges on Stilley, while locking him up to crush his defensive capabilities, but neither are willing to commit to judgment #752 as the sole source of power to claim that Stilley lied on his Arkansas voter registration form. For these and other reasons judgment #338 must be addressed and must be vacated, to ensure that no collateral consequences continue to haunt Stilley.

## II.    JUDGMENT AND COMMITMENT ORDER #752 IS VOID AND MUST BE VACATED.

Stilley in #805, in the motion proper, flatly stated that Judgment and Commitment Order #752 is void because it was entered in violation of Stilley's 6th Amendment right to assistance of counsel.

The government defaulted. They had time to respond, under the rules. Stilley sent an email asking when he could expect a response. O'Reilly's response to that email made it plain that O'Reilly had already

made the conscious decision to default. His logic was that the court told him he needn't respond, so why bother?

Of course, as Stilley explained in 10th Circuit #51, litigants are not permitted to raise new issues on appeal. Where the party defaults on EVERYTHING, any issue at all would necessarily be raised for the first time on appeal. *US v. Hohn*, 123 F. 4th 1084 (10th Cir. 2024) (Bacharach dissent, fn. 7.) See also *Horne v. Flores*, 557 US 433, 490 (2009).

Therefore, the government has by operation of law confessed Stilley's allegations. It has also waived any right to raise any issue on appeal. The government gave up nothing valuable, since they have no meritorious defenses. The only thing left for this Court is to lay out the proper route for vacating the judgments below.

There are two sides to a revocation of supervision in the federal system. First, the court revokes supervision, which pleases the defendant. Defendants are rarely happy about what comes next, when the district court enters a new judgment and commitment order. The old judgment is history, the new judgment is the operative document. If the new one falls, the other one does not magically spring back to life.

27

If Judge Stephen P. Friot was so inclined, he could have sentenced Stilley to supervision from the moment sentence was pronounced until such time Stilley could get his things packed and get out the courtroom door. He did not have to max Stilley out on supervision. He made it very clear that he didn't have to order any supervision or incarceration *at all*. 2022 [Rev. TR. 104](#).[5] He acted like he hadn't even made his mind up yet.

Judge Friot sentenced Stilley to 3 months incarceration plus another 33 months of supervision, the max he could impose after a 3-month sentence of incarceration. The basic max supervised release term for Stilley's pretended offense is 3 years.

Let's have a basic rundown of what took place. Upon meeting with Probation Officer Ryan Forsyth, Stilley sought thirty days to file a motion to lift the requirement of monitoring software on his computer and phone. In addition to his law degree, Stilley has a BSBA in Administrative Management from the University of Arkansas, with high honors. Those requirements render his degree nearly worthless. Who wants an employee who can't touch a computer unless the

---

[5] [https://bustingthefeds.com/wp-content/uploads/2023/04/TranscriptRevocation.pdf](https://bustingthefeds.com/wp-content/uploads/2023/04/TranscriptRevocation.pdf)

employer pays $43.26 per month for software that gives federal

prosecutorial authorities a straight shot into their computers? Who

wants an employee required to maintain hidden software that literally

makes legitimate software *quit working*? Who wants an employee when

US Probation reserves the right to walk into the office and literally

carry the computers out of the building?

Judge Friot *sua sponte* transferred the criminal case to the

Western District of Oklahoma (OKWD) where he actually has a lawful

judgeship. OKWD US Probation employees immediately pressed

charges against Stilley for not having monitoring software on his phone

and computer, pleading the 5th Amendment, etc. Stilley challenged

jurisdiction. Judge Friot said he'd vacate his transfer order if Stilley

proved that jurisdiction and venue didn't lie in the OKWD.[6] ARWD

5:22-cr-357, Dkt. 13, pg. 1. "Vacate" according to dictionary.com,

definition 3, means "to render inoperative; deprive of

validity; void; annul: *to vacate a legal judgment.*"

---

[6] The pleadings (sans OKND record which is voluminous) are at
https://bustingthefeds.com/wp-content/uploads/2022/11/1-20Less2.pdf

Exactly! Stilley is filing this motion to vacate the *void* judgment #752. It's void now and it *always was*.

Judge Friot conceded that he wasn't "sufficiently satisfied" that he lawful authority to transfer the case to the OKND. However, instead of *vacating* the transfer, he transferred the entire case, charges and all, back to the OKND, over Stilley's vehement objections.

Stilley was satisfied that he'd be able to persuade OKND US Probation personnel to allow him reasonable opportunity to move to modify the conditions sufficiently to eliminate any requirement of computer and phone monitoring.

The case was transferred from OKWD to OKND on 11-3-2024. Stephen P. Friot magically followed the case back, inserted himself as judge, and accepted the transfer, despite OKND 4:21-go-00001-JED Doc. 14,[7] which requires a random assignment of the judge. On November 4, 2022, Judge Friot set a revocation hearing November 21, 2022. Stilley's assumptions thus crumbled into the dust. Stilley worked

_____

[7]https://storage.courtlistener.com/recap/gov.uscourts.oknd.5620 5/gov.uscourts.oknd.56205.14.0.pdf  Older or newer orders are also available on PACER or Courtlistener.

feverishly to prepare the pleadings necessary to put up some semblance of a defense.

On 11-16-2024, Stilley filed an unopposed motion for an initial hearing.[8] Dkt. 741.[9] Judge Friot denied the motion the same day, saying that Stilley was a former lawyer, and amongst other things knew how to request assignment of counsel.

On 11-20-2024, Stilley requested that his original standby counsel, Robert Burton, IV, be appointed as standby counsel, and if that was not allowed, that Stilley be informed of his options. Dkt. 744. (*Id.* at 82. Other references to docket items #732-#779 inclusive may be found in this set.)

On the day of the hearing, Judge Friot asked a CJA (Criminal Justice Act, or a private attorney on the list for appointment for indigent criminal defendants) lawyer named John Campbell to "remain and confer with Mr. Stilley during this brief recess." 2022 Rev. TR. 14. Judge Friot emphasized that he wasn't sure Stilley was entitled to

---

[8] The government opposed any delay, which is peculiar in light of the timing requirements of the applicable rule.
[9] https://bustingthefeds.com/wp-content/uploads/2023/04/732-779.pdf page 74.

counsel, and that he wasn't appointing Mr. Campbell to anything. *Id*. Stilley scarcely had time for a personal introduction to Mr. Campbell.

As soon as the first witness was called, at page 22 of a 123-page revocation transcript, Mr. Campbell was told that he was free to go. 2022 [Rev. TR. 22](#). From that point on, there was not the slightest pretense that Stilley was accorded his 6th Amendment right to the assistance of counsel.

Stilley asked for at least 15 days and preferably 30 days to try to find his own counsel. 2022 [Rev. TR. 21-22](#). This request was denied. Judge Friot said he would proceed with the revocation hearing. Stilley would have 15 days to look for counsel. The first 7 of those days were in solitary confinement, in the guise of Covid-19 quarantine. The remainder of that time was in general population of the Tulsa County Jail.[10] Any such lawyer would be for prospective matters, not for the revocation proceeding then before the court. In other words, this concession was a cruel joke and a mockery of the 6th Amendment. Stilley was denied so much as a pretense of 6th Amendment guaranteed

---

[10] Formally the David L. Moss Criminal Justice Center.

assistance of counsel – during the hearing, while his liberty was at stake.

This Court may ask why Stilley didn't raise the issue on his one direct appeal. That's a fair question – even though a party has no duty to appeal a void order. Stilley filed an opposed motion asking that the 13,000-word limit at the 10th Circuit be increased to 18,000 words. 10th Cir. 22-5113 Dkt. 010110844408. That request was denied the same day. 10th Cir. 22-5113 Dkt. 010110844616.

Stilley filed an opening brief[11] of 12,986 words, just 14 words shy of the limit. 10th Cir. 22-5113, and a reply brief[12] of 6,459 words, just 41 under the limit.  Despite Stilley's best efforts, the 10th Circuit panel faulted Stilley's briefing on the issue of "fraud upon the court," saying in its decision[13] that the argument had not been sufficiently developed. Stilley was effectively denied the opportunity to raise the 6th

---

[11] https://bustingthefeds.com/wp-content/uploads/2023/05/38_OpeningBrf.pdf
[12] https://bustingthefeds.com/wp-content/uploads/2023/07/42_ReplyBrf.pdf
[13] https://storage.courtlistener.com/recap/gov.uscourts.ca10.85862/gov.uscourts.ca10.85862.10010936490.1.pdf

Amendment counsel issue on direct appeal, and by logical extension on certiorari. US Sup. Ct. #23-966.[14]

Consider the case of *Burgett v. Texas*, 389 U.S. 109, 114-15 (1967):

>    The same result must follow here. *Gideon* v. *Wainwright* established the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the States by virtue of the Fourteenth, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one. And that ruling was not limited to prospective applications. See *Doughty* v. *Maxwell*, 376 U.S. 202; *Pickelsimer* v. *Wainwright*, 375 U.S. 2. In this case the certified records of the Tennessee conviction on their face *raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding*, and therefore that his conviction was *void*. Presuming waiver of counsel from a silent record is impermissible. *Carnley* v. *Cochran*, 369 U.S. 506. To permit a conviction obtained in violation of *Gideon* v. *Wainwright* to be used against a person either to support guilt or enhance punishment for another offense (see *Greer* v. *Beto*, 384 U.S. 269) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

>    The **admission of a prior criminal conviction which is constitutionally infirm under the standards of** *Gideon* **v.** *Wainwright* **is inherently prejudicial** and we are unable to say that the instructions to disregard it made the constitutional error

---

[14] https://bustingthefeds.com/wp-content/uploads/2024/03/PetCertFinalLinks1.pdf

"harmless beyond a reasonable doubt" within the meaning of
_Chapman_ v. _California_, 386 U.S. 18.
(Emphases added)

Consider now the case of _Lewis v. United States_, 445 U.S. 55, 59-60 (1980):

Four cases decided by this Court provide the focus for petitioner's attack upon his conviction. The first, and pivotal one, is _Gideon_ v. _Wainwright, supra_, where the Court held that a state felony conviction without counsel, and without a valid waiver of counsel, was unconstitutional under the Sixth and Fourteenth Amendments. That ruling is fully retroactive. _Kitchens_ v. _Smith_, 401 U.S. 847 (1971).

The second case is _Burgett_ v. _Texas_, 389 U.S. 109 (1967). There the Court held that a conviction invalid under _Gideon_ **could not be used for enhancement of punishment under a State's recidivist statute**. The third is _United States_ v. _Tucker_, 404 U.S. 443 (1972), where it was held that such a conviction **could not be considered by a court in sentencing a defendant after a subsequent conviction.** And the fourth is _Loper_ v. _Beto_, 405 U.S. 473 (1972), where the Court **disallowed the use of the conviction to impeach the general credibility of the defendant.** The prior conviction, the plurality opinion said, "lacked reliability." _Id._, at 484, quoting _Linkletter_ v. _Walker_, 381 U.S. 618, 639, and n. 20 (1965). (Emphases added)

Finally, consider _Parke v. Raley_, 506 U.S. 20, 24 (1992).

When a defendant challenges a previous conviction through a suppression motion, the Commonwealth must prove the existence of the judgment on which it intends to rely. Once this is done, a

presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding. **If the defendant refutes the presumption of regularity, the burden shifts back to the government affirmatively to show that the underlying judgment was entered in a manner that did, in fact, protect the defendant's rights. ____** 703 S.W.2d, at 876.

Stilley will spot Plaintiff the *existence* of a judgment. It's [Docket #752](). It says plain as day, near the top of page 1, "Oscar Stilley, Pro Se." Charles Robert Burton, IV, for all his faults, is smart and sophisticated on procedure, rules, and customs of the court. Mr. Burton earned over $90,000 taxpayer dollars sitting through the jury trial proceedings in 2009 and the sentencing proceedings in 2010, as standby counsel. Stilley wouldn't have to do so much to "bring him up to speed." He was Stilley's first choice.[15]

Stilley tried his best to either 1) get Charles Robert Burton, IV, in the same standby counsel role Judge Friot originally approved without the slightest inquiry into Stilley's financial resources or lack thereof, or

---

[15] It now appears probable that both Jeffrey Gallant and Judge Friot were aware that Burton was disbarred and didn't want Stilley to know that he was disbarred for conversion, whereas Stilley went to prison because he *would not* convert the funds of his clients.

2) get some other suitable attorney to serve in a role mutually acceptable to the Court and Stilley, with the understanding that a familiarization process would take some time, or 3) get at least some time for Stilley to try to find assistance of legal counsel through his own efforts and his own pathetically meager resources, rather than be denied the 6th Amendment right of assistance of counsel altogether.

This Court needs to know just a bit more about *Lewis v. United States*, 445 U.S. 55, 71-72 (1980). The majority held that an admittedly void conviction could be used as the sole predicate felony conviction for "felon in possession of a firearm." Justices Brennan, Marshall, and Powell wrote a powerful dissent, stating in pertinent part:

> *Burgett* and its progeny appear to control the result in this case. The clear teaching of those decisions is *that an uncounseled felony conviction can never be used* "to support guilt or enhance punishment for another offense." Here, petitioner could not have been tried and convicted for violating § 1202(a)(1) in the absence of his previous felony conviction. It could not be plainer that his *constitutionally void conviction* was therefore used "to support guilt" for the current offense. The Court's bald assertion to the contrary is *simply inexplicable*. (Emphases added)

Oscar Stilley filed an original action petition with the Arkansas Supreme Court, (*Oscar Stilley v. John Thurston et al*, Ark. Sup. Ct. CV-24-453) seeking to compel Respondent Thurston (the Arkansas

37

Secretary of State) to count the signatures on the Arkansas Abortion Amendment of 2024. Respondent Thurston filed a motion to dismiss. Stilley responded and utterly smashed the Attorney General's bogus claims. (This version has working links, which the Luddites of Arkansas refuse to allow in filed pleadings.)

The Arkansas Supreme Court not only dismissed the petition without consideration of the merits, it also referred Stilley to the Crawford County Prosecutor for criminal prosecution. The prosecutor filed a criminal "information" (charging instrument) charging perjury as a Class C felony, which carries a minimum 3-years and maximum 10-years in prison.  The sole count in this information contains not a solitary complete sentence, except those he copied verbatim from the Arkansas code. The charge is laughable gibberish and fails to allege a crime. The Crawford County Circuit Court denied Stilley's motion to dismiss without prejudice at the arraignment without asking the prosecutor for a response, whether written or oral.

The government revoked Stilley's supervised release and incarcerated him for two years. *Let's see how well Stilley defends frivolous state felony charges from a jail cell!* If this Court truly thought

38

Stilley committed a felony, and would go to Arkansas state prison after his jury trial scheduled for May 2025, why bother with this revocation proceeding?

Stilley's registration to vote was condition precedent to filing the original action petition against Secretary of State John Thurston. The Arkansas Attorney General claimed that Stilley wasn't qualified to register to vote. Stilley claimed he was entitled to register *inter alia* because his revocation judgment was taken in defiance of the 6th Amendment right to counsel. Stilley made no attempt to conceal his registration papers. The application and voter registration were [Exhibits "1" and "2"](#) to his [response to motion to dismiss](#).

The Arkansas Secretary of State defaulted on three motions in CV-24-453, as follows:

1) An 8-7-2024 [motion to suppress](#) the criminal judgment on revocation (Dkt. 752);

2) An 8-12-2024 [motion to suppress](#) the original criminal judgment (Dkt. 338);

3) An 8-9-2024 [motion to expedite](#) responses to discovery which had been served 8-6-2024.

The Arkansas Supreme Court on 9-5-2024 in a *per curiam* (by the court, signed by no one) order dismissed the original action petition despite the defaulted motions. The *per curiam* also referred Stilley for criminal prosecution. The *per curiam* did not rule on any of Stilley's three motions. In fact, it is impossible to divine, from the face of the dismissal order, that Stilley even filed the motions. The order of dismissal was (quite suspiciously) entered **one day prior** to the day upon which Stilley's requests for admissions would have been **deemed admitted** by operation of law. Appointing a Special Master for fact finding, and compelling Stilley to put up $5,000 to pay for it, was essentially a confession that factual disputes existed, which in turn implies that Stilley is **entitled to reasonable discovery**.

Stilley wishes to **petition the US Supreme Court for certiorari**. This could put the Arkansas Abortion Amendment of 2024 on the ballot, (albeit after the November 2024 election) for the consideration of the voters. If this Court locks up Stilley on the claimed violation of a plainly void judgment, based on US Supreme Court caselaw, it has injected itself into one of the most divisive hot-button issues in this country. If this Court denies a stay pending appeal, it doesn't just deliver a blow to

its own credibility. It strikes at the very core of the credibility of the federal bench and bar.

*Nobody* honestly believes Stilley committed perjury on the voter registration form. *Nobody* honestly believes that Stilley isn't a validly registered voter. The Arkansas Attorney General assigned five lawyers to Stilley's case – more than the four defense lawyers assigned to the [original action petition filed by Arkansans for Limited Government](#). With five lawyers against one disbarred and disgraced former lawyer, they *defaulted* on three motions, two of which were dispositive.

They didn't answer because *they had no answer*. Ditto for the Arkansas Supreme Court. They didn't rule upon any of these three defaulted motions – because they *had no rebuttal* to Stilley's meritorious arguments. Look at their [*per curiam*](#).[16] They studiously avoided the very issues for which they had ordered a Special Master to "make findings of fact regarding the validity of Oscar Stilley's Voter Registration." The Special Master [declared the issues, then nimbly danced his way around them](#). He said what Stilley was "vigorously"

---

[16] Justice Baker did not participate in this order.

contending, then refused to opine as to whether or not Stilley's

contentions were meritorious.

The Arkansas Supreme Court's *per curiam* hangs solely on the

slender thread of ***legal standing***. Stilley in his [motion to suppress the

revocation judgment](#) utterly dismantled the standing defense on the

basis of US Supreme Court case law on the 6th Amendment Right to

Assistance of Counsel.

According to the voter registration application form that Stilley

signed, Stilley faces up to a $10,000 fine and 10 years in prison under

state and federal laws, for registering to vote based upon ***false***

information. But none of the lawyers and judges involved in this legal

battle even ***think*** Stilley's statements were false. By their actions they

telegraph an ***unshakable belief*** that Stilley ***told the truth*** on his voter

registration application.

Look at the form. [Ex. 1, Stilley's Response to Motion to Dismiss](#)

dated July 25, 2024.  Stilley claimed that "I have not been lawfully

convicted of a felony by a lawful court." The caselaw makes it clear that

a criminal judgment taken against a defendant who is pleading for his

experienced and knowledgeable standby counsel, and if that's not

acceptable asking for his options, and if that's not acceptable practically

begging for a little time to try to get at least some assistance of counsel,

and yet is forced to proceed pro se with no assistance of counsel, is **_void_**.

It's not *void**able***. It's **_void_** in the strictest sense of the word. It's pure

unadulterated constitutional ***garbage***.

Let us not forget the precise words of the Arkansas Supreme

Court in its [formal order July 26, 2024](#);

> Gary Arnold Appointed as Special Master to conduct a hearing
> and ***make findings of fact*** regarding the validity of Oscar Stilley's
> voter registration. Special Master is ordered to report his findings
> to this Court by August 26, 2024. (Emphasis added)

Stilley challenged Arkansas Secretary of State John Thurston and

his five lawyers to come up with case law that says that registering to

vote despite an **incontrovertibly void** federal judgment and commitment

order is somehow illegal. What five lawyers? Let me list them and their

lofty titles:

1) Justin Brascher, Senior Assistant Attorney General for

   Intergovernmental Affairs

2) Nicholas Bronni, Arkansas Solicitor General

3) Asher Steinberg, Senior Assistant Solicitor General

4) Dylan Jacobs, Deputy Solicitor General

5) Christine Cryer, Senior Assistant Attorney General, Chief, Special Litigation Section

Bronni, Jacobs, and Steinberg were awarded a **2024 U.S. Supreme Court Best Brief Award** by the National Association of Attorneys General of Washington D.C.

Five hotshot lawyers not only failed to come up with any such caselaw, *they defaulted altogether*. What happened? Did the cat get their tongue?

Arkansas Supreme Court Rule 2-1(d) provides the time frame for the filing of responses to motions:

> *Response.* A response may be filed within 10 calendar days of the filing of a motion or petition. Evidence of service is required.

Stilley has prepared a home-made docket[17] that's much more user friendly than the official docket. Take your pick. Stilley's telling this Court, his adversaries, and the world the truth. Stilley's arguments are

---

[17] This docket includes the order of dismissal but isn't current. Use the official docket to see what has been added since this was uploaded to the web.

unassailable. Stilley's adversaries tacitly admit that Stilley is right, and that Dkt. 752 is *void*.

We've already established that the US Supreme Court considers Dkt. #752 to be a void judgment. So, what is meant by that term? A void judgment is one which, from its inception, was a complete nullity and without legal effect. *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 649, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972); *Hobbs v. U.S. Office of Personnel Management*, 485 F. Supp. 456 (M.D. Fla. 1980). A void judgment has the same legal effect as a blank piece of paper. It does not have to be overturned or reversed on appeal to "become void." See *Vallely v. Northern Fire and Marine Ins. Co.*, 254 U.S. 348, 353-354, 41 S. Ct. 116 (1920), where the Court explained:

> …Courts are constituted by authority and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as *nullities*. They are 354*354 not voidable, but simply void, *and this even prior to reversal*. *Elliott* v. *Peirsol,* 1 Pet. 328, 344; *Old Wayne Mutual Life Association* v. *McDonough,* 204 U.S. 8. (Emphases added)

## III.  APPELLANT WAS DENIED AN UNBIASED AND IMPARTIAL TRIBUNAL, AN INDISPENSABLE ELEMENT OF DUE PROCESS.

### Point III-A

A disinterested and impartial tribunal is one of the few requirements for which at least lip service is given, on revocations of supervised release. See Expedient Imprisonment, Virginia Law Review, page 302. In pertinent part, it reads: "Those requirements would eventually be incorporated into Federal Rule of Criminal Procedure 32.1, later made applicable to probation revocation and supervised release proceedings."[18]

District Judge Stephen P. Friot was far from disinterested, and the diametric opposite of impartial. He held an *ex parte* hearing with opposing counsel, issued an *ex parte* Order, then lied about it from the bench. He smashed Stilley with the max sentence for any one count of an indictment – specifically two years of incarceration. He denied Stilley's request for home confinement or release pending appeal. He

---

[18] https://virginialawreview.org/articles/expedient-imprisonment-how-federal-supervised-release-sentences-violate-the-constitution/

denied self-surrender.  He imposed the regime that inflicted the greatest damage on Stilley's ability to represent himself on appeal – immediate remand to US Marshal Custody.

Stilley went to Tulsa County Jail, to Cimarron Correctional Facility, to Greene County Jail in Springfield, Missouri, back to Cimarron, then to Tallahatchie County Correctional Facility in Tutwiler, Mississippi, then to Yazoo City Camp on Thursday, April 24, 2025. He arrived at his final destination bereft of his thumb-drive, possessing only a solitary sheet of paper with a few notes. His captors deprived him of everything else.

Judge Friot was accuser, expert witness, and decider all rolled into one. Think not? Take a look at the SEALED petition for revocation. Of course, he doesn't want that document or any part thereof made available for public review. Why?

Amongst other things because there are only three names on that pleading. Specifically, Friot signed it, Ryan Forsyth signed it, and Corey McClintock signed it.[19]  McClintock is the US Probation Officer for the

_____

[19] The fact that the petition to revoke was signed only by these three persons is disclosed by the docket. See #792, Petition for Summons.

Northern District of Oklahoma (OKND) in charge of "supervising" Stilley. She delegated day-to-day operations to Mr. Forsyth, a Probation Officer with US Probation for the Western District of Arkansas. NEITHER OF THESE TWO INDIVIDUALS HAVE A LAW DEGREE OR A LICENSE TO PRACTICE LAW.

Why is that written in all capitals? Because that's the only emphasis Stilley is allowed on Trulincs. Why does it call for emphasis? Because Judge Friot, in addition to wearing the judge hat by sitting on the bench and the accuser hat by signing the petition to revoke, acted as expert witness. _____

Judge Friot testified that Stilley engaged in the unauthorized practice of law by helping inmates write up pleadings. Stilley took the inmate's information, wrote up grammatically suitable prose, let the inmate read it, expressly told the inmates that it was their words not his, effectuated their textual changes until they were sufficiently satisfied to adopt every word as THEIR OWN, then sent them a nicely formatted document.

That's impossible to do on Trulincs. That requires help from outside a federal prison. In most federal prisons Trulincs is the only

resource that allows writing, thinking, sleeping, and editing. Trulincs allows the "friend on the street" to safeguard the text and invite edits to specific parts. When the edits are done, the friend on the street puts the text into proper formatting on a suitable word processor and sends it to the inmate for signature. Then the Word and pdf document is sent to family and friends of the inmate, so it won't be lost.

Where is this testimony about what constitutes practice of law? Stilley doesn't yet have access to the transcripts. He can't say the page number; he just remembers that it happened.

There is no special dispensation allowing federal employees to commit the crime of unauthorized practice of law. If it was "practice of law" for Stilley to function as a writer of English prose, by helping inmates put their own thoughts into proper form, how much more is it "practice of law" for nonlawyers to write up accusations against Stilley, and file them or cause them to be filed? Stilley's accusers indict themselves.

Charles Anthony O'Reilly prosecuted the case against Stilley – after chasing off two other lawyers who had taken the oath of an Oklahoma Attorney at Law. ____ O'Reilly was nowhere to be seen when

the accusations were filed. He has no fingerprints on that document. He just came flying in from Washington, D.C., to prosecute SOMEONE ELSE'S ACCUSATIONS.

Therefore, if Friot's expert testimony is true, the charges against Stilley are irrefutable evidence that two government employees committed the crime of "unauthorized practice of law." All Stilley's efforts to get particulars were promptly and decisively shut down. In what state did Stilley commit this "crime?" We don't know, because Friot refuses to submit to cross examination – or indeed to allow Stilley to get the information from Ryan Forsyth on cross examination. Where is the specific definition of unauthorized practice of law, in the state where Stilley's "crime" occurred? We don't know, because particulars would expose and enlarge the absurdity of Friot's assistance to the prosecution.

How does one cross examine a federal judge sitting on the bench, concerning his expert testimony coming without so much as a sop toward due process within the meaning of applicable rules? Friot claimed the right to sentence Stilley to 3 consecutive 2-year sentences, for a total of 6 years. __ (Stilley lacks access to transcripts.) How is a

criminal defendant expected to cross examine a thin-skinned judge in a black robe?

And where and how did it become lawful for a judge to be accuser, witness, and decider all in the same case? By Friot's own testimony Forsyth and McClintock have no legal authority to draft up any accusation against Stilley. The only other person with the arguable right to draft an accusation against Stilley is THE JUDGE – JUDGE FRIOT. Judge Friot arrogated to himself the right to accuse Stilley, then have a trial in which he would decide the sufficiency of the evidence on his own accusations AND OF COURSE HIS OWN TESTIMONY.

Is it really a public trial when the accusations are sealed? Is this not a Star Chamber tactic, one of the abuses that gave rise to the American revolution? How does an interested member of the public follow the proceedings when they cannot even look at the de facto indictment?

### Point III-B

The federal legislative and judicial branches have shredded the primary constitutional guardrails out of the federal prosecutorial

system, for "revocations" of supervised release. The very term "revocation of supervised release" is a fraud. It's not a "revocation" of any special privilege, it is a garden variety criminal prosecution in utter defiance of the constitution, using deceitful terminology. Consider the protective safeguards that simply don't exist for "revocation" defendants, based on the current statutory and precedential framework:

1) No grand jury indictment – 5th Amendment;

2) No proof beyond reasonable doubt – preponderance of the evidence is sufficient;

3) No trial jury, (6th Amendment; Art. III, Section 2, Clause 3) the district judge gets to decide what constitutes a "preponderance" of the evidence, and it's really hard to overturn that on appeal;

4) No protection against double jeopardy – 5th Amendment;

5) No requirement that the charged conduct be criminal at all;

6) Stilley has just been sentenced for the 3rd time on a likely fictitious indictment filed in 2009, but not returned in open court as required by FRCrimPro 6(f). How do we know? District Judge Friot declared that Stilley was guilty of 7 out of 9 counts of the petition to revoke. Nevertheless, Judge Friot declared, ON THE

RECORD, ___ THAT he could sentence Stilley to 2 years on each of 3 counts to run consecutively, for a total of 6-years incarceration.

Stilley was named in counts 1, 3, and 4 of the original indictment. He was found guilty on all counts. It is undeniable that Judge Friot tried Stilley (on this second "revocation") on the assumption that a solitary minor offense on any of the revocation counts would be sufficient to sentence Stilley on the 3 counts of the original indictment, up to 2-years per count. He never suggested that Stilley could get 2-years on each of 7 counts, for a total of 14-years imprisonment. He never suggested that the number of counts of the petition for revocation on which guilt was found had THE SLIGHTEST influence on the max sentence he could impose on Stilley.

Everything had to do with the original 3 counts of conviction. The only logical conclusion is that Judge Friot placed Stilley in jeopardy for the 3rd-time, and punished him for the 3rd-time, on an indictment that was faulty in the first place. Plus, the theory of CONVICTION AND SENTENCE was in IRRECONCILABLE CONFLICT with the pretrial theory of criminal liability. In reality, Stilley has for the 3rd time been

convicted and sentenced on an "indictment" that exists only in the minds of the prosecution lawyers and Judge Friot, and wasn't even concocted until after the deadline for dispositive motions.

If the district court was right, supervised release is truly "life on the installment plan." The law requires that the time of supervision be reduced by the amount of a sentence of incarceration. That's why Judge Friot in November 2022 sentenced Stilley to 3 months in prison plus 33-months of additional supervised release. He specifically stated that he wanted Stilley on a very short leash for as long as possible. ____ If he's right, he could have revoked Stilley 30 more times, giving him one month in prison each time, and another term of supervised release one month LESS than the previous one. Nobody ever gets free from a term of supervised release except by the sheer grace of the presiding judge.

Judge Friot denied Stilley additional constitutional rights, beyond the customary and routine constitutional violations identified in EXPEDIENT IMPRISONMENT. Stilley was denied 1) the nature and cause of the accusation as guaranteed by the 6th Amendment; 2) venue as required by Article III and the 6th Amendment; 3) due process of

law; and 4) the right of Assistance of Counsel, a particularly insidious constitutional violation that continues to this very day.

Stilley filed a motion for true and correct record. ___ That was denied without a response from the government.

District Judge Friot supplied the expert testimony to find Stilley guilty of unauthorized practice of law. ___ Stilley made valiant efforts to find out where his alleged "unauthorized practice of law" allegedly occurred, for this reason. Stilley knew it HAD TO BE either in Arkansas where Stilley lives, or in one of the states in which an inmate was incarcerated, who had received Stilley's administrative assistance. It couldn't possibly be ANYWHERE in Oklahoma. Stilley furthermore knew that the logical choice was to say that Stilley did the work in Arkansas, where he lived.

This theory has many fatal flaws. For one thing, Stilley researched the question exhaustively in his home state, and also as a general rule. Second, Stilley received an excellent job offer from an attorney who wanted to hire him. Stilley showed the lawyer that the Arkansas rules specifically allow him to hire a disbarred lawyer, BUT NOT to allow the disbarred lawyer to maintain a presence in the law

office. That rule was no problem since Stilley preferred to work remotely anyway. That's his forte. Stilley does writing and administrative work.

Stilley explained that the government knew Stilley was innocent and prone to stand on his rights, and was therefore highly insecure. They NEEDED to attack Stilley again, to try to get a less embarrassing conviction. The lawyer ran a serious chance of being attacked, perhaps criminally, in order to GET TO STILLEY. In other words, they would threaten the lawyer but offer to drop everything against the lawyer, if he would help them attack Stilley on whatever bogus charge they might drum up. The lawyer revoked his offer of employment.

Stilley earned a fraction of what he could have earned, perfectly legally, drafting legal documents in the formal employment of an Arkansas lawyer. Why? Because he was honest with the lawyer and let the lawyer make his own decisions.

Lawyers cannot help a nonlawyer practice law. They can't allow their paralegals to practice law. If drafting documents of a legal nature amounts to the practice of law, by using a paralegal, the average lawyer in Arkansas commits dis-barrable offenses on a routine basis.

Is Stilley paranoid? He is not. Stilley worked for Remember Every Victim and Missing Person in US, Inc. He went from hero to zero almost overnight. His former boss Patti Rush, who used to brag on his skills and his work, appeared and testified against Stilley.

Will the government know if Stilley works for a lawyer? Of course they'll know. Stilley has to get permission to work for anyone. After REVAMP fired Stilley, he got another job with the same hours, pay, terms and conditions, etc. That job was vetoed by US Probation. Stilley knew that the fix was in. They would find a way to crush Stilley, at the time of their own choosing. Stilley has seen them "revoke" a supervisee scant days before the conclusion of supervision, for supposedly wrongful acts occurring within the first month of supervision. Supervised release is fundamentally a corrupt system, designed to evade the constitution.

Plus, one of the charges was that Stilley quit giving his adversaries a straight shot into his computer. The government would see all email traffic between Stilley and the lawyer. They could use a fine-toothed comb to look for something with which to "revoke" Stilley, or better yet to manufacture a new criminal charge. Stilley's lawyer-

employer would have an attorney-client privilege leak the size of a Mack truck.

## Point III-C

Stilley has already shown that Judge Friot 1) engaged in *ex parte* communications with counsel for the government, 2) made *an ex parte* order, and 3) lied about it in open court.

Stilley filed a motion in District Court seeking disqualification of Judge Friot, Dkt. 836, and another motion seeking release pending appeal. Dkt. 837. Two days later, Judge Friot entered an order removing himself from the litigation. He didn't mention Stilley's motion, or the fact that he was caught red-handed, lying from the bench about a highly unethical and extremely prejudicial order. Neither Judge Friot nor Charles O'Reilly provided any justifications or apologies. Neither has made the slightest effort to "come clean" about their unethical deeds.

The case below was re-assigned to the Honorable Sara E. Hill. Judge Hill denied Stilley's motion on grounds that jurisdiction had gone to the court of appeals due to the appeal.

Stilley moved the circuit court for a remand to district court 1) for consideration of the question of release pending appeal before a legal court and before an impartial court, neither of which Stilley had been accorded in the proceedings below, and 2) supplementation of the record. It is a virtual certainty that Judge Friot had been having *ex parte* communications with counsel for the government, and entering orders as a result.

What orders? The *sua sponte* order ___ striking Stilley's motion and brief in support of judgment as a matter of law (Dkt. 261 and 263) was likely the product of *ex parte* communications between the district court and government counsel. It was without controversy prejudicial. The government had no way around Stilley's Motion For Judgment As A Matter Of Law. Had that motion been fairly considered, Stilley would not have served a day in jail on this frivolous criminal prosecution.

Later the court entered a *sua sponte* order ___ imposing a deadline on dispositive motions. Shortly after the expiration of that deadline, the government changed their theory from the pretrial theory that Springer EARNED THE MONEY but didn't disclose it on an income tax return and pay taxes on it, to the post-trial theory that

STILLEY AND SPRINGER STOLE THE MONEY. Once again this is almost certainly the product of *ex parte* communications, with the government telling the district court that they needed to do a theory switch-up, but that it wouldn't work if Stilley could file a dispositive motion against their novel theory. The Trial Court evidence was altogether contradictory to the government's brand-new theory.

So, on this third prosecution of a single indictment concocted after a dispositive motion deadline, which theory was it? The pretrial theory in which the government stated not less than 6 times, in written pleadings, that Springer EARNED the money and didn't pay taxes on it? Under that theory Stilley's payment of the money was not only lawful, it was an ethical and legal duty.

Or was it the post-trial theory, utterly contradictory to both the indictment and the trial evidence, to the effect that both Stilley and Springer STOLE the money? The government in response says that theft proceeds is still taxable income. But what happened to the right to indictment, to the doctrine of judicial estoppel, to the doctrine of "fraud on the court," to ethics in government? The government feigns

ignorance of Stilley's actual arguments, because they have no arguably meritorious answers to them.

Now can this panel of this 10th Circuit Court see why Stilley feels himself so aggrieved by the denial of information concerning the nature and cause of the accusation? Now can the panel see why Stilley is so angry that the District Court excused the government from responding to ANY of Stilley's motions? The main point of that wicked exercise was to leave the government "room to roam" so they could fabricate legal theories as the litigation goes along.

Confession of the government's THEORIES is tantamount to a confession that Stilley is innocent, that the prosecution below is a fraud on par with the Russian government's prosecution of Evan Gershkovich, and that a fair trial would necessarily exonerate Stilley of any and all criminal taint whatsoever. That's why the government makes a complete and utter mockery of the "nature and cause of the accusation" clause of the 6th Amendment. Committing to a theory, any theory, guarantees that Stilley will be exonerated of all three bogus Judgment and Commitment Orders. It will make Stilley a free man, and restore his good name.

None of the orders in the case below, from #20 forward, are legitimate and valid. Judge Friot has already established himself as an unmitigated, shameless liar, who when confronted with undeniable evidence of his lawlessness and perfidy simply gets off the case, and tag-teams with other government operatives to stomp out Stilley's due process rights. Since Friot got off the case, Stilley has had nothing but stiff-arm tactics to prevent Stilley from getting to the truth.

None of Judge Friot's orders are valid or worthy of the slightest credence. Did Stilley have a right to an honest and disinterested tribunal at the original sentencing? Of course he did. Was Judge Friot an honest and disinterested judge? He himself has proven that he is not.

Stilley was denied the one direct appeal to which he was entitled. ___ Stilley was denied the process to which he was due. To this day Stilley is entitled to the one direct appeal of the original judgment and commitment order. #338, the original judgment and commitment order, is a fraud and a nullity for amongst other reasons the fact that it was entered by a completely corrupt and lawless judge, who hated Stilley and wanted to hurt him regardless of the law or the facts.

Stilley never got any consideration of his motion under 28 USC 2255 by a disinterested and impartial judge. Judge Friot allowed no discovery, and didn't consider the motion on the merits. Friot DISMISSED Stilley's 2255 motion, precisely because he knew that any consideration on the merits would compel a COMPLETE EXONERATION of Stilley.

Stilley of course wants to get back to the district court. He is ENTITLED to complete the record. He is ENTITLED to 1) a lawful judge within the meaning of statues and rules, to consider his motion for stay/release pending appeal, 2) a judge who is not highly unethical and an unmitigated liar.

This 10th Circuit court has declared that it won't consider Stilley's motion for remand until after Stilley briefs the Court. Thus, this **Provisional Opening Brief**. This Court didn't say it wouldn't consider Stilley's motion EVER. It said it would only consider it LATER.

The question arises. WHEN did Judge Friot BECOME so partial and prejudiced that he had no right to preside over US v. Stilley? When did he become so unethical as to hold *ex parte* hearings and lie about the fact? We know that he lied from the bench during the first

sentencing, when he said he understood that incarceration degraded litigation capabilities, and that he'd do what he could to ameliorate that. In reality he stalled for time on Springer's motion saying the jail was interfering with his mailings of legal pleadings, until Friot could say that the parties had been shipped to another carceral facility.

The truth is that Judge Friot was assigned to Stilley's case right after he cheated Skoshi Thedford Farr out of due process. A decision – any decision, right or wrong – would have either 1) exonerated her, or 2) LED TO HER INEVITABLE EXONERATION. So, he did what he does best – he refused to enter ANY ORDER AT ALL, so as to allow the government to attack her again. Then, in apparent retaliation for her impertinence in actually standing on her constitutional rights, he increased her sentence from 30 months to 33 months.

Was Judge Friot lawfully appointed to fill a vacancy generated by recusals? No, he was not. Only one judge recused himself. The clerk had a duty to replace the recused judge by random draw, according to the rules and customs of the court. This did not happen. Judge Friot was unlawfully hand-picked and assigned to the case.

Judge Friot has been illegally assigned from day one. He has acted and ruled in a prejudicial and biased way from day one. His word has been worthless from day one.

What happened right before the latest revocation? Judge Friot helped the government seal all the information about the US Attorney's theft-ring, in which criminal restitution money is stolen, under the pretense that it is "unclaimed funds." See District Court #815. ____ Does that not make Judge Friot also a thief, or at least an accessory to theft? The government could easily convict any private citizen for theft, on the basis of Judge Friot's acts and omissions. Don't forget that Stilley was charged not only with primary offenses, but also with accomplice liability under 18 USC 2.

What's the last thing Judge Friot did? He smashed Stilley with a 2-year sentence for allegedly violating a VOID judgment and commitment order. Did he think his judgment and commitment order #752 was salvageable by legal argument? No, that's why he did the *ex parte* hearing and the *ex parte* order excusing O'Reilly from responding in any way. That's why Judge Friot's denial of Stilley's motion to vacate

#752 was supported by no logic or reasoning whatsoever. It was a bare denial. YOU LOSE, STILLEY!!!

Stilley has already explained that litigants aren't allowed to raise new issues on appeal. _US v. Hohn_, 123 F.4th 1084 (2024), dissent of Bacharach, note 7 See also _Horne v. Flores_, 557 US 433, 490 (2009). That's binding on litigants. If the Court wants to raise a new issue, it has to give written notice and opportunity for Stilley to respond. As a practical matter, that would require remand to district court. This Court has declined to remand this matter to district court. Therefore, all 3 criminal judgments against Stilley must be reversed and dismissed. The government is LEGALLY BARRED from even raising an issue – any issue – to challenge Stilley's arguments. They raised zero issues at trial, which means they're entitled to raise ZERO ISSUES on appeal.

According to the precedent of this court, a criminal case does not become moot until it is impossible to give any meaningful relief whatsoever _Lorance v. Commandant_, 13 F.4th 1150 (10th Cir. 2021) If this Court vacates or causes to be vacated all 3 judgments of conviction, such that all criminal penalties must be returned to Stilley, and all civil

disabilities are eliminated, and there is no remaining impediment to

Stilley filing suitable civil process such as a Standard Form 95 tort

claim for false imprisonment, etc., then further CRIMINAL relief will

presumably be impossible. In that case we can presume that it will be

unnecessary to remand this case to allow Stilley discovery, to determine

the full extent of *ex parte* hearings, motions, and orders between Judge

Friot and government counsel.

Judge Friot has shown himself dishonest, biased, and prejudiced,

preceding his assignment, to the day he removed himself, and AT ALL

POINTS IN BETWEEN. To the extent that the government seeks to

challenge this conclusion, they should come prepared to allow Stilley to

do all necessary discovery, including depositions of Judge Friot, Charles

O'Reilly, and other prosecutors assigned to the prosecution of Stilley.

It is impossible to leave the slenderest reed of this bogus criminal

prosecution standing, yet deny Stilley remand for the purpose of

discovery to determine the extent of the perfidy of Judge Friot and

government counsel. The basic principles of due process and peaceful

petition will tolerate no less.

CONCLUSION

This Court should reverse and remand with instructions to vacate Judgment and Commitment Orders #338 and #752. Judgment #820 should be reversed and dismissed as lacking a valid predicate judgment upon which supervised release might be supported. To the extent that the slightest vestige of any criminal judgment survives this appeal, this matter should be remanded for full discovery and judicial determinations as to the full extent of *ex parte* communications and orders, and other unethical behavior on the part of the counsel for the government, government employees, and Judge Friot.

Respectfully submitted,

> By: /s/ Oscar Stilley
> Oscar Stilley, DOJ-FBOP # 10579-062
> FCC Yazoo City Camp
> PO Box 5000
> Yazoo City, MS 39194-5000
> oscarstilley@gmail.com

### CERTIFICATE OF SERVICE

I, Oscar Stilley, by my signature above as well as the signature set forth below certify that I have this May 9, 2025 by CM/ECF served all parties entitled to service in this case; furthermore, I certify that the parties to this case (or their counsel) have each, in writing, mutually waived the service of hard copy of briefs and record excerpts.

By: /s/ Oscar Stilley


### CERTIFICATE OF COMPLIANCE WITH LENGTH

### LIMITATIONS

I, Oscar Stilley, by virtue of my signature below as well as the two foregoing signatures, certify that I produced this brief in the current version of Word, that I have performed a word count, and that the brief in chief herein has 12,966 words, which is less than 13,000 words. This count was obtained by starting with the jurisdictional statement and continuing until just before the words "Respectfully submitted" at the end of the brief.

By: /s/ Oscar Stilley

# RULE 30.1 ADDENDA

℘AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ OKLAHOMA

UNITED STATES OF AMERICA
**V.**

OSCAR AMOS STILLEY

**JUDGMENT IN A CRIMINAL CASE**

Case Number:　　09-CR-043-002-SPF

USM Number:　　10579-062

Oscar Amos Stilley, Pro Se
Charles Robert Burton, IV, Standby Counsel
Defendant's Attorney

## THE DEFENDANT:

[] pleaded guilty to count(s) _____

[] pleaded nolo contendere to count(s) _____
which was accepted by the court.

[x] was found guilty on counts   One, Three, and Four of the Indictment _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States | 1/15/09 | 1 |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting | 1/15/09 | 3 |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting | 1/15/09 | 4 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[] The defendant has been found not guilty on count(s) _____

[] Count(s) _____ [] is  [] are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States Attorney of material changes in economic circumstances.

April 23, 2010
Date of Imposition of Judgment

_Signature of Judge_

The Honorable Stephen P. Friot, U.S. District Judge
Name and Title of Judge

_April 28, 2010_
Date

2

AO 245B   (Rev. 09/08) Judgment in Criminal Case
          Sheet 2 — Imprisonment

Judgment — Page   2   of   6

DEFENDANT:          Oscar Amos Stilley
CASE NUMBER:        09-CR-043-002-SPF

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:     180 months.  Sixty months as to each of Counts One, Three, and Four, all such terms to run consecutively to each other.

[x]   The court makes the following recommendations to the Bureau of Prisons:

      The Court directs the Bureau of Prisons not to incarcerate the defendant with his co-defendant, Lindsey Kent Springer (USM
      Number 02580-063).

[x]   The defendant is remanded to the custody of the United States Marshal.

[]    The defendant shall surrender to the United States Marshal for this district:

      []    at _____     []  a.m.   []  p.m.   on   _____ .

      []    as notified by the United States Marshal.

[]    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      []    before 12 noon on   _____ .

      []    as notified by the United States Marshal.

      []    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on   _____     to   _____

at   _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By   _____
DEPUTY UNITED STATES MARSHAL

3

AO 245B  (Rev. 09/08) Judgment in a Criminal Case
        Sheet 3 — Supervised Release

Case 4:09-cr-00043-SPF  Document 338 Filed in USDC ND/OK on 04/28/10  Page 3 of 6
        Appellate Case: 24-5113  Document: 57  Date Filed: 06/08/2025  Page: 83

Judgment—Page __3__ of __6__

DEFENDANT:        Oscar Amos Stilley
CASE NUMBER:      09-CR-043-002-SPF

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : Three years.  Said term consists of three years as to each of Counts One, Three, and Four.  These terms of supervised release shall run concurrently, each with the others.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

[]   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse, but authority to administer drug testing for cause is retained. (Check, if applicable.)

[x]  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[x]  The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

[]   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prison, or any state sex offender registration agency in which he or she resides, works, or is a student, or was convicted of a qualifying offense. (Check, if applicable.)

[]   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1.   The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer.
2.   The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
3.   The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4.   The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living).
5.   The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6.   The defendant shall notify the probation officer at least ten days prior to any change of residence or employment.
7.   The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician.
8.   The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court.
9.   The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10.  The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11.  The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
12.  The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.
13.  As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement  (any objection to such notification shall be decided by the district court).
14.  The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment.
15.  The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

Case 4:09-cr-00043-SPF   Document 338 Filed in USDC ND/OK on 04/28/10   Page 4 of 6
Appellate Case: 24-5133    Document: 57    Date Filed: 05/09/2025    Page: 84

Judgment—Page __4__ of __6__

| | |
|---|---|
| DEFENDANT: | Oscar Amos Stilley |
| CASE NUMBER: | 09-CR-043-002-SPF |

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit his person, residence, office or vehicle to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2. The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

    1. The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts must be disclosed to the probation officer.

    2. The defendant shall not make application for any loan or enter into any credit arrangement, without first consulting with the probation officer.

    3. The defendant shall disclose all assets and liabilities to the probation officer. The defendant shall not transfer, sell, give-away, or otherwise convey any asset, without first consulting with the probation officer.

    4. If the defendant owns or maintains interest in any profit or nonprofit entity, you shall, upon request, surrender and/or make available for review, any and all documents and records of said profit or nonprofit entity to the probation officer.

    5. The defendant shall, upon request of the probation officer, complete a personal financial affidavit and authorize release of any and all financial information, to include income and tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

3. The defendant shall abide by the "Special Computer Restriction Conditions" previously adopted by the Court, as follows:

    1. The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the probation officer; and shall immediately advise the probation officer of any changes in his or her e-mail accounts, connections, devices, or passwords.

    2. The probation officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote monitoring software. Unless waived by the probation officer, the cost of remote monitoring software shall be paid by the defendant.

    3. The defendant shall not access any on-line service using an alias, or access any on-line service using the Internet account, name, or designation of another person or entity; and report immediately to the probation officer access to any Internet site containing prohibited material.

    4. The defendant is prohibited from using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of, data and/or images.

    5. The defendant is prohibited from altering or destroying records of computer use, including the use of software or functions designed to alter, clean or "wipe" computer media, block monitoring software, or restore a computer to a previous state.

    6. If instructed, the defendant shall provide all personal and business telephone records and credit card statements to the probation officer

4. While on supervision, the defendant shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt according to the payment schedule set by the IRS.

5. The defendant shall not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers to any matter relating to federal or state taxation. The defendant will not file, without the expressed written permission of the Probation Office, any civil action relating to federal income tax.

6. The defendant shall not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments. The defendant will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction. The defendant shall maintain employment. All employment must be approved in advance by the Probation Officer. The defendant shall abide by electronic monitoring, curfew requirements, and travel restrictions.

7. If instructed by the Probation Officer, the defendant shall provide originals or copies of all personal and business telephone phone records and all credit card, checking account and PayPal statements to the U.S. Probation Officer.

8. The defendant shall report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall refrain from transacting business with any check cashing service if so directed by the Probation Officer.

9. The defendant shall disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and passwords. Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring software and otherwise, with the costs of remote computer monitoring to be paid by the defendant. The defendant will be prohibited from accessing any on-line service using an alias or the internet account, name or designation or another person or entity. The defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the appearance of data or images. The defendant will be prohibited from altering or destroying records of computer use.

DEFENDANT:          Oscar Amos Stilley
CASE NUMBER:        09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 300<br>($100 as to each of Counts<br>One, Three, and Four) | $ N/A | $ 776,280 |

[]    The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be
      entered after such determination.

[x]   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

      If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage
      payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| IRS-RACS<br>Attention: Mail Stop 6261<br>Restitution<br>333 West Pershing Ave.<br>Kansas City, Missouri 64108 | | $ 684,653 | |
| Arkansas Department<br>of Finance<br>and Administration Income<br>Tax Administration<br>P.O. Box 3628<br>Little Rock, Arkansas 72203 | | $ 91,627 | |

| **TOTALS** | $ 0 | $ 776,280 |
|---|---|---|

[]    Restitution amount ordered pursuant to plea agreement  $ _____

[]    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the
      fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject
      to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[]    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

      []    the interest requirement is waived for the          []   fine   []   restitution.

      []    the interest requirement for the          []   fine   []   restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before
April 23, 1996.

DEFENDANT:        Oscar Amos Stilley
CASE NUMBER:      09-CR-043-002-SPF

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  [] Lump sum payment of $ _____ due immediately, balance due

      [] not later than _____ , or
      [] in accordance with   [] C,   [] D,   [] E, or   [] F below; or

**B**  [] Payment to begin immediately (may be combined with   [] C,   [] D, or   [] F below); or

**C**  [] Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  [] Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  [] Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  [x] Special instructions regarding the payment of criminal monetary penalties:

      Any criminal monetary penalty is due in full immediately, but payable on a schedule of the greater of $25 quarterly or 50% of income pursuant to the Federal Bureau of Prisons' Inmate Financial Responsibility Program while in prison. If a monetary balance remains, payment is to commence no later than 60 days following release from imprisonment to a term of supervised release in equal monthly payments of $100 or 10% of net income (take home pay), whichever is greater, over the duration of the term of supervised release and thereafter as prescribed by law for as long as some debt remains. Notwithstanding establishment of a payment schedule, nothing shall prohibit the United States from executing or levying upon property of the defendant discovered before or after the date of this Judgment.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[]  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

[]  The defendant shall pay the cost of prosecution.
[]  The defendant shall pay the following court cost(s):
[]  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

7

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

Northern District of Oklahoma

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| | (For **Revocation** of Probation or Supervised Release) |
| **v.** | |
| OSCAR AMOS STILLEY | Case Number:    09-CR-043-002-SPF |
| | USM Number:    10579-062 |
| | Oscar Amos Stilley, Pro Se |
| | Defendants Attorney |

## THE DEFENDANT:

☐ admitted guilt to violation of condition (s) _____ of the term of supervision.

☒ was found in violation of condition(s) Special Conditions after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| Special Condition 3 | Failed to comply with Special Computer Restrictions Conditions | 08/10/2022 |
| Special Condition 9 | Failed to provide email account password or login and password information regarding Pay Pal account. | 11/21/2022 |

The defendant is sentenced as provided in pages 2 through 8 of this Judgment.  The sentence is imposed pursuant to the Sentencing Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States attorney of material changes in economic circumstances.

November 21, 2022
Date of Imposition of Judgment

Signature of Judge

Stephen P. Friot, United States District Judge
Name and Title of Judge

November 23, 2022
Date

8

AO 245D   (Rev. 10/17) Judgment in Criminal Case for Revocations
          Sheet 2 — Imprisonment

DEFENDANT:          Oscar Amos Stilley Generation
CASE NUMBER:        4:09CR00043-2

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:      Three months.

☐   The Court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐   a.m.   ☐   p.m.   on   _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on   _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this Judgment as follows:

Defendant delivered on _____   to   _____

at _____ ,with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

9

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 3 — Supervised Release

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :        Thirty-three months.

# MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☐  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

10

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 3A — Supervised Release

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervision, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when to report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by the probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, notify the person about the risk or require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 3B — Supervised Release

DEFENDANT:        OSCAR AMOS STILLEY
CASE NUMBER:      09-CR-043-002-SPF

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall submit his person, residence, office or vehicle to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2.  The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

    a.  The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses.  All other bank accounts must be disclosed to the probation officer.
    b.  The defendant shall not make application for any loan or enter into any credit arrangement, without first consulting with the probation officer.
    c.  The defendant shall disclose all assets and liabilities to the probation officer.  The defendant shall not transfer, sell, give-away, or otherwise convey any asset, without first consulting with the probation officer.
    d.  If the defendant owns or maintains interest in any profit or nonprofit entity, you shall, upon request, surrender and/or make available for review, any and all documents and records of said profit or nonprofit entity to the probation officer.
    e.  The defendant shall, upon request of the probation officer, complete a personal financial affidavit and        authorize release of any and all financial information, to include income and tax return records, by execution  of  a  Release  of  Financial Information form, or by any other appropriate means.

3.  The defendant shall abide by the "Special Computer Restriction Conditions" previously adopted by the Court,        as follows:

    a.  The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the probation officer; and shall immediately advise the probation officer of any changes in his or her e-mail accounts, connections, devices, or passwords.

    b.  The probation officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote monitoring software.  Unless waived by the probation officer, the cost of remote monitoring software shall be paid by the defendant.

    c.  The defendant shall not access any on-line service using an alias, or access  any on-line service using the Internet account, name, or designation of another person or entity; and report immediately to the  probation officer access to any Internet site containing prohibited material.

    d.  The defendant is prohibited from using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of, data and/or images.

    e.  The defendant is prohibited from altering or destroying records of computer use, including the use of software or functions designed to alter, clean or "wipe" computer media, block monitoring software, or restore a computer to a previous state.

    f.  If instructed, the defendant shall provide all personal and business telephone  records and credit card statements to the probation officer.

4.  While on supervision, the defendant shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt according to the payment schedule set by the IRS.

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 3B — Supervised Release

DEFENDANT:        OSCAR AMOS STILLEY
CASE NUMBER:      09-CR-043-002-SPF

5.    The defendant shall not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers to any matter relating to federal or state taxation.  The defendant will not file, without the expressed written permission of the Probation Office, any civil action relating to federal income tax.

6.    The defendant shall not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments.  The defendant will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction.  The defendant shall maintain employment.  All employment must be approved in advance by the Probation Officer.  The defendant shall abide by electronic monitoring, curfew requirements, and travel restrictions.

7.    If instructed by the Probation Officer, the defendant shall provide originals or copies of all personal and business telephone phone records and all credit card, checking account and PayPal statements to the U.S. Probation Officer.

8.    The defendant shall report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall refrain from transacting business with any check cashing service if so directed by the Probation Officer.

9.    The defendant shall disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and passwords.  Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring software and otherwise, with the costs of remote computer monitoring to be paid by the defendant.  The defendant will be prohibited from accessing any on-line service using an alias or the internet account, name or designation or another person or entity.  The defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the appearance of data or images.  The defendant will be prohibited from altering or destroying records of computer use.

## U.S. Probation Officer Use Only

A U.S Probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this Judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions,* available at: www.uscourts.gov.

Defendant's Signature _____          Date _____

13

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
          Sheet 4 — Criminal Monetary Penalties

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the Schedule of Payments set forth on Sheet 8.

| | **Assessment** | **JVTA Assessment\*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | | | | $815,874.93 |

☐   The determination of restitution is deferred until _____.
     An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*** | **Restitution** | **Priority or Percentage** |
|---|---|---|---|
| As entered in the Judgment imposed April 23, 2010 | | | |

| **TOTALS** | $ _____ | $ _____815,874,93_____ | |

☐   Restitution ordered pursuant to Plea Agreement   $ _____

☒   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the Judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The Court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐   the interest requirement is waived for the     ☐   fine   ☐   restitution.

     ☐   the interest requirement for the     ☐   fine   ☐   restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245D (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 5 — Schedule of Payments

---

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒  Lump sum payment of $ __815,874.93__  due immediately, balance due

      ☐  not later than _____ , or

      ☒  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☒ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this Judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
      term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____, (e.g. 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay.

**F**  ☒  Special instructions regarding the payment of criminal monetary penalties:

      Any monetary payment is due in full immediately, but payable on a schedule to be determined pursuant to the policy
      provision of the Federal Bureau of Prisons' Inmate Financial Responsibility Program if the defendant voluntarily
      participates in this program. If a monetary balance remains, payment is to commence no later than 60 days following
      release from imprisonment to a term of supervised release in equal monthly payments of $50 or 10% of net income (take
      home pay), whichever is greater, over the duration of the term of supervised release and thereafter as prescribed by law for
      as long as some debt remains. Notwithstanding establishment of a payment schedule, nothing shall prohibit the United
      States from executing or levying upon property of the defendant discovered before or after the date of this Judgment.

Unless the Court has expressly ordered otherwise, if this Judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

      Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Joint and Several Amount, and corresponding
      payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessments, (8) penalties, and (9) costs, including cost of prosecution and court costs.

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

## Northern District of Oklahoma

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| | ) (For **Revocation** of Probation or Supervised Release) |
| **v.** | ) |
| | ) |
| OSCAR AMOS STILLEY | ) Case Number:   09-CR-043-002-SPF |
| | ) |
| | ) USM Number:   10579-062 |
| | ) |
| | Oscar Stilley, pro se |
| | Defendants Attorney |

**THE DEFENDANT:**

☐ admitted guilt to violation of condition (s) _____ of the term of supervision.

☒ was found in violation of condition(s) Mandatory, Standard and Special Conditions after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| Special Condition 2(e) | Failed to provide complete financial information | 06/05/2024 |
| Special Condition 2(a) | Failed to disclose and deposit all income, monetary gains or other proceeds into a checking account | 06/07/2024 |
| Special Condition 7(b) | Failed to maintain computer monitoring software installation and pay for monitoring service | 07/23/2024 |
| Standard Condition 8 | Interaction with convicted felons and individuals involved in criminal activity | 07/23/2024 |
| Special Condition 5 | Engaging in unauthorized or unlicensed practice of law | 07/23/2024 |
| Mandatory Condition 1 | New law violation | 07/12/2024 |
| Mandatory Condition 4 | Failed to make restitution payments | 07/08/2024 |

    The defendant is sentenced as provided in pages 2 through 4 of this Judgment.  The sentence is imposed pursuant to the Sentencing Act of 1984.

☒ The defendant has not violated condition(s) Standard Condition 7 and Standard Condition 9 and is discharged as to such violation(s) condition.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States attorney of material changes in economic circumstances.

November 13, 2024
Date of Imposition of Judgment

_SP Friot_
Signature of Judge

The Honorable Stephen P. Friot, United States District Judge
Name and Title of Judge

November 15, 2024
Date

AO 245D    (Rev. 10/17) Judgment in Criminal Case for Revocations
Sheet 2 — Imprisonment

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:          Twenty-four months.

☒    The Court makes the following recommendations to the Bureau of Prisons:

The Court recommends that, if eligible, the defendant be designated to a facility located in or near FCI Yazoo City.

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

☐    at _____    ☐ a.m.  ☐ p.m.  on _____ .

☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐    before 2 p.m. on _____ .

☐    as notified by the United States Marshal.

☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this Judgment as follows:

Defendant delivered on _____ to _____

at _____ ,with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

17

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
       Sheet 4 — Criminal Monetary Penalties

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:      09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the Schedule of Payments set forth on Sheet 5.

| | **Assessment** | **JVTA Assessment\*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | | | | $ 788,366.80 |

☐      The determination of restitution is deferred until _____.
       An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐      The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

      If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*** | **Restitution** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

As previously ordered in the Judgment imposed
April 23, 2010.

| **TOTALS** | $ _____ | $ _____ | |
|---|---|---|---|

☐      Restitution ordered pursuant to Plea Agreement    $ _____

☐      The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the Judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐      The Court determined that the defendant does not have the ability to pay interest and it is ordered that:

      ☐   the interest requirement is waived for the    ☐  fine    ☐  restitution.

      ☐   the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 5 — Schedule of Payments

DEFENDANT:        OSCAR AMOS STILLEY
CASE NUMBER:      09-CR-043-002-SPF

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒  Lump sum payment of $ ___788,366.80___ due immediately, balance due

    ☐  not later than _____ , or

    ☒  in accordance with   ☐  C,   ☐  D,   ☐  E, or   ☒  F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐  C,   ☐  D, or   ☐  F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this Judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____, (e.g. 30 or 60 days) after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay.

**F**  ☒  Special instructions regarding the payment of criminal monetary penalties:

    Any monetary payment is due in full immediately, but payable on a schedule to be determined pursuant to the policy
provision of the Federal Bureau of Prisons' Inmate Financial Responsibility Program if the defendant voluntarily
participates in this program. If a monetary balance remains, payment is to commence no later than 60 days following
release from imprisonment to a term of supervised release in equal monthly payments of $50 or 10% of net income (take
home pay), whichever is greater, over the duration of the term of supervised release and thereafter as prescribed by law for
as long as some debt remains.  Notwithstanding establishment of a payment schedule, nothing shall prohibit the United
States from executing or levying upon property of the defendant discovered before or after the date of this Judgment.

Unless the Court has expressly ordered otherwise, if this Judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Joint and Several Amount, and corresponding
payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessments, (8) penalties, and (9) costs, including cost of prosecution and court costs.

19