APPEAL,GARN,LC−1,TRANSF,VJASSIGN−X

# U.S. District Court
# U.S. District Court for the Northern District of Oklahoma (Tulsa)
# CRIMINAL DOCKET FOR CASE #: 4:09−cr−00043−SEH−2
# *Internal Use Only*

| | |
|---|---|
| Case title: USA v. Springer et al | Date Filed: 03/10/2009 |
| Other court case number: 23−966 Supreme Court of the United States | Date Terminated: 04/28/2010 |
| Related Case: 4:21−cv−00361−SPF−CDL | |

Assigned to: Judge Sara E Hill

Appeals court case numbers:
'10−5057 (#348)' '10th Circuit',
22−5000 (#725) 10th Circuit,
22−5113 (#756) 10th Circuit,
24−5133 (#817) Tenth Circuit

**Defendant (2)**

**Oscar Amos Stilley**
*TERMINATED: 04/28/2010*

represented by

**Oscar Amos Stilley**
#10579−062
Oscar A. Stilley
Cimarron Correctional Facility
3200 South Kings Highway
Cushing, OK 74023
479−384−2303
Email: oscarstilley@gmail.com
PRO SE

**Charles Robert Burton , IV**
Burton Law Firm PC
15 E 5TH ST STE 4022
TULSA, OK 74103−4347
918−607−4891
Email: RobtBurton@aol.com
*TERMINATED: 04/27/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Terry Lee Weber**
Weber & Assoc PC
320 S BOSTON STE 825
TULSA, OK 74103
918−582−1910
Fax: 918−582−2015

Email: Terry.Weber@morelaw.com
*TERMINATED: 04/03/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA or Other Appointment*

**Trevor Lee Reynolds**
Tulsa Law Group PC
1700 SOUTHWEST BLVD
TULSA, OK 74107
918−584−4724
Email: trevor@tlreynolds.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA or Other Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18 USC 371: Conspiracy to Defraud the United States (1) | 4/8/2010 Sentencing: BOP 60 months; SR 3 years; Restitution $776,280; SMA $100; 11/21/22 SR REVOCATION: 3 months; SR: 33 months; Remainder of Restitution. 11/13/2024 Revoc Hrg: BOP 24 months; NO SR. |
| 26 USC 7201: Tax Evasion and 18 USC 2 (3−4) | 4/8/2010 Sentencing: BOP 60 months each count, consecutive to Ct 1; SR 3 years each count; SMA $100 each count. 11/21/22 Revocation Hrg: BOP 3 months each count; SR 33 months. 11/13/2024 Revocation Hrg: BOP 24 months each count; NO SR. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

**USA** represented by

**Charles Anthony O'Reilly**
DOJ−Tax
150 M Street N.E.
Room 2−404
Washington, DC 20002
202−616−0115
Fax: 202−514−9623
Email: charles.a.o'reilly@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney (local,state,federal)*

**Jeffrey Andrew Gallant**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119−1013
918−382−2715
Fax: 918−560−7938
Email: jeff.gallant@laok.org
*TERMINATED: 10/15/2024*
*LEAD ATTORNEY*
*Designation: Government Attorney (local,state,federal)*

**Kenneth P Snoke**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119−1013
918−382−2700
Fax: 918−560−7946
Email: ken.snoke@usdoj.gov
*TERMINATED: 06/08/2010*
*LEAD ATTORNEY*
*Designation: Government Attorney (local,state,federal)*

**Stephanie Noel Ihler**
DOJ−USAO
110 W. 7th Street
Ste 300
Tulsa, OK 74119
918−703−7615
Email: stephanie.ihler@usdoj.gov
*TERMINATED: 10/25/2024*
*LEAD ATTORNEY*
*Designation: Government Attorney (local,state,federal)*

**Vani Singhal**
U.S. Attorney's Office
110 W. 7th Street

Suite 300
Tulsa, OK 74119
918−382−2700
Email: vani.singhal@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney (local,state,federal)*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/06/2023 | 768 | TRANSCRIPT of Proceedings (Unredacted) of Revocation and Sentencing Hearing held on 11−21−2022 before Judge Stephen P Friot (Court Reporter: Greg Bloxom (918.699.4878) (Pages: 1 − 123). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 756 Notice of Appeal to Circuit Court, 751 Minutes of Revocation Hearing,,,,,,,, Minutes of Supervised Release Revocation Final Hearing,,,,,,,, Minutes of Sentencing,,,,,,,, Ruling on Motion(s)/Document(s),,,,,,,, Setting/Resetting Deadline(s)/Hearing(s),,,,,,,, Ordering Defendant be Detained,,,,,,,,,,,,,,, ) as to Oscar Amos Stilley (tgb, Crt Rptr) Modified on 5/8/2023 to remove transcript access restriction (srt, Dpty Clk). (Entered: 02/06/2023) |
| 11/07/2024 | 812 | ORDER by Judge Stephen P Friot . *The court will permit Charles Robert Burton, IV to sit at the counsel table with the defendant during the upcoming revocation hearing, if Mr. Burton chooses to do so. The court is not appointing Mr. Burton to act as counsel, on a standby basis or otherwise. If Mr. Burton chooses to sit with the defendant at the counsel table, the defendant will be permitted to confer with him during the revocation hearing. If Mr. Burton chooses to sit at the table with the defendant during the revocation hearing, that will occur only as Mr. Burton's voluntary choice. Mr. Burton will not be compensated by the court or with public funds.* as to Oscar Amos Stilley (LLG, Chambers) (Entered: 11/07/2024) |
| 11/10/2024 | 814 | BRIEF *re Supervised Release Revocation Hearing* (Re: 796 Summons Returned Executed, 811 Response, 806 Order,,, 813 Order,, Setting/Resetting Deadline(s)/Hearing(s), 797 Order,, Setting/Resetting Deadline(s)/Hearing(s), ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 11/10/2024) |
| 11/12/2024 | 815 | MOTION to Disqualify Judge Stephen P. Friot *For Bias and Interest and the Appearance of Same* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/12/2024) |
| 11/15/2024 | 820 | JUDGMENT AND COMMITMENT by Judge Stephen P Friot , entering judgment (re: revocation proceedings) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 11/15/2024) |

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

Plaintiff,

vs. CASE NO. 09-CR-43-CVE

OSCAR AMOS STILLEY,

Defendant.

TRANSCRIPT OF PROCEEDINGS
NOVEMBER 21, 2022
BEFORE THE HONORABLE STEPHEN P. FRIOT, JUDGE PRESIDING

**REVOCATION AND SENTENCING HEARING**

A P P E A R A N C E S

MR. JEFFREY A. GALLANT and MS. VANI SINGHAL, Assistant United States Attorneys, Northern District of Oklahoma, Tulsa, Oklahoma, appeared on behalf of the plaintiff.

MR. OSCAR AMOS STILLEY, pro se.

Reported by Greg Bloxom, RMR, CRR

INDEX

PLAINTIFF'S WITNESSES:

**RYAN FORSYTH**

DIRECT (By Mr. Gallant) ........................ 23
CROSS (By Mr. Stilley) ......................... 44

PLAINTIFF RESTS ........................................ 80

PLAINTIFF'S ARGUMENT ON REVOCATION ..................... 83

DEFENDANT'S ARGUMENT ON REVOCATION ..................... 84

COURT'S RULING ON REVOCATION ........................... 90

PLAINTIFF'S ARGUMENT ON DISPOSITION .................... 104

DEFENDANT'S ARGUMENT ON DISPOSITION .................... 106

COURT'S RULING ON DISPOSITION .......................... 117

**********

PROCEEDINGS:

-------------------------------------------------------------------

**THE COURT:** We're proceeding this morning in Northern District case number criminal 09-043, United States of America vs. Oscar Amos Stilley, and we're proceeding on the basis of an amended petition for warrant or summons for offender under supervision, and that's been filed in the Northern District case, as well, as everyone is aware, in the Western District case while Mr. Stilley's supervision was pending in the Western District.

I note counsel at the government table. Please enter your appearance.

**MR. GALLANT:** Yes, Your Honor. I'm Jeff Gallant from the U.S. Attorney's Office here in the Northern District. This is Vani Singhal from the Northern District, AUSA.

**THE COURT:** Okay. Thank you very much.

And I note Mr. Stilley at the defense table. And, Mr. Stilley, your appearance will certainly be noted.

**MR. STILLEY:** Thank you, Your Honor.

**THE COURT:** You don't look all that much different.

**MR. STILLEY:** Well, thank you, Judge. Thank you, Judge.

**THE COURT:** You and I both have a little more gray hair.

**MR. STILLEY:** Yes, quite a bit more gray hair.

**THE COURT:** Okay. Understood. You may be seated.

**MR. STILLEY:** Thank you.

**THE COURT:** We have some motions that were filed over the weekend, actually yesterday, and they are, if you will, antecedent to the matter that is scheduled this morning. So, first of all, I'm going to address some of these motions.

We have a motion -- and again, all these were filed yesterday -- we have a motion at docket entry number 745, a motion to disqualify Stephen P. Friot for lack of statutory authorization. That motion covers matters that have been addressed repeatedly over the course of this case and that motion, in my view, is resolved quite readily by reference to the cross-designation order signed by Chief Judge Tymkovich of the Tenth Circuit on December 9th, roughly a year ago, specifying cross-designations within the three Oklahoma districts for calendar year 2022, and for that reason the motion to disqualify Stephen P. Friot for lack of statutory authorization at docket entry number 745 is denied.

One matter I should mention, also preliminarily, is that I'm told, perhaps as a result of the filing of the motion for standby counsel, I'm told that the federal -- an assistant federal public defender, Mr. John Campbell, is here in the courtroom. Is that correct?

**MR. GALLANT:** I don't see Mr. Campbell, Your Honor.

**THE COURT:** Oh, okay.

**MR. GALLANT:** I believe he's a CJA attorney, Your Honor.

**THE COURT:** Oh, CJA attorney. Okay. Okay. I was told that he would be here. In the final analysis, that's not an impediment to proceeding.

The second motion I would address is the motion, also filed yesterday, at docket entry number 744 entitled Defendant Oscar Stilley's Motion to Reappoint Robert Burton, IV, as Standby Counsel. The motion, I think, presupposes that Mr. Burton is on the CJA panel. He is no longer on the CJA panel, I am told. And the motion tells me reasonably clearly that Mr. Stilley is not particularly receptive to counsel other than Mr. Burton. But, again, Mr. Burton is no longer on the CJA panel. This motion is not accompanied by evidence of financial inability to retain counsel.

I do note the Advisory Committee notes to Rule 44(a) of the Federal Rules of Criminal Procedure, and that says, "The right to assignment of counsel is not limited to those financially unable to obtain counsel. If a defendant is able to compensate counsel but still cannot obtain counsel, he is entitled to the assignment of counsel even though not to free counsel."

The fact is that it is not inconceivable that counsel could be appointed to represent Mr. Stilley. There's an argument, perhaps bordering on a probability, that Mr. Stilley would be responsible to compensate appointed standby counsel by paying

reasonable attorney's fees, especially since Mr. Stilley is the one requesting appointment of standby counsel.

And in that respect, I note a decision from the District of Columbia, *United States vs. Gibson*, 737 F.Supp. 97, a 1988 case, in which the court found that a non-indigent defendant for whom counsel was appointed would be responsible for the fees of that counsel.

Well, the motion we've got presents two or three problems, one of which is that it is not accompanied by any indication one way or the other as to whether Mr. Stilley is in a position to compensate counsel; number two, it focuses rather narrowly on Robert Burton as proposed counsel; number three, it was filed on the day before the hearing even though this amended petition was filed approximately two-and-a-half months ago. That timing causes me to observe that the motion in terms of any impact on today's hearing comes too late.

I don't foreclose the possibility of appointing counsel but there are some matters that should be addressed preliminary to any decision on that score. Number one, Mr. Stilley, whether he qualifies financially for CJA counsel; number two, if not, is he prepared to compensate standby counsel or other appointed counsel. And for that reason, I give Mr. Stilley leave to file within 15 days a supplement to his motion at docket entry number 744 covering the ground that this motion does not cover: number one, his receptiveness to counsel other than Mr. Burton;

number two, his financial condition which is best satisfied by filing a financial affidavit which we ordinarily do when counsel is appointed; and, number three, whether, if he is not financially qualified for appointment of counsel, whether he is prepared to compensate appointed standby counsel.

So, I neither grant nor deny the motion to reappoint Robert Burton as a motion for appointment of counsel today. This motion will be left pending and Mr. Stilley is granted 15 days within which to supplement that motion as I have described. The filing of this motion and the matters that I have just discussed will have no effect on whether we proceed today.

We have everyone here in the courtroom ready to go, and frankly, this motion viewed especially in the context of a half dozen other motions that were filed yesterday, Sunday, strikes me as an ill-conceived attempt to manipulate the process and derail this hearing. We have a probation officer here from Ft. Smith who drove in last night, I am told, I drove in from Oklahoma City today, and we will proceed.

It may be that, after I look at the supplement to the motion, that there will be some sort of relief granted on the motion to appoint standby counsel, and if so, that standby counsel would be available for any further in-court proceedings in this matter.

So, the short version with respect to the motion at docket entry number 744 is that the motion will be left pending and

Mr. Stilley has 15 days within which to supplement his motion in the respects that I have just mentioned.

Okay. And I'm told also that attorney John Campbell is on his way here. When he gets here, I may pause the proceeding just briefly. We'll just see how that flows.

The next motion I'll address is the motion at docket entry number 746, also filed yesterday, Sunday. It is labeled as Defendant Oscar Stilley's motion to Quash the Summons and Strike All Other Documents from the Western District of Oklahoma and Dismiss for Lack of Jurisdiction.

The issues, at a high level of generalization, the issues that Mr. Stilley raises are, I suppose in one sense, "jurisdictional," but they don't go to subject-matter jurisdiction. Subject-matter jurisdiction existed in the Western District for the short time this supervision case was in the Western District, subject-matter jurisdiction exists in the Northern District, and there has not been an interruption in subject-matter jurisdiction with respect to the availability of an Article III judge to perform judicial duties, if need be, in connection with the supervision of Mr. Oscar Amos Stilley.

So I understand the point that Mr. Stilley seeks to make in this motion, but it, I believe, is based on somewhat of a misunderstanding as to whether there is indeed a subject-matter jurisdiction issue, there is not, and for that reason the motion at docket entry number 746 is denied.

That leaves four other motions, but logically these motions perhaps would be addressed and they will be addressed today, if need be, but perhaps these motions are best addressed, if need be, after I address one matter with Mr. Stilley, and that is this. As Mr. Stilley is well aware and has been well aware for about two-and-a-half months, we're here on an amended petition for warrant or summons. This amended petition contains allegations as to noncompliance, asserted noncompliance with the conditions of supervision which were imposed on Mr. Stilley at sentencing.

The case came on for sentencing in 2010. That was after a presentence report was prepared and the parties had every opportunity to object to various matters in the presentence report. The government had several objections, the defendants had several objections, and there was no objection at all, I repeat, no objection at all to any of the proposed conditions of supervision including those which bring us to this proceeding today.

So we have some conditions of supervision that, if you will, are the law of the case, at least as we speak. We have allegations in the amended petition as to a violation of those conditions of supervision. They, as we speak, they are unproven. Everyone here is prepared to proceed. But there's one thing that I will certainly state unequivocally for Mr. Stilley's benefit. We're here, more or less, at the

beginning of Mr. Stilley's three-year term of supervised release -- or not at the very beginning but more or less at the beginning of it -- and, if need be, I'm confident that the probation officer and Mr. Gallant are prepared to proceed. But, Mr. Stilley, if we proceed, then we look retrospectively, we look at were these conditions of supervision violated or not. I am quite receptive to taking a prospective view of the matter, and what I mean by that is I'm prepared to wipe the slate clean and start over if you're prepared to tell the court that you are -- that you will commit to comply with your conditions of supervision starting today.

All I can think of is a rather colloquial expression that one of my old law partners liked to use. He was kind of a conciliatory sort of a practitioner and every now and again he would kind of revert to saying, "All I want is peace in the valley." Well, all I want is peace in the valley. I want your supervision to go smoothly. I'm told that your co-defendant, Mr. Springer, is doing well on supervision. And so, all I want is peace in the valley in the sense that I am prepared to wipe the slate clean and start fresh on the strength of your representation in this court today that you are -- that you will commit to comply with all of your conditions of supervising starting today. And what that would mean is that, if you make that commitment, then you would be -- I would expect you to be sitting down with your probation officer

immediately to get started on things like password and getting the monitoring software teed up and operative and so forth. And if you make that commitment, then my acceptance of that commitment would be an act of trust and we would soon find out whether that trust was warranted or not. But I bring this up at this point because if you're prepared to make that commitment to the court this morning in open court, then I'm prepared to proceed as I have described.

So, Mr. Stilley, you're invited to the lectern to respond to the inquiry I have just made.

**MR. STILLEY:** Your Honor, I'd like a few minutes to talk to the opposing counsel and talk to U.S. probation. I've been talking to them extensively trying to get some clarity. As you can see, I filed a motion for clarification and modification. The response I've gotten is that we can't do any of that, and I'd like to talk to them and see what -- see if we can come up with an understanding of what specifically that they're claiming.

And also, I do -- and this is on a separate question -- but I appreciate the 15 days but I would like to know the complete scope of my options with respect to counsel.

So, would it be fair for me to take a few minutes to talk to opposing counsel and U.S. probation about specifically what's going on?

**THE COURT:** I will do that. And you may be seated,

Mr. Stilley.

Has Mr. Campbell entered the courtroom?

**MR. GALLANT:** Yes, Your Honor.

**MR. CAMPBELL:** Yes, Your Honor.

**THE COURT:** Okay. Mr. Campbell, obviously you don't have a new client at this point but I'll ask you to be seated here and let me bring you up to date on what this proceeding is all about.

At the table with you is Oscar Amos Stilley who was indicted in this court in 2009 and went to trial with his co-defendant, was unsuccessful at trial resulting in a term of his life. And Mr. Stilley, who in a former phase of his life, was a practicing lawyer in Arkansas, recently began his term of supervised release and we're here on an amended petition for warrant or summons that was filed about two-and-a-half months ago alleging violations of his conditions of supervised release and, for the most part, relating to information that Mr. Stilley's conditions of supervision require him to provide to the probation office various sorts of information. Mr. Stilley filed six or seven motions yesterday, I have already denied two or three of them, and we have more motions to go, if need be. But, Mr. Campbell, one of those motions was a motion for appointment of counsel. I'm unaware of whether Mr. Stilley is eligible for appointment of counsel as we speak. And I understand you are on the court's CJA panel; is that

correct?

**MR. CAMPBELL:** Yes, Your Honor, that's correct.

**THE COURT:** Okay. Thank you, sir.

I'm not appointing you as counsel for Mr. Stilley, but Mr. Stilley, in response to an inquiry I made a few minutes ago, has indicated that he would like to confer with government counsel and with the probation office -- or the probation officer. Specifically what prompted that request on Mr. Stilley's part was my comment that I made a few minutes ago that although this amended petition requires us to look retrospectively at whether Mr. Stilley has complied with his conditions of supervision, I am prepared to look prospectively and to wipe the slate clean and give Mr. Stilley a fresh start starting today if he is willing to unequivocally commit in open court today that he will comply with all of his conditions of supervision. And if Mr. Stilley is prepared to make that commitment, then I'm prepared to give Mr. Stilley an opportunity to make good on that commitment starting today. But Mr. Stilley has requested a recess, which I'm prepared to do by way of a brief recess, to afford him an opportunity to confer with the probation officer and with government counsel.

Mr. Campbell, I'm not appointing you as Mr. Stilley's counsel, but with the benefit of the thumbnail sketch of the status of the case that I have just given you, I would invite you, if you choose to do so, but only if you choose to do so, I

would invite you to remain and perhaps answer any questions Mr. Stilley may have during this brief recess.

Again, I would not view this as the result of my appointing you as counsel, because I'm not doing that; he has not yet established that he's qualified for appointment of counsel and we've already covered that. But with the understanding that we will take a brief recess in order to afford Mr. Stilley an opportunity to consider his options, would you, if you choose to do so, be inclined to remain and confer with Mr. Stilley during this brief recess?

**MR. CAMPBELL:** Yes, Your Honor, I can do that.

**THE COURT:** Okay. Very well.

I've got roughly 10 minutes until 11. We'll be in recess until 20 minutes after 11.

Court will be in recess.

(RECESS)

**THE COURT:** We're resuming in criminal 09-043, United States of America vs. Oscar Amos Stilley. As everyone is aware, we took a short recess in order to afford Mr. Stilley and the other interested parties to confer with respect to the matters that I addressed just before we recessed.

Is there an announcement from either side on that score?

**MR. GALLANT:** Do you want me to speak, Mr. Stilley?

**MR. STILLEY:** All right then. Either way.

**MR. GALLANT:** All right. Well, Your Honor, I think we

have an agreement, subject to what Mr. Stilley says. Basically, if we could go through each violation.

The way this would work, with respect to the software monitoring, Mr. Stilley would agree to comply but we would ask the court for a modification to exclude the work computers at VAMP. [sic] We've spoken with Patti Rush who works at the -- at REVAMP where Mr. Stilley works and we believe they can work out a situation where Mr. Stilley, his work at work, his computers would be monitored by the employer. So Mr. Stilley would agree to the software -- monitoring software to be installed on his personal phone, personal computer, any other computers or phones he has access to except the ones at REVAMP. And that would be, again, if the court's agreeable to that.

With respect to --

**THE COURT:** Now, REVAMP is an organization that employs Mr. Stilley?

**MR. GALLANT:** Yes, Your Honor.

And Ms. Rush is here and she's worked with Mr. Forsyth, the probation officer, they've communicated and they believe they have a good relationship and could facilitate that situation where Mr. Stilley would either be working at a standalone computer or some other computer that would be, you know, sort of overseen by the employer. So that one wouldn't have any monitoring software installed, but any other computer, cell phone, etc., that Mr. Stilley has would be monitored. That's

with respect to number one.

With respect to the e-mail account, password information, all of that, Mr. Stilley agrees to provide those to probation. And we would ask, and this goes into the -- with respect to the financial information -- we'd ask he be given 15 days, and the reason for that is he has represented that REVAMP works with law enforcement and victims and whatnot and there may be attorney-client privilege, there may be sensitive information that he's gotten through the work, so that he would ask for 15 days to be able to work with Ms. Rush to remove anything from his phones or computers that have anything to do with his job because they represent -- from time to time they would forward e-mails, that sort of thing. So, probation and the government, for purposes of this, we wouldn't be averse to allowing him 15 days to get that cleared up and then he would have to provide all the login and password information, whatnot, to probation.

The final issue is with respect to the monthly cash flow statement and the net worth statement. Mr. Stilley says he will comply with that, he would like 15 days, and also subject to his motion. His motions, quite frankly to me, don't make a lot of sense, Your Honor, but he wants the court to rule on those before he agrees to those conditions. But subject to those motions, and again I didn't really understand his argument, but he wants you to rule on those first, and then he said, my understanding is, he would comply with those

conditions. And again, he'd like 15 days to provide those completed forms to probation.

**THE COURT:** Okay. Well, I'm looking at a motion to clarify and modify conditions. Is that -- Mr. Stilley, when Mr. Gallant says "subject to that motion," is that the one and only motion that you're referring to there?

Please rise to address the court.

**MR. STILLEY:** I beg your pardon. Yes, Your Honor.

Well, actually, I do -- I also want 749. Basically what I'm asking for is to reserve all my First Amendment peaceful petition rights. Of course, the criminal case against me, I'm glad for that to go away, but as far as the motion for a true and correct record, I want that first and then -- a ruling on that, at least -- and then the motion --

**THE COURT:** Okay. I'll rule right now. It's denied. So that clears that.

**MR. STILLEY:** Okay. What is denied?

**THE COURT:** The motion at docket entry number 749. It amounts to an attempt to relitigate matters that are merged in the judgment of conviction entered 12 years ago for your fraud and that was affirmed on appeal. So the Motion For a True and Correct Record, docket entry number 749 filed yesterday, is denied. So that clears that.

**MR. STILLEY:** So the only thing then that would be left would be 750 and any other peaceful petition that would be

filed at a subsequent time then?

**THE COURT:** No, I'm not -- Mr. Stilley, I'm not going to leave the finalization of your commitment to comply with your conditions subject to some yet-unfiled motion. That's just not the way --

**MR. STILLEY:** I didn't ask for that. What I'm saying is that our agreement does not constitute a waiver, in other words, to prevent me, for example, litigating 750.

**THE COURT:** Well, my intent with respect to your motion to modify and clarify your conditions is to await the government's response to the motion and then rule.

**MR. STILLEY:** Okay.

**THE COURT:** And that was the one motion that I was not going to rule on one way or the other this morning, because any offender under supervision is entitled to ask that his conditions be modified. That's not all that unusual. And so my intent was, and is, to expect the government to respond to that motion, docket entry number 750, within the time allotted by the local rules.

But again, what I need to hear from -- well, first of all, Mr. Stilley, you may be seated -- back to Mr. Gallant. I needed some clarification as to just what motions.

**MR. GALLANT:** I didn't understand, Your Honor. He explained it his best. As I understood, he wanted you to rule on his pending motions before he agreed to comply. I don't

know if what you just stated changes his view or not.

**MR. STILLEY:** Your Honor, I'm not trying to make it difficult by trying to litigate, but the criminal matters there, if the criminal matter goes away, that's fine for that to go away. It's the other rights going forward, and I think we've got an understanding and I think we're in agreement.

**THE COURT:** Well, Mr. Gallant, why don't you have a seat. I need to address Mr. Stilley.

**MR. GALLANT:** I have just a couple more caveats when you're done.

**THE COURT:** Okay. Well, this is not headed in a good direction and I think we're going to have to have a hearing today. But Mr. Stilley, you're invited to the lectern.

Let me give you some clarity because we're very close to just proceeding with the hearing, but let me give you some clarity. You are under some rather intrusive but well justified conditions of supervision that invade your privacy. No doubt about it. That's intentional. That's because you were convicted of fraud, tax fraud, and in the course of committing those frauds you also mercilessly fleeced unsuspecting clients using your IOLTA account and other tools, so you are under some very intrusive conditions of supervision, frankly, conditions of supervision that I would never want to be under myself. But you earned it, you bought and paid for it more than a decade ago. I'm not going to modify those

conditions today. I may modify them on this motion. But the commitment I need to hear from you today with respect to the conditions of supervision, to which you had not a single objection at the time of sentencing, what I need to hear from you today is your unequivocal statement that you will comply with these conditions of supervision unless and until they are modified by this court.

**MR. STILLEY:** The agreement that was stated, I don't have any problem with that, but I want the court to understand, I want the record to be clear, there are attorney-client privileged materials that --

**THE COURT:** Okay. You may be seated. We're going to have a hearing.

**MR. STILLEY:** Okay.

**MR. GALLANT:** The government would call Ryan Forsyth.

**THE COURT:** Well, wait. I need to cover one or two matters preliminarily.

So that everyone is clear, the motion to clarify and modify conditions of supervision will remain pending. I will expect the government's response to it.

We have a motion at docket entry number 747 for an early presentence report. That motion is denied. We don't do presentence reports in revocation matters.

We had a motion for discovery and evidence at docket entry number 748. I have carefully reviewed that motion.

Mr. Stilley is absolutely correct that Rule 32.1(b)(2)(B) requires, "Disclosure of the evidence against the person."

The amended petition and the government's exhibits, which were supplied sometime ago by Mr. Gallant, constitute, in my view, full disclosure of the evidence against the person because the evidence against the person in this instance consists of Mr. Stilley's alleged refusal to comply with various conditions of supervision as detailed in the allegations in the amended petition, and for that reason the motion for discovery is denied specifically because Mr. Stilley is already aware of the evidence against him and the discovery or disclosure contemplated by Rule 32.1(b)(2)(B) has been provided.

So that leaves us with the petition filed, as I have said, two-and-a-half months ago. It contains four numbered violations with more than one instance asserted with respect to at least one of them. And I take Mr. Stilley's comments to the court thus far this morning as invoking his right and absolute right to put the government to its proof in support of these violations and, with that, the government may proceed.

**MR. GALLANT:** Thank you, Your Honor.

The government would call Ryan Forsyth to the stand.

**THE COURT:** Very well.

**MR. STILLEY:** Your Honor, I have a quick motion, if the court pleases. I would like to take at least 15 and I

would prefer 30 days to give me a chance to look for my own counsel.

**THE COURT:** That'll be denied, Mr. Stilley. You may be seated. And let me explain that just a bit. This was filed two -- this amended petition was filed two-and-a-half months ago. You had ample opportunity to consider whether you wanted counsel or not. You are obviously well aware of your right to retain counsel if you choose to retain counsel. You proceeded in a long complicated jury trial in this very case here in Tulsa in the other courthouse in the 2009 case. You represented yourself. You were given the benefit of a very detailed *Faretta* colloquy and you chose to represent yourself as an individual who at one time was admitted to the practice of law in the state of Arkansas.

So, in those circumstances, when we have an amended petition filed two-and-a-half months ago, and then you file a motion for appointment of counsel on the Sunday before the Monday hearing and then come to the Monday hearing asking for more time to get counsel, that request is denied.

**MR. CAMPBELL:** Your Honor, may I be excused?

**THE COURT:** You may be excused.

**MR. CAMPBELL:** Thank you.

**THE COURT:** And Mr. Gallant, you may proceed.

**MR. GALLANT:** Yes, Your Honor. He needs to be sworn.

(WITNESS SWORN)

**MR. GALLANT:** Your Honor, I would also like, for purposes of this hearing, the court to take judicial notice of the entire case.

**THE COURT:** I certainly will.

**MR. GALLANT:** Yes, Your Honor.

**RYAN FORSYTH,**

being first duly sworn to testify the truth, the whole truth, and nothing but the truth, testified as follows:

**DIRECT EXAMINATION**

BY MR. GALLANT:

Q. Sir, could you please state your name, and spell your last name for the court reporter.
A. Ryan Forsyth. F-O-R-S-Y-T-H.
Q. What is your occupation?
A. I'm a United States Probation Officer.
Q. How long have you been so employed?
A. Since March of 2019.
Q. What district do you work in?
A. The Western District of Arkansas.
Q. Do you know the defendant, Oscar Amos Stilley?
A. I do.
Q. Could you please just identify him for the record.
A. He is the individual sitting at the defendant's table.

**MR. GALLANT:** Your Honor, I would like the record to reflect he identified the defendant, Mr. Stilley.

**THE COURT:** The record will so reflect.

Q. (BY MR. GALLANT) Did you supervise Mr. Stilley?

A. I do.

Q. How is it that your district supervised Mr. Stilley?

A. So, he is originally from the Western District of Arkansas. He, while in prison, the Bureau of Prisons submitted a relocation request. Our district investigated it and found that it was appropriate, so we accepted supervision of this case.

Q. When -- What was Mr. Stilley's term of supervised release?

A. Three years.

Q. When did that begin?

A. August 10th, 2022.

Q. Did Mr. Stilley's supervised release contain various conditions?

A. It did.

Q. Was Mr. Stilley aware of those conditions?

A. He was.

Q. How do you know he was aware of those conditions?

A. On the day of his release he reported to our office just to let us know that he was released from home confinement and his term of supervised release had commenced. I met with him that day and went over his conditions in detail with him in his judgment.

Q. Directing your attention to government exhibit number 1.

Are you familiar with that document?
A. I am.
Q. And what is it?
A. It is an amended petition for warrant or summons for offender under supervision.
Q. And you're familiar with what's contained?
A. Yes.
Q. Is it completely true and accurate?
A. The only thing I would note for the court is under violation number 1, it says on August 10th that Mr. Stilley violated this condition. I gave him until the 18th to comply with the monitoring software, that way he could kind of get his ducks in a row, so to speak, and he still did not.
Q. Besides that, is it true and correct to the best of your knowledge?
A. Yes, sir.
**MR. GALLANT:** Your Honor, the government would offer government exhibit number 1 for purposes of this hearing.
**THE COURT:** Any objection?
**MR. STILLEY:** Yes, Your Honor, I would object. This was done in the Western District of Oklahoma by a Western District of Oklahoma officer, and this court stated specifically that if the court found it didn't have jurisdiction in the Western District of Oklahoma it would vacate number 1. What has actually happened is that the

district court has purported to transfer jurisdiction, and it's my position that the Western District had no jurisdiction, therefore, there was nothing to transfer, and there's no harm, no foul if the Northern District of Oklahoma decides that they want to bring some charges at this point in time.

**THE COURT:** Thank you.

The exhibit will be received.

Q. (BY MR. GALLANT) Sir, first of all, I'd like to talk about violation numbers 1 and 3 that tend to deal with computer issues. Generally speaking, did some of Mr. Stilley's conditions of supervised release revolve -- involve the installation of remote monitoring software, among other conditions?

A. Yes.

Q. And what generally does that installation involve?

A. Well, in our district we utilize a company called IPPC Monitoring. They usually help us with installing monitoring software on the devices, and then that's something that we can review daily to make sure that there are no violations depending on what somebody's conditions are and what their Internet usage should be.

Q. And in supervising other defendants, have you used that same software?

A. I have.

Q. And why is remote monitoring like that important for you to

supervise Mr. Stilley consistent with his conditions?
A. Well, I mean, Mr. Stilley has that condition, first of all, and it's a requirement. Number two, he's a former attorney. There is a condition that states that he is prohibited from -- I don't have the condition in front of me -- but prohibited from practicing law or giving out legal advice as it relates to tax matters. I don't know how I would verify that he wasn't doing so without the monitoring software. As it's 2022, people are usually utilizing the Internet to communicate with each other where a phone's monitoring software would help me verify that he's not practicing.
Q. Directing your attention to government exhibit 1, violation number 1, special condition number 3. Just generally speaking, what is that condition?
A. Can you restate?
Q. Oh, on the bottom of page 1 there's special condition number 3. Just generally speaking, what does that require?
A. You say under violation 1 in subsection 3?
Q. Yeah. Well, special -- yes, the special condition number 3. Yes, what does that generally involve?
A. That he shouldn't be accessing any online service using an alias or an Internet account name or designation of another person or entity, and he should report to our office, the United States Probation Office, access to any Internet site containing prohibited material.

Q. And it requires monitoring of his computer activity; correct?
A. Correct.
Q. Did Mr. Stilley violate that condition?
A. Yes.
Q. Could you summarize how Mr. Stilley violated that condition.
A. On the 10th of August he reported to our office and we reviewed the conditions. It takes some sort of scheduling on my part with IPPC to install the software, so he was given until the 18th to have that software installed. He also requested a little bit of time to talk to his employer because there was some questions about whether they would be okay with him -- his work activities being monitored. On the 17th he had told me during a home visit that he would not agree to the installation of the software.
Q. And as of today, has he complied with that requirement?
A. No.
Q. I would like to go to now page 3 of government 1, violation number 3. Do you see that?
A. Yes, sir.
Q. Special condition number 9. Could you generally tell us what's involved in that condition.
A. Yeah. Mr. Stilley is obligated to disclose all of his e-mail accounts, PayPal accounts, Internet connections, and

communication devices, to include screen names and passwords.

Q. Did Mr. Stilley violate that condition?

A. Yes.

Q. Could you summarize how Mr. Stilley violated that condition.

A. To date we've requested that information on a few occasions, the e-mails and passwords, and he has refused to do so. He has provided us with some PayPal records and some Cash App records, but as far as, you know -- and he's provided what his e-mail is but he hasn't provided any passwords for his e-mail or a screen name for his PayPal -- or sorry -- I can't recall if the screen name is on the PayPal records but I don't have it handy nor has he given us his password for his PayPal account.

Q. And he never disclosed all the e-mail accounts he has access to?

A. Correct. Just one.

Q. And he never provided the login or password information for that or any of the accounts?

A. Correct.

Q. Are you able to supervise Mr. Stilley pursuant to his conditions without the password and login information as required by his conditions?

A. No.

Q. Now I'd like to go back. In addition, as part of his

supervision, are there various requirements to disclose information about Mr. Stilley's financial affairs, among other information?
A. Yes.
Q. Generally speaking, are such accurate disclosures important for your supervision of someone like Mr. Stilley?
A. Absolutely. He has a large amount of restitution and it's important to get an accurate financial -- or accurate picture of his finances so we can calculate an appropriate payment amount each month based on the terms of his judgment.
Q. And also the crimes he was convicted of factor into that, as well?
A. Absolutely, yes.
Q. Are you able to supervise Mr. Stilley pursuant to the conditions without such information?
A. Not accurately, no.
Q. Directing your attention now to violation number 2, special condition number 2. It's on page 2 of government exhibit 1. Do you see that?
A. Yes.
Q. What is that condition, generally speaking?
A. It has several subsections. It talks about generally just he shall maintain a checking account which he'll put all of his money in that he earns, and that he needs to disclose his bank records to the probation office. He can't, I guess, establish

a new credit account or enter into any agreement for a loan without first consulting with the probation office. He's got to disclose all of his assets and liabilities to the probation officer. He can't transfer, sell, or give away any assets without first getting -- or first consulting with the probation officer. If he maintains interest in any profit or nonprofit entity, he shall surrender or make available any documents and records of said entity to the probation officer, and also a financial affidavit.

Q. And did Mr. Stilley violate that condition consistent to what's contained in government exhibit 1?

A. Yes.

Q. Now, directing your attention to government exhibit 2. Are you familiar with this?

A. I am.

Q. And what is it?

A. It is the net worth statement, also known as a PROB 48 in the probation office. It's a national document that's used by every district typically in financial cases to obtain information about a person under supervision's financial status.

Q. Have you regularly used this form in your supervision of people?

A. Yes.

Q. This particular government exhibit 2, when did you obtain

this?
A. September 5th.
Q. And how was it that you obtained this?
A. It was from Mr. Stilley via e-mail as I requested, as the 5th was Labor Day, I believe.
Q. Is the form completed, totally completed?
A. No.
Q. Are you able to supervise Mr. Stilley based on government exhibit 2?
A. No.
Q. For example, directing your attention to page 2 of the exhibit, Section C, what is requested?
A. Money owed to you by others.
Q. And what did Mr. Stilley say?
A. "5th Amendment."
Q. And then as another exhibit -- or example, Section E on page 3, what is requested?
A. Safe deposit boxes or storage space facility.
Q. And what did he say?
A. He just said, "No safe deposit boxes," but he doesn't indicate whether or not he has a storage space facility.
Q. And is that important for your supervision consistent with the conditions?
A. Yes.
Q. Directing your attention to Section I. What is requested?

A. Other assets, and that could include cash on hand, jewelry, art, paintings, coin collections, stamp collections, etc.
Q. And what, if anything, does Mr. Stilley say?
A. "5th Amendment."
Q. And then with respect to K, Section K, what is that?
A. Business holdings.
Q. And then what does Mr. Stilley say?
A. "5th Amendment."
Q. And then with respect to Section M?
A. Yes, transfer of assets.
Q. And what did Mr. Stilley say?
A. "5th Amendment."
Q. Now, going to page 7, are the liabilities; is that right?
A. That's correct.
Q. And with respect to Section B, what is requested?
A. Other debts, and that could include mortgage loans, notes payable, delinquent taxes, and child support.
Q. And what did Mr. Stilley say?
A. "5th Amendment."
Q. And then with respect to Section C, what's the request?
A. Party to civil suit.
Q. And what does Mr. Stilley say?
A. "5th Amendment."
Q. And then did Mr. Stilley sign the form?
A. He did not but he submitted another page. It was a

continuation document from his monthly report that has an electronic signature.

Q. And are you referring to the rest of government exhibit 2, those four pages?

A. Yes, sir.

Q. And did those -- did those indicate to you a good-faith basis why Mr. Stilley didn't fill out government exhibit 2?

A. No.

Q. And directing your attention to that, the first page that's entitled "Oscar Stilley," Part D, do you see that?

A. Yes, sir.

Q. Can you read what Mr. Stilley says?

A. "I have stated a willingness to supply bank statements, PayPal statements, Cash App statements, the two most recent" --

**THE COURT:** Please read more slowly.

**THE WITNESS:** My apologies, Your Honor.

A. "I have stated a willingness to supply bank statements, PayPal statements, Cash App statements, the two most recent tax returns even though they were filed prior to supervision, and payroll stubs."

Q. Is that information sufficient for you to adequately supervise Mr. Stilley pursuant to the conditions?

A. No.

Q. Is it possible to adequately supervise someone pursuant to the conditions if they're allowed to arbitrarily tell you what

financial documents they want to disclose?
A. No.
Q. Directing your attention to government exhibit 3. Oh, and one last question about that four-page document. Based on your review of that document, did it ever describe a legitimate basis to invoke the Fifth Amendment to any of those questions?
A. I didn't feel so, no.
Q. Directing your attention to government exhibit 3. What is that?
A. That is the monthly cash flow statement, also known as a PROB 48B in the probation system.
Q. And when did you receive this?
A. This was on September 5th, 2022, as well, with the other document.
Q. Did you receive that at the same time as government exhibit number 2?
A. Yes, sir.
Q. Who did you receive if from?
A. Mr. Stilley. Oscar Stilley.
Q. Is this a copy of the record of what Mr. Stilley sent you?
A. Yes.
**MR. GALLANT:** The government would offer government exhibits 2 and 3 into evidence, Your Honor.
**THE COURT:** Any objection?
**MR. STILLEY:** Same objections.

**THE COURT:** All right. Government exhibits 2 and 3 will be received.

Q. (BY MR. GALLANT) What is the purpose of this form?

A. To get an idea of a person under supervision's like monthly expenses as well as the inflow of cash that they're getting from all sources. You know, sometimes people pay for things that maybe they don't need to or that are maybe a luxury. When somebody owes a significant amount of money in restitution, we try to make sure that they're meeting an appropriate payment amount each month.

Q. Is this form important for your supervision, particularly at the beginning of supervision?

A. Absolutely.

Q. And why is that?

A. Just to get a baseline, kind of understand a person under supervision's complete financial picture. You know, Mr. Stilley, I met him on August 10th and I didn't know much about him until he showed up at the office. So, it's just good to get a good idea of what his financial circumstances are and then yearly we usually have those people refill out those forms to see if anything changed.

Q. To the best of your knowledge, on September 5th was Mr. Stilley working?

A. Yes.

Q. But is that disclosed anywhere on government exhibit 3?

A. No.
Q. What information, if anything, does Mr. Stilley disclose on government exhibit 3?
A. At the bottom of the page he typed in, "Financial information to be supplied by bank statements in lieu of filling out this form. See attachment to Prob8 for signature and date."
Q. And is that sufficient for you to supervise him pursuant to the conditions?
A. No.
Q. And how much net cashly -- net monthly cash flow does Mr. Stilley show?
A. It says zero. I may think that was just automatic through the form. It's a PDF fillable form. It stays zero until you enter a figure into a column. So I don't know if he purposely put zero there or if it's just the form.
Q. Directing your attention back now to government exhibit 1, violation number 4. Are you familiar with that violation?
A. Yes.
Q. Generally speaking, what does that require?
A. Basically he's required to fill out a monthly report and submit it to the probation office within the first five days of each month.
Q. Did Mr. Stilley violate that condition?
A. Yes.

Q. Could you just generally summarize how he violated that condition.
A. He answered "5th Amendment" on some of the questions. Also just didn't answer some of the questions at all.
Q. Directing your attention to government exhibit number 4. Are you familiar with that?
A. Yes, sir.
Q. When did you obtain this document?
A. That was on September 5th.
Q. Was that at the same time as you obtained government exhibit 2 and 3?
A. Yes, sir.
Q. And who did you obtain it from?
A. Oscar Stilley.
**MR. GALLANT:** Your Honor, the government would offer government exhibit 4 into evidence for purposes of this hearing.
**THE COURT:** Any objection?
**MR. STILLEY:** Same objection.
**THE COURT:** It'll be received.
Q. (BY MR. GALLANT) Is this one of those monthly reports that you were just referring to with respect to the condition?
A. Yes, sir.
Q. And what month was it for?
A. This is for August of 2022.

Q. Was it completed in a true and correct fashion -- true, correct, and complete fashion?
A. Not completely, no.
Q. Were you able to adequately supervise Mr. Stilley pursuant to the condition based on government exhibit number 4?
A. No.
Q. Directing your attention to government -- Part D, for instance. Again, it says zero for total monthly cash flow. It doesn't show any cash flow whatsoever, does it?
A. No.
Q. And then with respect to, "Do you rent or have access to a safe deposit box," --
**THE COURT:** No. Now, --
**MR. GALLANT:** Oh, I'm sorry, Your Honor.
**THE COURT:** -- which exhibit are you --
**MR. GALLANT:** It's government exhibit 4, I'm sorry, on page 1 under part D. I'm sorry, Your Honor.
Q. (BY MR. GALLANT) So, with respect to the question, "Do you rent or have access to a post office box, or safe deposit box," does Mr. Stilley answer those questions?
A. No.
Q. What does he put?
A. Nothing, he didn't check yes or no, and on the name and address of location he says, "5th Amendment."
Q. And then below that, what is the question that's asked?

A. "Does your spouse, significant other, or dependent have a checking or savings account that you enjoy the benefits of or make occasional contributions toward?" He wrote, "5th Amendment."
Q. Did he answer that question?
A. Just with, "5th Amendment," not appropriately.
Q. And then with respect to the bottom of page 1, what does that ask for?
A. It says, "List all expenditures over $500 (including goods, services, or gambling losses)."
Q. Did Mr. Stilley answer any of those?
A. No. He wrote "5th Amendment."
Q. Why are those three items, the P.O. Box, the safe deposit box, accounts he may be on, and expenditures over $500, are those important for you to adequately supervise Mr. Stilley pursuant to the condition?
A. Yes.
Q. And why?
A. Well, you know, he's a financial case, there's a large amount owed of restitution, so I'm definitely concerned about not answering things about, you know, being on other individ- -- or having access to other checking or savings accounts. The same with the expenditures over $500. The post office box, he has a condition that prohibits him, and I don't have the condition in front of me specifically, but basically from being

involved in any profit or non-profit entity that he owns without kind of reporting it to us. So, you know, if he would just answer it truthfully, would it be cause for concern, probably not. Him omitting it makes us wonder, well, why, do you or don't you? The same with the safe deposit box, he could have a large sum of cash that could go towards his restitution balance.

Q. Directing your attention to page 2. There's a question -- the second -- on the right-hand column, the second one down, about -- or third one down about firearms. Is there a question about that?

A. Yes. It says, "Did you possess or have access to a firearm?"

Q. Did Mr. Stilley answer that?

A. No.

Q. What does he say?

A. "5th Amendment."

Q. Why is that important for a probation officer to know about?

A. Well, possessing a firearm as a felon is a crime. Also, it's an officer safety concern. Me and a partner will go out and see him periodically and it's good to know that there are no firearms or anything in the home or in the area that he may have access to.

Q. There's also a question about illegal drugs. Do you see

that?
A. Yes.
Q. Did Mr. Stilley answer that question?
A. No.
Q. And why is that important for you to adequately supervise him pursuant to the conditions?
A. Well, again, using illegal drugs is also against the law, but also it's important for me to know in case, you know, if he's on drugs and has access to a firearm, that could be a safety concern. I'd also generally like to make sure he's not dealing with some sort of addiction issue and maybe refer him for treatment, if appropriate.
Q. Did you have any intent to disclose to law enforcement any drug use by Mr. Stilley?
A. No.
Q. Now, at the end of government exhibit 4, did he attach the same four pages that he attached to the prior exhibit we discussed?
A. Yes.
Q. And, again, did his explanation seem to you to be a good-faith evoking of his Fifth Amendment rights?
A. No.
Q. Now, after September 5th, did Mr. Stilley provide you other documents?
A. Yes.

Q. What did he provide you?
A. He has since provided an Arvest Bank record I believe each month since, as well as PayPal and Cash App statements.
Q. And were those documents sufficient for him to comply with the conditions that he violated in the amended petition?
A. Not sufficient to totally absolve him from the violations but definitely got him closer to complying.
Q. And then were you able -- based on that limited information he provided, is that sufficient for him -- for you to adequately supervise him pursuant to the conditions?
A. No.

**MR. GALLANT:** May I have a minute, Your Honor?

**THE COURT:** Surely.

**MR. GALLANT:** Your Honor, the government rests.

Did I admit government exhibit 4?

**THE DEPUTY COURT CLERK:** (NODS HEAD UP AND DOWN)

**MR. GALLANT:** Okay.

**THE COURT:** I have one question before we have cross-examination. You mentioned Cash App statements?

**THE WITNESS:** Yes.

**THE COURT:** Okay. Well, this probably shows what generation I'm in, but I'm going to ask you: What is Cash App?

**THE WITNESS:** So, it's similar to PayPal. It's an application that you can use on your phone and you can pay other people with it similar to -- I use Venmo personally, I

don't have Cash App, but you may be able to pay for services with Cash App though I'm not entirely sure.

**THE COURT:** So, and I take it, one way or another then, it is possible to, if need be, print out a statement of transactions on using the Cash App capability; is that correct?

**THE WITNESS:** Correct.

**THE COURT:** Okay. Very well.

Cross-examination.

**CROSS-EXAMINATION**

BY MR. STILLEY:

Q. Good afternoon, Mr. Forsyth.

A. Good afternoon.

Q. We have talked on a number of occasions, have we not?

A. Yes.

Q. And let's start at the beginning. On August 10 when I came to you, you were surprised to see me in the office; correct?

A. Yes. I wasn't notified of your release for that day.

Q. Correct. Nobody told you about that because Oscar Stilley was released a year early; correct?

A. I don't know.

Q. Oh, okay.

Oscar Stilley has always been responsive when you call or send an e-mail or a text; correct?

A. Correct.

Q. You talked a little bit about the timing. You said that on

August 10 -- the accusation against me is that I did something on August 10, but you agree that it was actually -- you gave me until August 18th; correct?
A. Correct.
Q. And were you also aware that your boss talked to me on the 15th and the 16th about the deadline?
A. I'm aware of it because of our chronological record, but --
Q. Sure. And can you tell us the name of your boss?
A. His name is Brent Young.
Q. Okay. And isn't it true that Mr. Young, on the 16th, told Stilley, that would be me, that the installation of the monitoring software would have to be done that day and the 18th was off?
A. I'm not sure if that occurred on the 16th. I can't remember the dates. I do remember something being said to that effect.
Q. And do you know who made the decision to do that?
A. I wasn't a part of that. I was out in the field seeing people. You know, my supervisor informed me that he had had a conversation with you and told you that you needed to install the software.
Q. You've told me that you are only getting information, you're not making the decisions about whether or not to file a revocation petition; correct?
**MR. GALLANT:** Your Honor, I just object to relevance.

**THE COURT:** Sustained.
Q. (BY MR. STILLEY) Who has the jurisdictional control over the supervision of Oscar Stilley?
**MR. GALLANT:** Your Honor, I'd object to relevance.
**THE COURT:** Sustained.
**MR. STILLEY:** Your Honor, if I could speak briefly to that. The Constitution gives a right to confrontation, and so far nobody seems to admit that they are the one that made the decision. He didn't make the decision, his boss Mr. Young didn't make the decision. I'm trying to find out who made this decision, who cut me off on the 16th instead of the 18th, etc., etc. I would respectfully request that I be allowed -- this is not a jury trial -- I would request that I be allowed to inquire into this and try to find out what's going on, what's happening.
**THE COURT:** Well, it doesn't tend to disprove the violations that this witness has testified to, and for that reason the objection remains sustained.
We'll have your next question.
**MR. STILLEY:** Okay. I'm going to maintain my objection to this. I think it does go to jurisdiction. I would like to make a record on that but I respect your decision if you're not going to allow --
**THE COURT:** Well, we've covered several aspects of jurisdiction going back more than a decade, and I understand

your point, and your point has been unsuccessfully asserted and in my view remains without merit.

We'll have your next question.

**MR. STILLEY:** Okay.

Q. (BY MR. STILLEY) There's four documents in evidence today; correct?

A. Four exhibits.

Q. Yes.

A. Yes.

Q. There's no name of any officer out of the Northern District of Oklahoma on any of those documents, is there?

A. Not to my knowledge, no.

Q. But there's the names of two officers out of the Western District of Oklahoma; correct?

A. Just one, to my knowledge.

Q. Aric Holloway and that is because he signed the amended petition whereas Jay Mauldin signed the original petition; correct?

A. Yes, to my recollection.

Q. And Mr. Mauldin and Mr. Holloway only have authority in the Western District of Oklahoma; correct?

**MR. GALLANT:** I just object to these questions about authority. They're not relevant, Your Honor.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) Mr. Stilley, soon after meeting you,

explained that he was, to the best of your knowledge, he was under criminal investigation; correct?

A. Can you -- I don't understand the question. Sorry.

Q. Oscar Stilley told you either at your first meeting or very soon thereafter that Oscar Stilley had been told by Charles O'Reilly that he was under a criminal investigation in the Western District of Arkansas; is that not correct?

A. You had mentioned thinking you might be and being unsure. I don't remember when, but yeah, it was fairly early on, but you were -- you've had concerns that you were under criminal investigation.

Q. Correct.

And isn't it true that Oscar Stilley has asked you to try to find out where that criminal investigation is and try to find out the status?

**MR. GALLANT:** Your Honor, I'd object. That's not relevant to this hearing.

**THE COURT:** Well, it conceivably could have some relevance to the assertion of Fifth Amendment, so I'm going to, at this point at least, overrule that objection. We'll take it one step at a time. That will be overruled.

A. Can you restate the question? Sorry.

Q. (BY MR. STILLEY) Let me put it like this: You knew that Oscar Stilley was worried about a criminal investigation; right?

A. Yes.
Q. And Oscar Stilley asked you to make inquiry about it?
A. Yes.
Q. And did you ever make an inquiry about it?
A. I did.
Q. And what did you find out?
A. I didn't find out anything.
Q. Did you ever call Charles O'Reilly?
A. No. I have talked to him briefly in the beginning when you were released but it was not anything about an investigation. I didn't inquire with him about an investigation.
Q. So, as you sit here today, you don't know if Oscar Stilley is under criminal investigation as we speak, or not, do you?
A. I do not know, no.
Q. But you know that Oscar Stilley is extremely concerned about it; right?
A. Yes, based on what you've told me, yes.
Q. Okay. And is it not also true that Oscar Stilley -- one of the cond- -- scratch that. One of the conditions is to make a conditional requirement to make returns back to 1987; correct?
A. Yes.
Q. Oscar Stilley has been asking questions about that; right?
A. Can you restate that? Sorry.
Q. Okay. Oscar Stilley has been asking you questions about that; correct?

A. Yes, you've inquired about if you're all squared up on that.

Q. Yes. And Oscar Stilley has contended to you that he is all squared up; right?

A. Yes.

Q. But he hasn't been able to obtain a firm commitment about that fact; right?

A. To my knowledge, no.

Q. Okay. Now, wouldn't it be fair to say that, with that left open, so we don't know one way or another, that would create a reasonable basis for Oscar Stilley to be really worried about any information, especially financial information, that he might give the government?

**MR. GALLANT:** Your Honor, he's just asking him to speculate on somebody else's state of mind. I don't see how that --

**THE COURT:** Sustained.

**MR. STILLEY:** Okay.

Q. (BY MR. STILLEY) Let me try this just a little bit differently.

You know that Oscar Stilley has concerns, that in his mind Oscar Stilley is concerned about a trick bag, about being trapped by giving financial information, giving information into his computer, and then having that used against him in a pincer attack on tax returns and on a criminal investigation?

A. I don't --
Q. Let's back this up. On --
A. -- understand what the question is.
Q. Oscar Stilley is worried about being compelled to make representations to the government, period. That freaks Oscar Stilley out; correct?

**MR. GALLANT:** Your Honor, this is argument and it's not -- and it's speculation.

**THE COURT:** He's asking this witness about his own perception, so I'm going to overrule that at this point. Again, we'll take it one question at a time but I'm going to overrule that.

You may answer.

A. Based on your representations to me, yes. You seem worried about providing any information because of a possible pending criminal investigation.
Q. (BY MR. STILLEY) Right. And the same things on the tax returns; correct?
A. What?
Q. That Oscar Stilley is nervous about what kind of information that he gives that could possibly contradict something else that he was required to say.
A. With respect to submitting me the tax returns?
Q. Correct.
A. I don't know that. I don't think you've made that

representation. You very quickly gave me your 2020 and 2021 tax returns, which I appreciated.

Q. Sure.

And Oscar Stilley asked for a commitment that the tax return obligation is concluded; correct?

A. Meaning the condition?

Q. Yes, uh-huh.

A. You asked if it was concluded?

Q. Yes.

A. And I couldn't tell you without first being able to talk with the IRS to make sure that everything was all set.

Q. Yes. And since August 10, we still really don't have an answer?

A. Is that a question?

Q. Is that not true?

A. Yeah.

Q. Okay.

A. I don't have an answer. I've inquired and hopefully I will find out soon.

Q. And you don't have any reason to believe that Oscar Stilley's nervousness is faked or anything like that? It's legitimate -- a legitimate concern; correct?

**MR. GALLANT:** Your Honor, I object. That's speculation. He's asking him the legitimacy of someone else's belief.

**THE COURT:** You can give me your perception and then we'll move on to another subject.

A. I would think that you've already been convicted and you're probably not under investigation, but I'm just a probation officer.

Q. (BY MR. STILLEY) Right. But if you're considering Oscar Stilley's sincerity, you have nothing to tell the Judge to question Oscar Stilley's sincerity about his nervousness?

A. I guess I don't understand the question.

Q. You understand that Oscar Stilley is nervous about making affirmative representations to the government; correct?

A. Correct.

Q. You have nothing to tell the Judge to say that Oscar Stilley's nervousness is faked or made up; correct?

A. Correct.

**THE COURT:** Okay. We've covered that, so --

**MR. STILLEY:** Sure.

**THE COURT:** -- now it's time to move on.

**MR. STILLEY:** Sure. Got it.

Q. (BY MR. STILLEY) And you get along with Oscar Stilley quite well; correct?

A. Yeah, I'd say you've been pleasant, and you mentioned it, reachable, very reachable, yeah.

Q. And he's done three drug tests?

A. Yes.

Q. And Oscar Stilley has never given you any trouble about that?
A. No.
Q. Everything that Oscar Stilley is required to do is done on time; correct?
A. No.
Q. I beg your pardon. The forms that have been sent, when there's, for example, a form, it's been sent by the 5th; correct?
A. Correct.
Q. And isn't it true that the attachment -- we've got an attachment here and we can go over that in a little bit -- but isn't it true that on the attachment you have been requested to state if you have a problem with any particular thing so we can see if we can work that out? And you can certainly take a look.
A. Yeah. Can you point to a page where it says that specifically?
Q. Okay. On the attachment to exhibit -- let's just take exhibit 4 because it has it.
A. Oh, I see it. The last page?
Q. Oh, you must be on another one. Okay. On page 2 of the attachment to exhibit 4, do you have -- which one do you have in front of you?
A. I have exhibit 4.

Q. Okay. Are you there at page 2?
A. I am.
Q. Okay. And the next-to-the-last paragraph, last two sentences, it says, "I will have to plead the 5th to those questions, so that I may as well plead the 5th now. If you think I don't have that right, please cite your best authorities." Correct?
A. It says that, yes.
Q. All right. So I did my best to find out whether you had a good basis for -- to show me that my Fifth Amendment claims were invalid; correct?
A. Can you restate?
Q. Okay. I asked you for any authority to show that my position on the Fifth Amendment was unsupported by law?
A. Yes, you did ask me that.
Q. And you never cited any case law to me to show me that I'm wrong?
A. Correct. I'm a probation officer, not an attorney.
Q. Right.
And you have no reason to believe, as you sit here today, that Oscar Stilley wouldn't follow the law if you showed Oscar Stilley that he was wrong?
A. I don't know.
Q. Okay. But I'm not asking -- I'm just saying that you don't have that knowledge. You don't have a reason to believe that

Oscar Stilley would do something contrary to the law if you showed him the law?
A. No, I guess I don't have knowledge that that would happen.
Q. Okay. Isn't it true also that you sent a letter to the Northern District of Oklahoma --
A. I did.
Q. -- about these issues here today?
A. Yes.
Q. And that's not part of the exhibits; correct?
A. Correct.
Q. And isn't it true that you asked Ms. Kory McClintock to inquire of the court whether or not it would be -- this needed to be the subject of a revocation or whether I should get the 30 days I asked for; correct?
A. Correct.
Q. And can you explain to the court what the 30 days were that I -- that Oscar Stilley asked for?
A. You had asked me and my supervisor for 30 days to be able to file a motion to clarify or continue your conditions.
Q. And both of you said that you didn't have an objection to that?
A. I think we said that we didn't have an objection to you like filing your own motion but you had to get the software installed by the 18th or we were sending a letter to the Northern District of Oklahoma.

Q. You passed the issue across to the Northern District of Oklahoma; correct?

**MR. GALLANT:** Your Honor, I'd object. It's a vague question but it's not relevant.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) Okay. And you gave me a name, Kory McClintock, that that was a person that I needed to talk to about the issue of the 30 days; correct?

**MR. GALLANT:** Again, Your Honor, that's not relevant to this petition.

**THE COURT:** In case it tees up something relevant, I'll hear the answer to that, and then we'll take it one question at a time.

A. So I had known SUSPO McClintock to be the person that I would have to talk to about the violation letter about what had been transpiring, so I gave you her name, yes, because I was sending it to, you know, the Northern District of Oklahoma probation office.

Q. (BY MR. STILLEY) But she's not the one that made the decision to deny the 30-day time period either, is she?

A. No, she wasn't the one that I guess denied that.

Q. So, as you sit here today, based on the testimony, we still don't know who made the decision to say Stilley doesn't get 30 days to file a motion?

**MR. GALLANT:** Your Honor, I object. That, first of

all, mischaracterizes the testimony, but also it's not relevant.

**THE COURT:** Sustained.

**MR. STILLEY:** Your Honor, respectfully, if I can make my argument. What I'm trying to show is good faith, that I was not rebellious against following a legitimate order, and asking for a reasonable period of time, and that's what I'm trying to get at and trying to make the record. And, of course, we've got a district court here with no jury, so you can disregard things that are inappropriate and state your reasons. I'm just trying to lay out the record of what took place.

**THE COURT:** We'll have the next question.

Q. (BY MR. STILLEY) Okay. Oscar Stilley sent you and a number of other individuals a letter; is that not correct?

A. Yes.

Q. And that was -- it was addressed to various lawyers, etc.?

A. Yes.

Q. September 8th?

A. I don't recall the date.

Q. Okay.

A. There's been a lot of documents and things that you've submitted.

Q. Sure.

But part of that was citations to various authorities saying that a supervisee should have a reasonable period of

time to file a motion, that they shouldn't be forced to violate or forced into a situation of a crim- -- facing jail without having a chance to exercise their First Amendment peaceful petition; correct?

**MR. GALLANT:** Your Honor, I'd object to the relevance of this.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) You don't have any reason -- you could not tell this court that Oscar Stilley has ever told you that he would not do what the law requires; correct?

A. No, you've never said, "I'm going to break the law," or "I won't follow the law."

Q. Oscar Stilley has consistently attempted to get his right, his First Amendment peaceful petition right, to get clarification and modification; correct?

**MR. GALLANT:** Your Honor, I'd object. That's speculation.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) Do you have any legal opinions in your possession in your office on the Fifth Amendment?

**MR. GALLANT:** Objection, Your Honor. Relevance.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) Now, one of the conditions is monitoring software; right?

A. Yes.

Q. And you told me that -- you told Oscar Stilley that you still didn't know what search terms that you would need to put on that software because you weren't -- or this is an unusual case; correct?

A. Yeah. I don't have any financial -- you're technically a financial case, I don't have any financial cases under my supervision at the moment that have monitoring software, so --

Q. So, even as you sit here today, you still don't know what search terms you would need to monitor Oscar Stilley with respect to the offense of conviction; right?

A. That's not true.

Q. That's not true?

A. No.

Q. What terms would you need?

A. So, IPPC handles that and they have certain profiles for certain offenses. They have people that work there that used to be prior federal probation officers, so they're knowledgeable in different types of cases. They had told me that they have a financial case profile set similar to something like a sex offender profile that is kind of set up and I can modify from there or add certain things, remove certain things.

Q. Okay. So, that knowledge is in somebody else's mind. You still, in your own mind, you don't know what terms you would need?

**MR. GALLANT:** Your Honor, I'd object. Asked and answered. He just answered that question.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) Can you tell me who my -- who is my accuser within the probation on the Fifth and Sixth of the Constitution?

**MR. GALLANT:** Objection, Your Honor.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) You never complained about the blank spaces on the forms, any of them, did you?

A. I believe I did. There was a day, and I don't remember the date, I want to say September 3rd, I could be wrong about that day, that you came into the office to kind of -- just kind of show over the forms. It was a Friday, I think, or a Thursday. But you had shown the forms, the financial documents, and they weren't nearly as completed out as they ended up being, but me and Brent had talked to you about that, we tried to encourage you to fill them out completely and accurately, each question in each section, and you agreed to take another crack at it.

Q. Okay. That was early on before the forms were turned in; correct?

A. Correct. And then I believe I had another phone conversation with you prior to the 5th of September that just reminded you to submit those by e-mail. We agreed on the 6th because the 5th was a holiday, but you still graciously got

them to me on the 5th. During our phone conversation I had reminded you that you must fill them out, those documents, completely and accurately and honestly or they would be included in an amended petition before this court.

Q. Okay. But after you received the -- okay. Scratch that. After you received the forms, turned in, not the pro forma, the forms turned in, you never sent anything in writing saying, "Oscar, maybe you missed this, can you fill this in for me?"

A. No, I didn't say that, no.

Q. And you don't have any reason to believe that Oscar Stilley would not have complied if it's something that he does not have at least an arguable Fifth Amendment claim; correct?

A. I'm unsure. We have had several conversations with you, me and my supervisor, about the forms, and you've filled them out the way you filled them out as they're submitted today. I'm not confident that you would complete them the way I would need you to or the way I've asked you to.

Q. Okay. But really the fundamentals of what's complained about is the plea of Fifth Amendment, it's not the leaving of blanks; correct?

**MR. GALLANT:** I object. That's a vague question.

**THE COURT:** I didn't understand the question. Please rephrase it.

**MR. STILLEY:** Okay.

Q. (BY MR. STILLEY) I'm trying to find out if the basis of

the complaint, the amended petition, that is the pleas of Fifth Amendment, not some omissions of information here and there; correct?
A. I think they're all involved.
Q. You think they're all involved?
A. The computer monitoring, the pleading the Fifth on some of the questions, and also just leaving some blank.
Q. Okay. But it's possible that somebody might accidentally leave something off the form; right?
A. Absolutely. If you'd like to clear that up, --
Q. And if you said, "Hey, Oscar, you didn't put this thing down, was that on purpose," you might get a different response; right?
A. Possibly.
Q. But you didn't do that as to any specific item?
A. No, --
Q. Okay.
A. -- not that I recall. I know that there was a -- the second time that you submitted documents, I just reminded you that I have the same objections to these that I did the first set --
Q. Sure.
A. -- and you said, "I note those and that's fine." But other than that, no, I don't think I specifically made reference to any of the blank questions.

Q. Right. And both of us tried to turn square corners with each other; correct?
A. I don't understand.
Q. Let me help you out a little bit on this.
Each time I send you the documents on the 5th, I raised the Fifth Amendment and object to certain things and ask you to state if you have a problem with anything in particular; correct?
A. Yeah, you say that in the e-mail, yeah.
Q. But isn't it also true that I say all your -- your previous objections don't need to be restated because I understand them; right?
A. Correct. Yeah.
Q. Okay. So that's what I mean by turning square corners. So, it would be fair to say that we're -- both sides are trying to be reasonable with the other and make things as easy as possible so that both sides know what the problem is with the other one?
A. Yes.
Q. Okay. Now, these forms frequently will not allow an explanation on the form; correct? For example, some of the blanks only allow a number, and if you try to put a letter, it won't allow it?
A. Yeah. I've never tried to fill one out on a PDF, but yeah, I'm sure that that's accurate.

Q. So your complaint is not that Oscar Stilley supplemented his response with an attachment, is it?
A. No, I have no issues with --
Q. Oscar Stilley could supplement and state his position and say where he's got questions, and you're still okay with that; right?
**MR. GALLANT:** I object to the characterization of "okay with that." I'm not sure what that -- it's vague.
**THE COURT:** Answer if you can.
A. Can you restate?
Q. (BY MR. STILLEY) Sure, sure.
The explanations on an attachment are not objectionable in your professional opinion; correct?
A. Are you asking if I like agree with the reasons that you objected?
Q. No.
A. Just that you writing them out on a form and providing it to me, is that okay?
Q. Correct. Just the very fact of explaining the supervisee's position.
A. Yeah, I don't have any issue with that.
Q. So, if there was something wrong with the explanation, you would then inform the supervisee, "Hey, there's something wrong that needs to be fixed"?
A. Not necessarily.

Q. Well, you wouldn't recommend a petition to -- for a warrant or summons unless you had given that person a chance to correct, would you?
A. True, which we did in this case. We met, we kind of discussed the documents the first time you completed them. We didn't even take copies of them because we kind of pointed out each section that you really needed to go back and be honest and truthful, that we weren't trying to catch you into anything that you -- you know, in any violation. We just were there to help you and be supportive and hopefully get you going onto your term of supervised release. And then when you came back with the forms, I can't -- I can't -- I can't be bogged down in a constant e-mail chain back and forth with one person under supervision when I have 55 other people that I deal with that, some of which, pose a great risk to the community and I need to be involved in their cases, as well.
Q. Sure. But you recognize that Oscar Stilley does not pose a substantial risk to the community; right?
A. I'm unsure. You've been noncompliant with the documents, so I don't know if you're doing anything that could violate your conditions.
Q. Okay. What specific risks do you think that Oscar Stilley might pose to the community?
A. Can ask you that again?
Q. What specific risks do you think Oscar Stilley might pose

to the community?
A. Based upon your offense of conviction, you were convicted of crimes against several different people, defrauded them. There's a potential that that could occur again, so that's something -- that's why you have the conditions that you have and that's why we're monitoring you in that fashion.
Q. Okay. Now, you talked about the offense of conviction, so let me ask about that. Are you talking about the pretrial theory in which Oscar Stilley was alleged to have paid money that Lindsey Springer allegedly earned to him out of client funds? Is that your theory?
**MR. GALLANT:** Your Honor, I object.
**THE COURT:** Sustained.
Q. (BY MR. STILLEY) Is it your theory that Oscar -- you said "offense of conviction." I'm trying to find out what you mean by "offense of conviction." Is it the claim that Oscar Stilley and Lindsey Springer stole the money that was relied on after trial and long after the jury verdict?
**MR. GALLANT:** Your Honor, I object.
**THE COURT:** Sustained.
Mr. Stilley, let me clear the air. You had a trial, a jury trial, the jury convicted you, you were sentenced. Your conviction and sentence, as I recall, were affirmed on appeal. Am I right about that?
**MR. STILLEY:** Your Honor, I never got a chance to do

my appeal. Nobody has claimed that --

**THE COURT:** Okay, okay.

**MR. STILLEY:** -- I've done my appeal. The only reason I couldn't do my appeal is because of two things. One, I asked -- I made an unopposed motion for the transcripts and it was denied.

**THE COURT:** Okay. Let me finish, and then at the argument stage, if there's anything relevant that you have to say by way of argument, I'll hear you.

We're not going to relitigate your underlying conviction for the offenses that were charged in this district on which you were tried and on which the jury returned its verdict. We're just not going to relitigate that. So, bear in mind that the only question before the court today is whether you did or did not violate your conditions of supervised release in the manner alleged in the amended petition. Your questions need to be confined to that. We'll have the next question.

Q. (BY MR. STILLEY) Do you have any understanding of the mental state that a supervisee has to have in order to be criminally liable for failing to adhere to a term of supervision?

**MR. GALLANT:** Your Honor, I'd object to relevance.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) You're aware that one of the terms -- excuse me -- one of the terms of supervision is to not use any

form of encryption that would change -- is that not correct?
A. Yes. Generally, yeah, I recall one of the special computer restriction conditions, yeah.
Q. Were you aware that the government sent Oscar Stilley these very exhibits using Power- -- I think it's PowerPoint encryption, using an encryption service that required him to create a user name and an account in order to get that?
**MR. GALLANT:** Your Honor, that's not at all relevant to the petition --
**THE COURT:** Sustained.
Q. (BY MR. STILLEY) Okay. Can you agree that it's impossible to avoid the use of any encryption in the modern world?
A. I don't know.
Q. So you don't know whether Oscar Stilley violated that condition intentionally or not?
A. I don't recall anything in the petition talking about the encryption.
**THE COURT:** There's no asserted violation, Mr. Stilley, with respect to that particular condition of supervision. The allegation in violation number 1 is that on August 10, and we've heard testimony that you were given until a few days later, that Oscar Amos Stilley violated this condition of supervised release when he refused to allow the installation of remote monitoring software to occur. So we're here to determine whether that is a true statement or not.

The fact that violation number 1 refers for context to other conditions of supervision is perhaps of interest by way of background, but the question on violation number 1 is whether you refused to allow the installation of remote monitoring software. That does not implicate the encryption condition to which you have referred and that's the reason that the question about encryption is not relevant to this proceeding today.

We'll have the next question.

Q. (BY MR. STILLEY) You retain the ability to bring further revocation proceedings later; correct?

**MR. GALLANT:** Your Honor, again I object to relevance.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) And you realize that some of the conditions are impossible to perform; correct?

**MR. GALLANT:** I object, Your Honor.

**THE COURT:** And, Mr. Stilley, let me follow up. You have pending a motion to modify your conditions.

**MR. STILLEY:** Yes.

**THE COURT:** That's -- now, bear in mind, that's a prospective matter; that's not going to cure any violations that have occurred. But I've heard enough to know that I may, in fact, surprise you by taking a hard look at some of your conditions, how some of these conditions fit your situation. But questioning about violations that might occur in the future

are irrelevant to this proceeding today.

We'll have the next question.

Q. (BY MR. STILLEY) You said that you didn't have any intent to disclose, for example, any potential admissions of drug use to the police; correct?

A. Correct.

Q. That doesn't have anything to do with whether or not it's an objectionable question under the Fifth Amendment, does it?

A. I don't understand your question.

Q. Your intent to do or not do with certain information doesn't impact whether a valid Fifth Amendment right is implicated; correct?

A. Yes.

Q. As a matter of fact, you get information for other people; right?

A. Can you ask that again?

Q. You acquire information from Oscar Stilley and then pass it along to other people; correct?

A. Not typically.

Q. I thought you said that you were simply getting information and sending it to the Northern District of Oklahoma.

A. Not on a rolling basis. The only reason I communicated with the Northern District of Oklahoma is because you're in violation.

Q. Isn't it true that the reason that you sent it to the

Northern District of Oklahoma is because the Northern District of Oklahoma still has technical jurisdiction over Oscar Stilley?

A. Correct.

Q. And those people in that office could make other decisions about what to do with that information; correct?

A. Sure, yeah. I mean, if you're referencing the violation report, yeah. I mean, I sent a letter saying, "Hey, what would you guys like us to do," because it wasn't our court that had jurisdiction, yeah.

Q. Sure.

Okay. You understand that the conditions have a lot of requests about, for example, financial information; correct?

A. Correct.

Q. And you asked for user names and passwords; right?

A. I asked for them because they're in the conditions, yes.

Q. Right. I understand. I understand. That would include the login -- the user name and the password for the Arvest account; correct?

A. I'm just reading over the conditions.

I'm not sure that it would actually be for the Arvest account.

Q. It says that -- technically, the condition says all user names and passwords; right?

A. All e-mail accounts, Internet connections, and Internet

connection devices including screen names and passwords to the probation officer. You shall immediately advise the probation officer of any changes in his or her e-mail accounts, connections, devices, or passwords. I would say that's more e-mail account pass- -- and computer, like you turn on your computer and it's locked, more like screen name and password information to get on the computer, any of your e-mail and I guess online. I wouldn't say that would -- and maybe the court can correct me -- but I don't think that includes your Arvest bank account.

Q. Okay. So, at the very minimum, that would be ambiguous?

A. I'm not sure.

Q. But you're not sure one way or another whether the Arvest account is included; right?

**MR. GALLANT:** Your Honor, I'd object to that. It's asked and answered.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) Providing the -- Oscar Stilley provided you with the bank statements each month on the 5th of the month since he started the supervision; correct?

A. The first -- so, on September 5th when you first submitted these documents, the bank statements weren't with them. You had already sent me your tax returns for 2020 and 2021 as well as pay stubs, but you later sent the bank statements, and since have sent it with the monthly report on the 5th of each month,

yes.
Q. Right.
So, as of August 10th, 2022, you've gotten statements as to the bank account, Cash App, and the PayPal; correct?
A. Since August 10th?
Q. As for transactions occurring since that period of time.
A. Yes.
Q. Would that satisfy the request for the user names and passwords, or is that substandard performance as to those specific items?
A. It wouldn't satisfy that condition because it doesn't include any of your e-mail account passwords or your password to get on your computer.
Q. I beg your pardon. I need to make the question clear. I'm only talking about the user names and passwords for those three accounts, not for the e-mails, etc. I'm trying to focus on those three accounts. Does the turnover of statements from each of those accounts on a monthly basis satisfy the requirement to provide user names and passwords?
A. Just a moment.
**THE COURT:** I'm not sure I understand the question. Those are two different things; providing a statement is one thing and providing a password is another thing. I'm not sure I understand the question.
**MR. STILLEY:** I'm just trying to get him to admit

that. That's the point I'm trying to make. You understand it, and I just want him to say it.

**THE COURT:** Okay. Then you've made it.

Next question.

**MR. STILLEY:** Okay. Thank you.

Q. (BY MR. STILLEY) There is a question about contact with persons with a criminal record. Do you recall that?

A. On the monthly report?

Q. Yes.

A. Yes.

Q. And it doesn't say felons, it just says criminal record; correct?

A. Correct.

Q. And Oscar Stilley provided a fairly extensive explanation about why that he thinks that's impossible performance; correct?

A. Yes.

Q. Is that satisfactory, or is that good enough or not?

A. No.

Q. What specifically did you want?

A. If you have any knowledge that you've had contact with somebody with a criminal record.

Q. Okay. Define "criminal record."

A. Anybody involved in criminal activity actively or maybe in the past. Your conditions also require you to -- or prohibit

you from contact with felons unless I approve it. It's impossible to know anybody -- or everybody's criminal background. When I go to the store and buy a pack of gum, I don't know if the cashier is a felon or not. You know, all I'm saying is whether you know or not that they have a criminal record, it needs to be reported on the form, if you had contact.

Q. Okay. Would you say that Oscar Stilley has any duty to inquire about criminal records?

A. To whom?

Q. Okay. For example, if Oscar Stilley calls on behalf of his employer, REVAMP, Remember Every Victim And Missing Person in the U.S., calls a witness, calls somebody with knowledge to try and get some information to help resolve an unsolved murder, does Oscar Stilley have a duty to try to find out if that person has a criminal record?

A. I would say, and I thought I've mentioned this to you but maybe not, based on your employment and kind of what that entails, it's obvious that you're going to probably encounter somebody with a criminal record. If that's within your duties of employment, I don't have any issues with that. You know, it's more about who you're spending time with outside of work, leisure.

Q. Would you be satisfied if Oscar Stilley simply told you about persons with whom he actually physically spends time? In

other words, if he goes and hangs out with them, is that sufficient?

A. I would be satisfied if the document, the PROB 8, was filled out completely and accurately and you would indicate there. If you haven't, then you haven't, and you could select "No."

Q. So, then we could actually resolve this particular issue by agreeing that if Oscar Stilley goes and hangs out with that person, Oscar Stilley has a duty to tell you if they have a criminal record or a felony?

**MR. GALLANT:** Your Honor, I object. The purpose of this hearing isn't to modify his conditions, it's to decide whether he violated the conditions and what sentence, if any, should be --

**THE COURT:** Sustained.

**MR. STILLEY:** Your Honor, if I could make just a bit of argument. What I'm trying to show is there was no willful or violation of any condition with evil intent particularly about this and that this is the kind of thing that is entirely resolvable, the kind of thing that should not result in punishment, reimprisonment, or anything of that nature.

**THE COURT:** Well, Mr. Stilley, I understand your point. It would be a little easier to understand if you had made even the slightest attempt to give a meaningful response to that question, but you didn't. I mean, you've given a whole

lot more explanation today than you made any attempt to do on the document. So I understand your point.

And I'll say, once again, at an appropriate time I may well try to craft conditions a little more conformably to your situation in terms of the reporting requirements. We'll see. And that's to be determined, I'm not making any promises. But you've got me thinking on this or that in terms of crafting conditions that conform more -- if you will, in a more customized way to your situation. But the objection is sustained because you didn't make the slightest attempt to provide any explanation of the kind that you have today.

We'll have the next question.

**MR. STILLEY:** Certainly. I will rely on the explanation I put there. I'm trying to make the record on this basically to explain what the situation is.

Q. (BY MR. STILLEY) So, going -- we had a discussion this morning here in court; correct?

A. Yes.

Q. And we actually resolved some ambiguities, misunderstandings, etc.; correct?

**MR. GALLANT:** Your Honor, I'd object again.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) You wouldn't have any problem with Oscar Stilley going forward with the performance that was agreed this morning, going forward?

**MR. GALLANT:** Your Honor, again I object. That's not relevant to this hearing.

**THE COURT:** Sustained. The question is whether the violations asserted did or did not happen. That's the only thing before the court today.

**MR. STILLEY:** Your Honor, if I could have a moment. I think I left some papers on my desk.

**THE COURT:** Surely.

Q. (BY MR. STILLEY) You are aware that Oscar Stilley has certain attorney-client privileged documents on his computer; correct?

A. I'm not aware of -- I'm not for certain but that's what you've represented to me, yes.

Q. Oscar Stilley told you that he had a treasure trove of attorney-client privileged documents from the approximately 19 years that he spent as an attorney; correct?

**MR. GALLANT:** Your Honor, again I'd object that this may go to mitigation or sentencing but it doesn't have anything to do with the violations.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) You're also aware that Oscar Stilley has access to certain confidential files with his employment; correct?

**MR. GALLANT:** Again I object, Your Honor, the same objection as before. This has nothing to do with the actual

violations. Maybe mitigation or sentencing.

**THE COURT:** Sustained.

Q. (BY MR. STILLEY) You're not trying to do anything that would force Oscar Stilley to get fired from his job, are you?

A. No.

Q. And you understand that sometimes things such as getting privileged information secured sometimes takes some time; correct?

**MR. GALLANT:** I object, Your Honor, on the same basis, that it's not relevant to the violations.

**THE COURT:** Sustained.

**MR. STILLEY:** Pass the witness.

**THE COURT:** Any redirect?

**MR. GALLANT:** No, Your Honor. Just the witness mentioned his boss. If he could just spell the first and last name for the court reporter. Mr. Young.

**THE COURT:** Please spell the first and last name of your boss.

**THE WITNESS:** Yes, Your Honor. Brent, B-R-E-N-T. Young, Y-O-U-N-G.

**THE COURT:** Thank you. You may step down.

**MR. GALLANT:** We have no further evidence, Your Honor, and we rest.

**THE COURT:** Very well.

Mr. Stilley, do you have any evidence to present?

**MR. STILLEY:** No, Your Honor. I object that I didn't get the evidence, don't know who the accuser is, don't know -- I have not been afforded a compulsory process, etc. I've made my record on that in writing. I'd like to rely on that with the court's permission. But based on the conditions, I do not have any witnesses or exhibits to offer.

**THE COURT:** Very well. It's now just a little before one. We will resume at two o'clock. I will hear -- and let me give you just a little bit of a preview of what you can expect beginning at two o'clock.

I will hear concise argument, first from the government and then from Mr. Stilley, as to the matters asserted in the amended petition viewed in light of the evidence the court has received today. So I will hear concise argument and then I will rule on the amended petition.

But in terms of evidence, based on the announcements that have been made just a moment ago, the record is closed in terms of evidence and it is now ripe for concise argument. In the event that revocation results, I will obviously also hear argument or recommendations with respect to disposition.

Anything further before we recess until two o'clock?

**MR. GALLANT:** No, Your Honor.

**THE COURT:** Mr. Stilley?

**MR. STILLEY:** Just quickly. Is that going to be split up? In other words, we argue about the merits and then later

argue about the potential disposition?

**THE COURT:** You have it exactly right.

**MR. STILLEY:** Thank you, Judge.

**THE COURT:** Court will be in recess.

(THE LUNCHEON RECESS WAS TAKEN)

AFTERNOON SESSION

NOVEMBER 21, 2022

---------------------------------------------------------------

**THE COURT:** We are resuming in criminal 09-043, United States of America vs. Oscar Amos Stilley, in the hearing on the amended petition for warrant or summons. The evidence is all in, as we established before we took our mid-day break.

I'll now hear concise argument from the government on the issue of revocation. And, as I've made clear to Mr. Stilley, in response to his inquiry just before we took our break, I'll hear argument on that, and then, if it should become relevant, I'll hear argument separately and subsequently on the issue of actual disposition.

Mr. Gallant, I'll hear from the government.

**MR. GALLANT:** Yes, Your Honor.

Very concisely. The amended petition lays out four violations and there's been overwhelming evidence of violations. In fairness, I really don't believe Mr. Stilley really has contested the merits of the violations but has tried mitigation.

With respect to number 1, it is clear he did not allow or agree to allow for the installation of the remote software to occur.

With respect to number 2, he did not provide -- government exhibit number 2 is the net worth statement, and then number 3

is a probation form B, so those are clear, they're in evidence, and he did not complete them. His invocation of the Fifth Amendment based on his statement was not in good faith, and quite frankly, as I understand his argument, it's really based on this purported paranoia and a failure to admit his underlying conviction. It's all linked to he doesn't admit that he was justly convicted of the underlying crime, and from that flows all these arguments that are not in good faith.

And then with respect to number 3, violation number 3 has to do with the password to his e-mail account, login and e-mail information regarding PayPal. Again, it's undisputed that he failed to provide that to probation.

And then number 4 has to do with the monthly report. Again, that's government exhibit number 4 is the August report, and it is not filled out, it is not completed, and that was a condition of his supervised release.

So the petition is substantially supported by the evidence, really uncontested, Your Honor.

**THE COURT:** Thank you very much.

Mr. Stilley, I'll be happy to hear from you with respect to the issue of revocation.

**MR. STILLEY:** Thank you, Your Honor.

And once again, I have the same position on concise. You asked for concise and I'll do my best to be concise with this and I have great confidence because you've been with this case

the whole time, you know the record, you know a whole lot about this case. I do, just as the government, I rely on the entire case, and this is for liability only. As this court knows, there's a lot of really sticky issues that are in the case that will be -- become moot if the attack against Oscar Stilley does not result in revocation. And those --

**THE COURT:** Now, say that again.

**MR. STILLEY:** If the criminal attack against Oscar Stilley does not result in revocation, a whole lot of issues go away. That's what I'm saying. There's a lot of what I would contend are very serious issues, Fifth Amendment rights, I briefed the court on that, and I apologize for the lateness. Just a whole litany of issues, the jurisdictional issue coming from the Western District of Oklahoma, the accuser, etc., there's a lot of issues that all go away.

**THE COURT:** Okay. Well, forgive the interruption, but I want to make sure I understand what you're saying. When you say "criminal attack," is that this petition or --

**MR. STILLEY:** Yes.

**THE COURT:** -- is this some investigation, or what?

**MR. STILLEY:** I'm talking about the revocation, that is a criminal attack, and the case law says that a punishment under revocation is punishment for the original offense. That gets around a whole lot of constitutional issues. So that's what I'm talking about.

**THE COURT:** Okay. Okay. I just wanted to make sure. Go ahead.

**MR. STILLEY:** Sure.

We've heard from the government concisely and we appreciate that, I know I appreciate it and I'm sure you do, too, on concisely. But there is nothing about a bad mental state, and Your Honor, I would respectfully --

**THE COURT:** There's nothing what?

**MR. STILLEY:** About a bad mental state or any mental state or even an argument, "Hey, we don't have to have any mental state, it's a strict liability crime." And I would respectfully contend you can't have a strict liability crime when the case law says the punishment is for the original offense. It can't be strict -- for a whole lot of reasons, it can't be strict liability. You have to have some bad mental state, and they don't have any, and they don't claim any. They're not arguing any. You should be able to say that if you had any.

And here's what we've got to show, that Oscar Stilley showed up the first day, first day, boom, straight from Little Rock to Ft. Smith, to show up and explain, "Hey, we've got some problems with this, I've got a bunch of attorney-client privileged materials on my computer, I've got -- you know, I work at a job that this won't work, you know, can I have 30 days," and we discussed that on the record from the stand.

Oscar Stilley never got a chance to talk to the decision maker. The First Amendment says, hey, you've got a right to peacefully petition for the redress of grievances. And Mr. Forsyth admits, "I'm not the one making the decision." I sent this over there and he sends a letter, he said he sent the letter over there, I asked about it --

**THE COURT:** Let me ask you to slow down just a bit, please.

**MR. STILLEY:** Sure.

**THE COURT:** That makes it real hard to get a good -- a good complete and accurate record.

**MR. STILLEY:** I apologize, Your Honor, and that is absolutely correct.

But what I'm trying to tell this court is that the record that you heard today is of someone -- and you know my background, you know Oscar Stilley's background -- it is a record of someone who believes that he has a good-faith basis for modification, clarification, trying to get that.

And you've also heard from the stand that Oscar Stilley was given until the 18th and somebody decided, "No, we're not going to give you until the 18th, we're going to cut you off today." And, Your Honor, I'm sure you understand, it's hard to do these things when you've got things that is totally unethical to allow the government to just go into it, attorney-client privileged files. I don't think anybody disagrees that Oscar

Stilley would have those naturally. It's not proper to deny somebody the chance to go and ask and see, "Do I have agreement here, can I go ask the court?"

Here's another thing. You did not hear anything from the stand to the effect Oscar Stilley is going to defy the court's order once he gets a decision on this. You heard nothing. There is no evidence of that. That would be indicative of bad faith, if Oscar Stilley says that he's going to disobey a court order after he's had his First Amendment peaceful petition, but you don't have that, it's not there.

And I'm not here to relitigate the whole issues. You know Oscar Stilley continues to file -- you know that Oscar Stilley has filed various pleadings, you understand that, and you can see that Oscar Stilley is standing on his First Amendment right, but he's standing respectfully and he's not trying to do anything that would amount to a contempt of court. Not at all. There's no evidence of that and there's no good reason for a finding of that.

Plus, and I do want to explain, I understand it might seem like it's a long period of time here, but when this went to the Western District of Oklahoma it went to the Western District of Oklahoma on August 24th and only then were the charges made. And you recognize that Oscar Stilley made some objections about the jurisdiction of it and this court graciously granted the opportunity to brief and show the court why the jurisdiction is

not there. So I did that. And in my mind, as the court said, that the court was not sufficiently satisfied. However, that came back. Here's what I'm saying. Oscar Stilley does not have the prescience to know that that's what took place because Oscar Stilley already had it -- and this is not testimony, it's argument -- Stilley already had it in his mind. Okay. He's going to win on this because he's got the authority, he's going to win. When it comes back, Oscar Stilley is going to do the same thing he did beforehand, pick up the telephone and call the Northern District, "Hey, let's work together on this, let's give me a little time, you know, I've got all my other duties, give me a little time and let me do this and let's see what the court says."

So, there's a lot of other issues. The 5.1 findings. I'm not sure we actually need to go there. But here's what I'm saying on the U.S. Sentencing Guidelines 5F1.5 if the court actually makes those findings. There's a problem with the whole thing. There's a problem with the whole thing. I'm not trying to disrespect the court's decisions and the rulings in this case or anything of that nature, and I do think that this court, at least on some level, respects the First Amendment petition, your right to exhaust your legal remedies, things of that nature. I've seen what you've done. You know what I've said in my court filings and I think that you'd have to agree that I am respectful of the court and of court proceedings.

Your Honor, I would simply say that I think you can agree that this is a rare case. Rarely do you have a supervisee saying, "Please, I think I have a good basis and I want an opportunity to brief the court." And in this rare case I think it is appropriate to say, "Hey, I can't find -- with any mental state at all, I can't find an intention of a willful violation of the conditions of the court."

And the last thing I would say before -- and if you have questions, I'd be happy to answer them, but if the court needs to take this under advisement, I understand there's a lot of paperwork that I laid on the court, and if you need to take this under advisement, that's okay, I understand. Otherwise, I will see what the court rules on this proceeding.

**THE COURT:** Thank you.

I have referred more than once to the fact that Mr. Stilley has been aware of the amended petition for two-and-a-half months, give or take a few days. That's true. Mr. Stilley's term of supervised release of three years started on August 10th. It was on that day, or very soon after that, that Mr. Stilley knew or by any reasonable standard should have known that he had some problems afoot, if you will, in terms of compliance with the conditions of supervision because it was then or very shortly after that, according to the testimony and evidence that I have, that Mr. Stilley started to push back against the conditions of supervision. The conditions of

supervision that are involved here were proposed at the time of sentencing. That was in black and white. Mr. Stilley had an opportunity to object to those conditions and he did not. So, if you will, those conditions of supervision became the law of the case.

Now, just in case it should be thought that those conditions were not put there for good reason, and just in case it should be thought by anyone here in the courtroom, or for that matter by a reviewing court, that those conditions of supervision require further attention as a legal matter as opposed to as a matter of the court's discretion in possibly modifying the conditions, I will refer to a case from the Court of Appeals that was handed down by the Court of Appeals several months after -- actually close to a year after the sentencing in this case, and that is the case of *United States vs. Mike*, 632 F.3d 686, a Tenth Circuit decision from February 17th of 2011. And again, the backdrop for my examination of the conditions of supervision as a legal matter is the fact that the proposed conditions were included in the presentence report and were not objected to. They were black letters on white paper in part D of the presentence report. Mr. Stilley did lodge extensive objections to other matters but not to any of the proposed conditions of supervision.

In looking at those conditions -- and as I say, Mr. Stilley has more or less objected to those conditions, that's really

the heart of Mr. Stilley's response to the petition is a problem with the conditions. I want to revisit those conditions because they are unquestionably intrusive. No one would want to be required to give up your e-mail passwords and access to your e-mail account and to acquiesce in search -- computer search capability by a third party. That is intentionally intrusive and unquestionably intrusive.

So, in looking at the criteria in *United States vs. Mike*, and I'm now looking at the three-prong test articulated in that case beginning on page 692 of 632 F.3d, I look first at whether the conditions are reasonably related to at least one of the following: the nature and circumstances of the offense; the defendant's history and characteristics; deterrence of criminal conduct; the protection of the public from further crimes of the defendant; and the defendant's educational, vocational, medical, or other correctional needs.

Second, under *United States vs. Mike*, I look at whether the conditions involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation.

Third, and this is perhaps less frequently in play, but nevertheless, third, under *United States vs. Mike*, I look to whether the conditions in question are consistent with any pertinent policy statements issued by the commission.

With respect to -- and *United States vs. Mike* involved computer monitoring conditions. I think perhaps that's worth noting.

The Court of Appeals has made it clear that when we have a situation involving intrusive conditions such as a computer monitoring condition, the court should make particularized findings to support the appropriateness of imposing those conditions.

My particularized findings -- and I'm going to go ahead and make them because it's conceivable that on review the Court of Appeals could note that even though *United States vs. Mike* had not been decided at the time of sentencing in this case, the Court of Appeals might nevertheless feel that particularized findings should have been made or that the matter of findings to support the imposition of these very intrusive conditions ought to be made or not made at this point.

And so the conditions, if you will, or the factual background that in my view justifies the imposition of these conditions begins with the fact, as I mentioned at sentencing, and this is page 415 of the sentencing transcript, "Mr. Stilley's IOLTA account was an instrument of fraud pure and simple, and it was an instrument of fraud pure and simple for the use and benefit both of Mr. Stilley and of Mr. Springer. It was very effectively used and it was used in a way that makes a mockery of the purposes for which lawyers

are authorized to maintain trust accounts."

And so, what we know for openers is that Mr. Stilley had very much the inclination to use an account that he maintained in a fiduciary capacity as an instrument of fraud.

As I said later in the sentencing, "Mr. Stilley's status as a lawyer and his ability to hold himself out as a criminal tax defense attorney furthered the defendant's joint objective of committing tax fraud directly and in counseling and advising their clients and significantly facilitated the commission and concealment of these defendants' offenses." In other words, Mr. Stilley was keenly interested in committing his frauds underlying the judgment in this case as entered in this court in 2010 in concealing his fraudulent activity, and that last passage is quoted from page 425 of the sentencing transcript.

In terms of the need for protection of the public from further criminal conduct on Mr. Stilley's part, I refer to my comments at page 447 of the sentencing transcript, and I quote, "I don't think that there is any real possibility that either one of these defendants will change their ways as a result of incarceration. Incarceration and possibly supervised release will essentially be an interruption, albeit a lengthy interruption, in your criminal way of life."

Further relevant to the factors that were recited by the court in *United States vs. Mike* in terms of supporting intrusive conditions of supervision was my comment at the time

of sentencing, and I do certainly stay with this as a particularized finding, and I quote, "I have tried to find even a thin strand of truth or integrity to your conduct or your way of life. It is not there. Not even a speck. There is not even a plausible basis upon which you might have deluded yourself into thinking that you are anything but complete frauds and predators. Your scams have cheated the United States. And that is a serious matter in and of itself. But the United States can print money. If anyone ever had any lingering doubt as to whether you are frauds and predators, that doubt would be removed by the fact that the two of you have also mercilessly fleeced some very vulnerable people. You are predators, pure and simple." That is from page 448 of the sentencing transcript.

On page 449 I address Mr. Stilley specifically. That last comment being directed both to Mr. Stilley and to Mr. Springer. On page 449 I told Mr. Stilley, and I adopt this as a particularized finding in support of these conditions, and I quote, "I must say, Mr. Stilley, that my evaluation of your history and characteristics is also influenced by the fact that you have, to a truly astonishing extent, used your license to practice law as an instrument of fraud and a license to steal. Your victims have included both the United States and the individuals who have been persuaded to their everlasting sorrow that you had the competence and the integrity to make

legitimate arguments on their behalf."

And then later in the sentencing, as indicated at page 460, I went specifically through the conditions of supervised release, or at least some of them, including computer monitoring that are at issue here. So those conditions were in the presentence report, they were not objected to, and I specifically mentioned them at sentencing, and of course they are down there in black and white in the judgment and sentence.

And in my view, those particularized findings that I made in 2010 and which I reiterate now and I adopt now because Mr. Stilley has given me no reason whatsoever to think differently of his proclivities, those particularized findings, in my view, substantially and compellingly support the imposition of the conditions that Mr. Stilley is accused of having violated. They are reasonably related to the nature and circumstances of the offense, Mr. Stilley's history and characteristics, the deterrence of criminal conduct, and certainly the protection of the public from further crimes of Oscar Amos Stilley.

Mr. Stilley, at the time that he committed these crimes and mercilessly fleeced vulnerable people, and that was shown beyond any doubt whatsoever, he used sophisticated means, he used the computer, he used the Internet, he used Internet means of communication. And looking at the second *United States vs. Mike* factor, I conclude quite readily that the conditions at

issue involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation.

As to the third *United States vs. Mike* factor, the policy statements, no sentencing commission policy statements have been brought to my attention in this matter that would have any bearing beyond the considerations already covered by the first two prongs of the *United States vs. Mike* analysis.

Now, turning to the evidence before the court, I credit the very credible testimony of probation officer Ryan Forsyth. It probably was not a cause for celebration that Mr. Forsyth drew Mr. Stilley as a releasee and supervisee but I certainly have the impression that Mr. Forsyth has dealt professionally in all ways with Mr. Stilley.

They were in touch with each other at the beginning of the term of supervised release. Mr. Stilley did provide some statements, for instance, from Arvest Bank, PayPal, and Cash App, but that falls far short of complying with the very clear reporting requirements that applied to Mr. Stilley. I'm going to comment a little bit later about those reporting requirements and there may be more to be said about that, but what Mr. Stilley did certainly fell far short of complying with those reporting requirements.

I'm going to allude just briefly to what Mr. Stilley has

referred to more than once as a jurisdictional argument or a jurisdictional issue. This petition was filed by the United States Probation Office and the order that I entered in the Western District on November 3rd of this year makes it very clear that the operative amended petition is the September 7, 1920- -- September 7, 2022 amended petition. And it's not, as I have said earlier today, it's not a matter of subject-matter jurisdiction. I transferred the case from the Western District back to the Northern District because I thought that it would, perhaps for one thing, better serve the interests of all concerned, and as I said in that order, I was also not sufficiently satisfied as to the statutory basis for transfer to the Western District in the first place, and for that reason we're back here where this case started, in the Northern District of Oklahoma.

Looking at the exhibits in this case and looking at them versus the violations that are asserted, looking at violation number 1, it relates to a violation of special condition number 3. The specific violation asserted is that Mr. Stilley violated this condition when he refused to allow the installation of remote monitoring software to occur. That is unquestionably true. That has been established by the evidence and testimony really without question here today.

Now, with respect to the possible presence of attorney-client information that might be revealed with that

remote monitoring software, I can simply say that the intrusive conditions that you have certainly earned and warranted, Mr. Stilley, they might limit your employment opportunities. If you have an employer who is skittish about the possibility that a probation officer might see attorney-client protected information, that could conceivably limit your employment opportunities. But I know of no less intrusive means of monitoring whether or not you have returned to your old thoroughly fraudulent and predatory ways. So that's a matter that perhaps could be revisited at a later stage if there is a way to make that condition conform and accommodate the needs and concerns of your employer. But at the end of the day it is, I think, a reality that very often conditions of supervision can operate to limit an offender's employment opportunities.

In any event, that violation clearly occurred. Mr. Stilley did refuse to allow the installation of remote monitoring software.

We come to violation number 2, and I'm not going to repeat the entire summary of the violative conduct, but it is true that the response by Mr. Stilley to the requirements of these conditions, and specifically the financial disclosure and related matters, did not even come close to complying with the conditions of supervision and with the reasonable requests that were made by Mr. Forsyth.

Coming to condition number 3, or violation number 3, rather, relating to disclosure of e-mail accounts, PayPal accounts, Internet connections and so forth, including screen names and passwords, the question is whether the following assertion is true: "As of today's date, Mr. Stilley has failed to provide the probation office with his password to his e-mail account or login and password information regarding his PayPal account. He has also refused to allow the probation office to install monitoring software on his computer and cell phone as reflected in violation number 1."

That assertion is undeniably true. It is accurate to a tee; Mr. Stilley did refuse to do the things that are asserted with respect to violation number 3.

We come to violation number 4 relating to reporting to the probation office, and Mr. Stilley's response to that or his purported performance of that really makes a mockery of the requirement of reporting to the probation office as required by the probation office and he has clearly violated that condition.

So the violation of those conditions is very clearly established. If there were any question about that, why, one would need to look no further than government's exhibits 1 through 4 to note that the refusal of Mr. Stilley to comply with his conditions of supervision is plain, not only from the very credible testimony of Mr. Forsyth, but from the exhibits

the government has introduced into evidence.

The short of the matter is that nothing in the exhibits or in the testimony, including Mr. Stilley's four-page continuation statement attached to government exhibit number 4, implicates the Fifth Amendment in any way with respect to violations 1 and 3. -- and this is an important point -- violations 2 and 4 are reporting violations as to which Mr. Stilley argued that he had a Fifth Amendment right not to comply, but nothing in the exhibits or in the testimony, including this four-page continuation statement, implicates the Fifth Amendment in any way with respect to violations 1 and 3. Violations 1 and 3, standing alone, amply support revocation. The same is true, I hasten to add, with respect to violations 2 and 4, but I'm going to leave violations 2 and 4 pending and unadjudicated. I do determine that violations 1 and 3 have been established beyond a reasonable doubt, let alone by a preponderance of the evidence, but I'm going to leave violations 2 and 4 pending and unadjudicated. I may dismiss those violations when I rule on the motion for modification of conditions. That is to be determined. But in my view, the violations asserted in violations 1 and 3 are serious and they do compel revocation.

The very idea that Mr. Stilley's violations are not willful is ludicrous. Mr. Stilley, a former practicing lawyer, who participated in a lengthy jury trial in this case as his own

lawyer and has had since August to think about compliance with these conditions, Mr. Stilley is not an unintelligent man. To the contrary, Mr. Stilley, for whatever other bad choices he may have made, is not an unintelligent man. I have read a good many of Mr. Stilley's pleadings and briefs, he knows how to put his thoughts down on paper, whether they are meritorious or not is another matter, but he knows how to put his thoughts down on paper, and I conclude very easily that Mr. Stilley's violations of all four of these conditions are willful. But again, I'm going to leave 2 and 4 unadjudicated, and I do find quite easily that violations 1 and 3 have been proven beyond any doubt.

Now, here's the reason that I leave 2 and 4 unadjudicated. We have pending a motion to modify conditions, and after that motion to modify conditions has been responded to I may attempt to conform those reporting requirements, which are implicated in violations 2 and 4, I may attempt to conform those more closely to the circumstances in which Mr. Stilley finds himself. I can't assure anyone -- I'm not a professional at drafting conditions of supervision -- I cannot assure anyone that I'll be successful in attempting to conform the conditions that are implicated in violations 2 and 4 more closely to Mr. Stilley's situation, but I'm going to try to do that.

And in that connection, and the minutes of this proceeding will reflect, I'm going to give Mr. Stilley 21 days within

which to supplement his pending motion to modify conditions of supervision by filing his proposed revised version of any conditions that he would request the court to revise. I'm going to give you 21 days within which to do that, and then the government, whatever the response time might otherwise be will be disregarded, I'm going to give the government 21 days after that within which to respond to the motion and Mr. Stilley's supplement, if he chooses to file one.

Mr. Stilley, I would recommend that you avail yourself of the opportunity to file a supplement to your motion so that I can see in black and white exactly what it is that you propose the court does by way of modification of the reporting conditions, because violations 2 and 4 are premised on your reporting requirements, on your reporting conditions, violations 1 and 3 are not.

And so, going forward, again, I am inclined to attempt to make these conditions, the reporting conditions, conform just a bit more to your present circumstances -- I probably said that about five times and I promise I won't say it again -- but that does not touch violations 1 and 3 top, side, or bottom. There's nothing about your violative conduct leading to violations 1 and 3 that would cause the court to revisit the conditions underlying those violations. The result is that I do find and conclude that violations 1 and 3 have been quite easily proven and that will result in revocation.

That brings us now to the matter of disposition, both on the issue of -- excuse me -- both on the issue of whether there should be a sentence of incarceration and whether remand to the custody of the marshal should occur today if indeed the court determines that a sentence of incarceration should be imposed.

The custody possibility resulting from these violations is up to two years, the guideline range of incarceration under the advisory guidelines is three to nine months, and the term of supervised release would be 36 months minus any term of imprisonment.

So I will -- I'll now hear from the government with respect to the issue of disposition. I will first hear from the government on that score and then from Mr. Stilley.

Mr. Gallant.

**MR. GALLANT:** Your Honor, this gives me no joy, but Mr. Stilley needs to be incarcerated. I have great faith and admiration and respect for our probation office. Your Honor, you've sentenced many people in revocation hearings, and I've been involved in a lot of the cases, and you see so many probationers and people on supervised release that struggle with addiction or circumstances and they're really struggling to turn their lives around, and probation works extraordinarily hard to provide resources, to help folks who are struggling and want to improve things. Mr. Stilley's conduct makes a mockery of that.

This is not a zero-sum game. Probation only has so many resources, so much time, and so much energy to work and help people literally transform their lives. It doesn't happen as often as you or I might like, but we've seen probation, I have, do great things with people turning their lives around.

But what Mr. Stilley does, in effect, by his total noncompliance, wastes the time and energy and resources of probation so they can't devote those resources to people that have gotten, you know, a smattering of the benefits that Mr. Stilley has and they're not able to take advantage of their intelligence and their background and their education in the same way Mr. Stilley has, and they're struggling and probation does everything they can to help them, and then comes along Mr. Stilley who's totally noncompliant, totally wastes the time and energy and resources of probation.

So, I would ask that the court put Mr. Stilley in jail for the whole two years and then terminate supervision. To give him less time and put him back on supervision -- again, there's no evidence whatsoever he had any inkling to comply with any reasonable terms of supervision, Your Honor. And I have no joy in saying that, but I think under the record of this case it is the only fair and just sentence. To give him some period less than the maximum and terminate his supervised release would, in effect, reward Mr. Stilley for his non-compliant behavior.

So, respectfully, and not at all joyfully, Your Honor, I

think a fair and just sentence would be to remand him into custody today for two years.

Thank you.

**THE COURT:** Thank you.

Mr. Stilley, I would be happy to hear you.

**MR. STILLEY:** Your Honor, let me start with the last thing I heard out of lawyer for the government's mouth: two years and kill the paper.

**THE COURT:** Two years what?

**MR. STILLEY:** Two years and kill the paper. In prison that's what they call it, to kill the paper. Of course, I oppose two years. And I've asked, I've repeatedly asked orally and I've asked in writing and now I filed a pleading asking what is the max. My contention for the whole time, the max, this court and the Tenth Circuit found that the max was 15 years. I've done 14. The BOP gave me a year off my time. My good time was vested on the day I got out of prison, on August 10th it was vested, can't be taken back. I have that good time, I've earned that. I've done 15 years but for one year.

Now, I've already explained about how this works, that a revocation proceeding and the punishment for it is punishment for the original crime. *Haymond vs. United States,* I've cited that. The U.S. Supreme Court clearly agrees with me on that, that it's punishment for the original crime, and you can't go above that unless -- unless you give a jury trial, because it

was a jury -- it was a jury verdict that was the basis for sending Oscar Stilley to prison for 15 years. If you don't have that jury verdict, you can't do it. If the jury came back and said, "Hey, we're going to get you on two counts," 10 years would be the max. I already know this court wouldn't say 15 when you've got two counts and five years is the max. Well, you've three counts and 15 is the max. I took a different theory, but that's your theory. I took the theory it would be 11 years or less. This court's theory is 15 years. I've done all but one year of it.

My contention is that all we're playing for, what's on the table, what's on this card table, is only a year, that's max, that's all you can do. And if you do that, then there's -- I mean, the paper is virtually, by definition, killed because what are you going to do? I mean, you can't do it. If you can't put somebody back in prison, it makes no sense to have supervision.

So, that's my starting position, one year is the max, because the Constitution of the United States guarantees a jury trial. The Congress of the United States creates offenses and they say what is the maximum that a person can get for that offense.

Now, if you'll recall, Oscar Stilley was very upset that the U.S. probation said Oscar Stilley should get 61 to 73 months or something like that, and he got it down a little bit

to 54 to 60, something like that, and he was very put out and thought that was wrong. The government got it up to 121 to 151 and I thought that was outrageous. And then the court said, "It's not a departure, it's a variance, and I'm going to vary up and I'm going to give you 180 months." So that's the sentence we're working with and that's the judgment and conviction upon which I stand here today facing punishment. That is the judgment. What I'm saying is that I've already done 14 of those years. There's only one more to go. I understand the Judge might dis- -- you might disagree with me, this court might disagree, but it's a serious, serious issue, and what I would say is why take a chance on that.

So, my position is that one year is the max, and if you give the year, by definition, it is a killing of the paper.

**THE COURT:** By definition it's what?

**MR. STILLEY:** Killing the paper. It is eliminating any further supervised release. And the government apparently thinks that supervised release should be over, they just want two years for it. What I'm telling you is, okay, not only does it violate the Constitution about a jury trial, it violates *Haymond*, it violates all kinds of things, it would basically -- it would basically be an embarrassment for the federal court system if somehow the court found a way to get 16 years out of a 15-year offense. Respectfully, I don't think that's in anybody's best interest, certainly not in my best interest; I

don't want to do any time.

We saw what the probation -- U.S. probation --

**THE COURT:** You actually -- let me just interrupt with a question. This is probably apropos to nothing. You actually seem to be pretty -- you object to two years, and I understand that, but you seem to be really pretty relaxed about the prospect of going back to jail. Is that an incorrect perception?

**MR. STILLEY:** Your Honor, prison does things to a human mind. I absolutely do not want to go back to prison and I'm going to do my best today to do the things that are necessary to ensure that I don't go back to prison. I don't want to go back to prison. I've done a lot of time. Two of my children are going to get married within the next seven or eight months. If I go back to prison, daddy's not there. It hurts. Let me tell you something, prison hurts. People don't understand what a devastating blow prison is to a human being.

So, if I seem stoic, it's because, well, you know, I'm a lawyer by training, I'm told to separate your emotions, stand on your hind legs, argue the facts, argue the law, understand what's in front of you, put your best foot forward, and then if you take a lick, you just take your lick. But I don't want a day in jail, I don't want a day in prison, I don't want any of that.

Now, I want to come back to where I was at, the three

months. Whoever it was that made the call in this, I still don't know, but whoever made the call on this told Aric Holloway, who did the violations report, put down, "We recommend three months." So somehow between then and now somebody has gotten the idea to say, "No, we don't think it should be three months and redo the paper, we think it should be two years and kill the paper." Well, I don't want to go to prison for two years. That's -- wow, that's just crazy.

If they say -- okay, we had this issue before, if they're going to say three months and I'm asking them, "Please, hey, can you put this on your violation report, can you help me out a little here because I want to scotch block this thing, I don't want to get more than, you know, what you told me you're going to try to argue." And also in my motion --

**THE COURT:** You'll what this thing?

**MR. STILLEY:** I don't want to get more than what you have raised and argued in your paperwork. In other words, I want advance notice, what am I playing for, because this man sitting right here at this table has been asking me, you know, "Will you just agree to this?" Well, really, I'd kind of like to know what am I agreeing to? Am I agreeing to something, boom, slam? I need to know that. And I was trying to get this. Okay, what is the max? I tried to explain to Aric Holloway that this is not the statutory max. Even though that statute you're just talking about, I know it says two years, I

know that, but when you take the other statutes, the statutory max is one year, and he didn't want to talk to me. He was actually rude to me and threatened to hang up on me on the grounds, "Mr. Stilley, you're asking legal questions, I ain't going to do that. You keep it up, I'm going to hang up."

So, what I'm saying is it's a due process matter. I've cited the cases, I think it's *Irizarry vs. United States,* and that is -- both the dissent and the majority, the whole thing, it works together and it explains the situation with variance and departure. The United States says, "Okay, for a variance you don't have to give advance notice but" -- and this is actually in the dissent -- the dissent says, hey, look, we disagree with this but there's a way that you can solve this problem and here's how you solve this problem, you put it in this PSR -- and in this case it's really called the violation report -- put it in the violation report. And then, okay, let the -- let the -- let the district judge take a look and let him decide, "Am I willing to agree with this?" That way, the defendant gets a chance -- he knows what he's playing for.

Honestly, I'm a little bit shocked that they want two years on something that not long ago they wanted three months. And I'm just asking for my due process. When my liberty is on the line, that's serious. That's really, really serious.

Now, let me say this. I would rather have the two years and be able to stay out and do my appeal and get my due process

and see what happens than get three months and get slammed and knocked out so I can't do my First Amendment peaceful petition. I want my -- most respectfully, Judge, I don't know how to say this more respectfully, I want my peaceful petition.

When I went to prison, they wouldn't let me have anything. They wouldn't let -- they stole the mail, and Lindsey Springer filed a motion on that, and 30 days later we got shipped and they said it was moot. I got body slammed. I never -- the stuff that I take for granted over there, those -- the official record, the docket items, I was never allowed to have that in jail. I don't want that to happen to me again.

So, whatever you do, whatever you do, I'm saying I'm not going to run. I think you know I'm not going to run. Of all the dumb things that a person could do, and you don't think I'm dumb, that would be the dumbest thing ever for me to run. I'm not going to run.

So I'm asking for a stay of whatever sentence you want to give me and let me take this up. I've got serious, serious issues. And let's stop and think about this. You stated your findings, you stated that IOLTA was an instrument of fraud, but I've already laid it down on paper that six times, six times, pretrial the government said it's Oscar Stilley's fault because Lindsey Springer earned money and Oscar Stilley paid it to him. That's totally different than what we heard from the bench today. I'm not trying to relitigate. What I'm trying to do is

to convince this court to let me have that most precious thing, due process, First Amendment right to peaceful petition.

So I want to stay out. I don't want to go on home confinement. On the 30th of December I got a daughter that's getting married. I don't want to go on home confinement. I want a stay of whatever sentence you put on me. But if I can't get a stay, Your Honor, you can see right there, and I cited it in my paperwork, you can see that the rules and statutes say you can give me basically home confinement. It says you have to stay at home except during work hours. As far as I'm concerned, I had to stay home basically all the time when I was on home confinement.

So, if you can't see your way clear to give me a stay of execution of this sentence, please just -- I was in custody of the United States Department of Justice Federal Bureau of Prisons for two years -- or actually -- yeah, about two years, I was in their custody. And if I say so myself, I was a model inmate, I did what they wanted, I did it right. You can check with them. I did. So, if you --

**THE COURT:** You say you were in the BOP for only two years?

**MR. STILLEY:** No, I was in -- see, I was in low security prisons, four different low security prisons, and then I was in a camp, and then I went to home confinement for two years. In September of -- let's see -- September two years

ago, September 1 I went to the halfway house, September 9 I actually got home. And so, since September 9, what would that be, 2000, I've been on home confinement, and then on August 10, which would be a little bit less than two years, I got off home confinement and on supervised release.

**THE COURT:** Okay. Thank you for that clarification. It was certainly not my intent that you be in BOP for only two years.

**MR. STILLEY:** Oh, no.

**THE COURT:** Okay.

**MR. STILLEY:** Oh, no, absolutely not. I was -- yeah, I was in low security prisons, you know, with tall fences and razor wire for most of the time and just a little time in a camp.

But here's what I'm saying. I'm asking the court -- obviously I want the lowest sentence that I can get, but I either want a stay or I want to go to home confinement. And if there's any question in the court's mind, I'd really like to know, because I'd like to have the ability to brief you on this because there are so many very important issues. And I already know what happens when you go to prison; you're going to get hammered, hammered.

What lawyer can do a decent appeal brief on a case with 4,000 pages -- it was about 4,000 -- 4,000 pages of docketed items and you don't even have it? My wife, ex-wife now, my

wife tried to send it to me. They said, "No, you can't have it," and turned it around and sent it back. Not due process. None of that stuff. And I tried to litigate the whole thing the whole time. Just this summer I got knocked out of the Fifth Circuit on my challenges, administrative remedies to the denial of the things that I needed for an appeal but they didn't deny it with prejudice. It was kicked out without prejudice. I don't need to go into that, to the whole reason because it's not -- not relevant to this proceeding. What I'm saying is I fought the whole time trying to get due process, trying to get the right to peaceful petition.

What I'm asking this court, as seriously and sincerely as I know how to do it, is please leave me with access to what I need to do my work. And I already know that if I'm on home confinement, I get along with those people fine. So, if you want to execute the sentence today, tell me. I mean, I can head to Little Rock tomorrow to go back down to City of Faith and get things set up and be on home confinement. Okay? I hope I don't have to do that, but if I have -- if I go to home confinement, I can still do my appeal.

If I have to go to jail on this today, or at any time, I mean, it's going to take a long time to litigate this to the Tenth Circuit, I'm brutalized, basically I'm totaled, because it for all practical purposes impossible to do a creditable job. And I'm most respectfully asking that you limit the

incarceration as much as you can and that you give me a chance so I do have access to all the things that I need, good legal research, all my files, all my notes, everything like that, which I am not going to get in the custody of the BOP. In 10 years behind the fence and in a camp, I never got it the whole time. So that's what I'm asking.

Does the court have any further questions?

**THE COURT:** I do not.

**MR. STILLEY:** Thank you, Judge.

**THE COURT:** Thank you. I'm going to put one question to Mr. Gallant -- you may be seated -- and then you may want to respond.

What would be, first of all, the relevant considerations and then the considerations, Mr. Gallant, that you would emphasize in support of immediate remand?

**MR. GALLANT:** I would say his total noncompliance, Your Honor. That, as the probation officer said, he can't be sure whether or not Mr. Stilley is involved -- engaged in any illegal activity or not, because while he may be polite, he's totally noncompliant, and I think the record is very clear on that. So, giving him any amount of time doesn't protect the public and doesn't ensure that he's going to be able to report when the court were to designate.

Now, I just have one last thing to say, Your Honor. Mr. Stilley keeps asking who made the call and who decided for

all this to happen. I'll tell him exactly who it was. It's Mr. Stilley who's responsible. And I would just ask you not to give him what he wants but give him what he deserves.

**THE COURT:** Thank you.

Mr. Stilley, you're certainly entitled to respond to that if you care to do so.

**MR. STILLEY:** No, Your Honor. Thank you, but I'm not going to respond to that.

**THE COURT:** Thank you.

In determining the disposition in this case, of course I take into account all of the Section 3553 factors as well as the chapter 7 policy statements. And I respectfully disagree with both the government and the defendant with respect to what the appropriate disposition is.

It is my conclusion that the appropriate disposition is a sentence of incarceration of three months to be followed by 33 months of supervised release.

I will acknowledge to Mr. Gallant that it is tempting to impose the maximum term of two years and then do away with supervised release, but regardless of how well Mr. Stilley may or may not do on that remaining 33 months of supervision, I want Mr. Stilley to remain within, if you will, the short reach of the law for as long as possible.

Mr. Stilley is a fraudster, he is a predator. Mr. Stilley, you've done nothing since last August to suggest otherwise. I

hate to rely just reflexively, and as a matter of fact I don't rely reflexively on the findings that I made more than a decade ago, but you have given me no reason to think you have changed your ways. You were a merciless predator on vulnerable people. You fleeced them of their money. So you were not just a tax cheat; as you well know, you mercilessly preyed on vulnerable people who had their own tax problems. I want you to be within the short reach of the law.

You enriched yourself at the expense of others without any regard for their well-being. I certainly do want you to be within short reach of the law. It's going to be for another 33 months after you serve three months.

These factors that bear most heavily in my conclusion that that is the appropriate sentence and a sentence that is sufficient but not greater than necessary to achieve the statutory objectives of sentencing are, first, your history and characteristics which I've already covered in some detail, the need to deter you from further misconduct, and the protection of the public from further criminal, fraudulent, and predatory activity on your part. And for that reason, as I say, I conclude that it is appropriate that you remain under supervision and that's the reason that I decline to sentence you to two years to be followed by zero supervised release. Your term of incarceration will be three months followed by 33 months of supervised release.

Does either side require any additional or more detailed statement of reasons for this sentence to be imposed? What says the government?

**MR. GALLANT:** No, Your Honor.

**THE COURT:** What says the defendant?

**MR. STILLEY:** No, Your Honor.

**THE COURT:** I do find that the defendant, Oscar Amos Stilley, has violated the conditions of supervised release as asserted in violations 1 and 3. Violations 2 and 4 remain unadjudicated. And as I have said, I will revisit those conditions with the benefit of submissions from Mr. Stilley and the government in response to Mr. Stilley's motion to modify his conditions of release, because that implicates the reporting requirements as opposed to the requirements about computer searches and disclosing screen names and passwords and so forth. Those are two distinct categories of issues and I do intend to revisit the conditions that are implicated with respect to violations 2 and 4.

So, Mr. Stilley, bear in mind, you've got two opportunities for further filings: number one is a further filing in support of your motion for appointment of counsel, if you care to do so, as I mentioned this morning; and number two is your supplement to your motion to modify your conditions of supervision --

Let's see, Camie, did I say 21 days?

**THE DEPUTY COURT CLERK:** Yes.

**THE COURT:** -- in 21 days with your exact proposed modified conditions so that I can have something to look at and consider when I determine, with the benefit of the government's response, whether the conditions with respect to reporting should be modified.

So, to return to where I started that digression, I do quite readily find that the defendant has violated his conditions of supervised release as set forth in violations 1 and 3. Those two violations themselves compel revocation. And so the fact that I'm leaving violations 2 and 4 unadjudicated for the time being really has no impact on my conclusion that revocation is compelled by the evidence before me.

The defendant has a criminal history category of I, his most serious violation is a grade C, resulting in an advisory guideline imprisonment range of three to nine months. The PROTECT Act does apply. I have certainly considered the section 3553 factors as well as the chapter 7 policy statements.

The sentence of three months is at the bottom of the guideline range. Mr. Stilley, it is my hope that by imposing a sentence at the bottom of the guideline range, a guideline range of three to nine months, that you do have some time to reach your own conclusion that there is no option that would be livable, workable, and acceptable for your family, for your

employer, for those who depend on you, other than to comply with your conditions of supervised release. If you reach no other conclusions during your three months in jail, I hope you reach that conclusion.

Upon release, you shall be on supervised release for a term of 33 months, and all mandatory and standard conditions of supervision approved as of November 1st of 2016 will be imposed in addition to the special conditions set forth in the original judgment from April of 2010.

You are further advised that from this order you do have the right of appeal to the United States Court of Appeals for the Tenth Circuit, and that if you cannot pay the costs of an appeal you may apply for leave to appeal without payment of costs for the transcript of the record and an attorney at government expense. Notice of appeal must be filed with the clerk within 14 calendar days or you may request the clerk now to spread the same of record.

I hope you've gathered, Mr. Stilley, that it's not with a wave of the hand that I make my decision with respect to immediate remand, but you have shown no intent from day one of your supervision to comply with your conditions of supervision. I conclude, however regretfully, that I cannot rely on your professed intent to comply or on your professed intent to report at required. You are remanded to the custody of the marshal immediately to begin serving your three-month term.

Court will be in recess.

**MR. STILLEY:** Your Honor?

**MR. GALLANT:** Your Honor?

**THE COURT:** Yes?

**MR. GALLANT:** Mr. Stilley, you can go first.

**MR. STILLEY:** Your Honor, I do want to -- I want to get the appeal in today, but I didn't hear anything about allowing me to be on home confinement or allowing me to have a stay of execution. Is the stay of execution denied?

**THE COURT:** A stay is denied. You are remanded to the custody of the marshal. And by the way, if I forgot to say it, the motion for a true and correct record at docket entry number 749 is also denied. You are remanded to the custody of the marshal to begin serving your three-month term today. The stay is denied and home confinement is denied.

Court will be in recess.

**MR. GALLANT:** Your Honor, I just want to clarify one thing. With respect to our time, we will have 21 days after he files his supplement to respond to the supplement and 750?

**THE COURT:** That's correct.

**MR. GALLANT:** Yes.

**THE COURT:** That's correct.

Court will be in recess.

(PROCEEDINGS CLOSED)

**REPORTER'S CERTIFICATION**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

CERTIFIED: *s/Greg Bloxom*

Greg Bloxom, RMR, CRR
United States Court Reporter
333 W. 4th Street, RM 411
Tulsa, OK 74103
(918)699-4878
greg_bloxom@oknd.uscourts.gov

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **Case No. 09-cr-0043-2-SPF** |
| | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

The court will permit Charles Robert Burton, IV to sit at the counsel table with the defendant during the upcoming revocation hearing, if Mr. Burton chooses to do so. The court is not appointing Mr. Burton to act as counsel, on a standby basis or otherwise. If Mr. Burton chooses to sit with the defendant at the counsel table, the defendant will be permitted to confer with him during the revocation hearing. If Mr. Burton chooses to sit at the table with the defendant during the revocation hearing, that will occur only as Mr. Burton's voluntary choice. Mr. Burton will not be compensated by the court or with public funds.

DATED this 7th day of November, 2024.

S P Friot

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p190 (Stilley) .docx

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**OSCAR AMOS STILLEY,**<br><br>**Defendant.** | **Case No. 09-CR-0043-SPF** |

**United States' Memorandum with Respect to Supervised Release Revocation Hearing Set for November 13, 2024 (Doc. No. 797)**

The United States of America, by and through its attorneys Clinton J. Johnson, United States Attorney for the Northern District of Oklahoma, and Charles A. O'Reilly, Trial Attorney for the Department of Justice, Tax Division, hereby submits its memorandum with respect to the supervised release revocation hearing set for November 13, 2024.

On October 10, 2024, in response to the United States Probation Office's petition, this Court ordered the issuance of a summons for Oscar Amos Stilley to appear and show cause why his term of supervision should not be revoked. The petition asserted nine violations: (1) failing to maintain full time lawful employment; (2) failing to submit complete financial information; (3) failing to deposit all income to a checking account disclosed to U.S. Probation; (4) failing to maintain software to monitor his computer and internet activity; (5) communicating with individuals Mr. Stilley knew had been convicted of felonies;

(6) engaging in the practice of law; (7) committing a crime; (8) failing to notify U.S. Probation of being arrested or questioned by law enforcement within 72 hours; and (9) failing to make restitution payments. Doc. 792. By order dated October 16, 2024, the Court scheduled a hearing on the allegations to be held 10:00 a.m.[1] November 13, 2024. Doc. 793. Mr. Stilley filed his Response to Petition with Defenses November 5, 2024.

For the reasons indicated herein, the United States requests the Court revoke Mr. Stilley's term of supervision, sentence Mr. Stilley to two-years imprisonment for his violations and terminate his supervision.

**Background**

In 2009, the grand jury charged Oscar Amos Stilley and Lindsey Kent Springer with conspiring to defraud the United States in violation of Title 18, United States Code Section 371, and with attempting to evade Mr. Springer's individual income taxes for the years 2003 and 2005, in violation of Title 26, United States Code Section 7201.[2] Doc. 2. Following a trial held in 2009, the jury convicted both defendants on all charges in the Indictment.

On April 23, 2010, this district court both sentenced Messrs. Stilley and Springer to fifteen years imprisonment, three years supervised release, and ordered restitution. In addition to the mandatory and standard conditions, as part of the conditions of supervised release, the court ordered special conditions of supervision

---

1 On November 7, 2024, the Court moved the starting time to 9:00 a.m. Doc. 813.

2 The indictment also charged Mr. Springer with one additional count of tax evasion and two counts of willfully failing to file his individual income tax returns for the years 2002 and 2004.

for Mr. Stilley including disclosing financial information, permitting monitoring of his computer activity (including the installation of remote monitoring software) and to refrain from the unauthorized practice of law.

On direct appeal, the Tenth Circuit Court of Appeals affirmed Messrs. Stilley and Springer's convictions and sentences. United States v. Springer, 444 F. App'x 256, 259 (10th Cir. 2011). Mr. Stilley did not challenge the restitution judgment, the term of supervised release, or any of the conditions of supervised release on direct appeal. *Id*. Mr. Stilley's criminal conviction became final December 20, 2011.

In 2021, Mr. Stilley moved to vacate his sentence pursuant to Title 28, United States Code Section 2255. The district and appellate courts dismissed Mr. Stilley's petition as untimely, noting Mr. Stilley filed the petition almost a decade after his conviction became final, denied Mr. Stilley's request for a certificate of appealability, and dismissed Mr. Stilley's appeal noting that the petition "fails to explain why he waited almost nine years after the limitations period expired to file his petition." Doc. 732 p. 2.

On August 10, 2022, Mr. Stilley commenced his term of supervised release; within two weeks he violated the terms of supervision. United States Probation alleged Mr. Stilley violated the special condition of supervised release involving computer restrictions, and this Court issued a summons directing Mr. Stilley to appear and answer the allegations. U.S. Probation filed an amended petition September 7, 2022, alleging three additional violations: (1) failing to provide

financial information; (2) failing to provide online account information and passwords; and (3) failing to complete the required monthly supervision report.

This Court scheduled the revocation hearing for November 21, 2022. Doc. 740. On November 16, 2022, Mr. Stilley filed a motion for an initial appearance before a magistrate judge which was denied. Docs. 741 and 742. One day before the hearing, Mr. Stilley filed numerous motions, including a motion for the appointment of Charles Robert Burton IV as standby counsel only, a motion to disqualify the judge, a motion to quash the summons and dismiss the case for lack of jurisdiction, a motion for early PSR, a motion for discovery and evidence, a motion for "a true and correct record", and a motion to clarify and modify the conditions of supervised release. Docs. 744 through 750.

On November 21, 2022, this Court commenced the revocation hearing addressing defendant's motions. The court denied the motion to disqualify the judge. The Court next rejected Mr. Stilley's motion to appoint standby counsel, concluding the motion appeared to be "an ill-conceived attempt to manipulate the process and derail this hearing." Doc. 768 at 7. The Court then denied Mr. Stilley's motion to quash the summons and dismiss for lack of jurisdiction. *Id*. at 8.

At this point the Court paused and gave Mr. Stilley an opportunity to avoid going forward with the revocation hearing, explaining that the conditions of supervised release at issue are "the law of the case;" the only issue was whether Mr. Stilley violated the conditions. *Id*. at 9. The Court then offered to "wipe the slate clean" and continue Mr. Stilley on supervised release, with the condition he

agree to comply going forward. *Id.* at 13. Mr. Stilley's request, the Court briefly recessed for Mr. Stilley to consult with the government, the probation office and with the CJA attorney who was present. *Id.* at 14.

Following the recess, the government indicated the parties had reached a tentative agreement pending the Court's resolution of Mr. Stilley's motions. *Id.* at 14-17. However, Mr. Stilley quickly made clear he was unwilling to unequivocally agree to comply with the conditions the Court went forward with the revocation hearing. *Id.* at 20. The court denied Mr. Stilley's motions for an early presentence report, discovery, and for a "true and correct record," and deferred ruling on the motion to modify release conditions. The Court denied Mr. Stilley's request for a fifteen to thirty-day continuance to retain counsel, noting that the revocation allegations had been pending for more than two months and Mr. Stilley knew of his right to retain counsel. *Id.* at 21-22.

At the hearing, U.S. Probation Officer Ryan Forsyth testified Mr. Stilley was aware of all his conditions of supervised release and that Mr. Stilley violated the four conditions of supervised release detailed in the amended petition. *Id.* at 24. Officer Forsyth described how Mr. Stilley refused to allow the installation of monitoring software on his electronic devices and declined to provide his account usernames and passwords despite repeated requests. *Id.* at 28-29. Officer Forsyth also testified Mr. Stilley failed to disclose his bank accounts, assets, and monthly income and expenses, replying "5th Amendment" to many of the questions. *Id.*

at 31-41. Mr. Stilley cross-examined Officer Forsyth but offered no evidence of his own. *Id.* at 44-80.

This Court found the government had proved "beyond a reasonable doubt" Mr. Stilley violated two of the supervised release conditions that did not implicate the Fifth Amendment: the electronic monitoring software condition, and the condition requiring defendant to provide usernames and passwords for his online accounts. *Id.* at 101. This Court also found that Mr. Stilley failed to comply with the financial reporting and supervision conditions but decided it would leave those violation "pending and unadjudicated" pending a motion to modify conditions. *Id.* at 101. This Court invited Mr. Stilley to supplement his motion to modify conditions within 21 days. *Id.* at 101-02.

The government argued the Court should imprison Mr. Stilley for two years with no additional supervised release, asserting incarceration was necessary and that Mr. Stilley's "total noncompliance" wasted the resources of the U.S. Probation office. *Id.* at 104-06. Mr. Stilley incorrectly contended the maximum available term was one year of imprisonment and requested a stay of whatever sentence the Court imposed or, alternatively, home confinement. *Id.* at 106-16. The Court sentenced Mr. Stilley to three months' incarceration, to be followed by 33 months of supervised release. The Court reimposed the conditions of supervised release, denied the requested stay, and remanded Mr. Stilley. *Id.* at 117-21.

## Current Violations

U.S. Probation identifies nine violations in its petition.

1. Violation of Standard Condition No. 7: Mr. Stilley failed to maintain full-time employment and failed to notify U.S. Probation within 72 hours of his loss of full-time employment.

REVAMP terminated Mr. Stilley's employment with them May 1, 2024. Mr. Stilley notified U.S. Probation of his termination by electronic mail sent late on May 5, 2024; he asserts the delay resulted from his observation of the Sabbath. Despite U.S. Probation offering assistance for Mr. Stilley to find appropriate employment, Mr. Stilley has not obtained full time employment. The only potential employment Mr. Stilley identified to U.S. Probation involved Mr. Stilley interacting with individuals with criminal records, which would have been in violation of Mr. Stilley's terms of release absent permission from U.S. Probation. Based upon the problems at Mr. Stilley's employment with REVAMP, U.S. Probation declined to authorize the new employment.

Contrary to Mr. Stilley's speculations and allegations, federal employees did not "agitate[] to get Stilley fired." Doc. 811 ¶9. When REVAMP initially hired Mr. Stilley, REVAMP and U.S. Probation reviewed protocols with respect to Mr. Stilley's requests for authorization to communicate with incarcerated individuals as part of his employment.

On April 12, 2024, REVAMP's President telephoned U.S. Probation advising they were having issues with Mr. Stilley including communicating with incarcerated individuals on REVAMP's behalf but without REVAMP's knowledge;

REVAMP's President also expressed concern regarding Mr. Stilley making questionable expenditures using REVAMP's debit card. REVAMP's President stated she directed Mr. Stilley to provide a variety of documents by 4:00 p.m. regarding these concerns and that his employment would be terminated if he failed to comply.

Eleven days later, on April 23, 2024, REVAMP's President and Executive Director together telephoned U.S. Probation. They stated Mr. Stilley had failed to provide the requested documentation and said they planned to terminate Mr. Stilley's employment. Mr. Stilley failed to perform requested tasks, and also failed to show the more than $4,000 he spent on office supplies using REVAMP funds were for REVAMP-related business. REVAMP agreed to notify U.S. Probation when they officially terminated Mr. Stilley's employment. One week later, U.S. Probation telephoned REVAMP's President. REVAMP verbally terminated Mr. Stilley's employment the previous week, but Mr. Stilley indicated confusion and requested clarification from REVAMP's Board of Directors. REVAMP officially terminated Mr. Stilley's employment May 1, 2024.

Mr. Stilley identified another employment opportunity "that would have had exactly the same terms, conditions, pay, and hours as the job at REVAMP." Doc. 811 ¶15. This employment would have necessitated Mr. Stilley communicating with felons. Doc. 802 pp. 16-17. Because Mr. Stilley's had unauthorized communications with inmates while at REVAMP, U.S. Probation declined to authorize this new employment. U.S. Probation did offer to assist Mr. Stilley in

finding new employment; Mr. Stilley did not avail himself of this offer and remains unemployed more than six months after being fired from REVAMP.

2. <u>Violation of Special Condition No. 2(e)</u>: Mr. Stilley failed to complete personal financial affidavit and authorize release of any and all financial information

As with Mr. Stilley's prior revocation, he continues to provide insufficient information including affidavits on which he asserts the privilege against self-incrimination in response to most of the financial information sought. Doc. 802 pp. 18-42. Mr. Stilley refused to provide U.S. Probation with any justification for his assertion of the privilege.

On June 7, 2024, U.S. Probation inquired about a January 4, 2024, $2,540 deposit into Mr. Stilley's Arvest Bank account. Mr. Stilley stated the money was procured legally but refused to further discuss the $2,540 deposit. While Mr. Stilley provides U.S. Probation with copies of his Arvest Bank statements and checks written on the account, he does not provide copies of the deposit items, including the $2,540 DDA virtual deposit made January 4, 2024. See Doc. 802 pp. 43-48.

3. <u>Violation of Special Condition No. 2(a)</u>: Mr. Stilley failed to deposit all income, monetary gains and other pecuniary proceeds into a checking account maintained in his name, to use this account for all personal expenses, and to disclose all other financial accounts to U.S. Probation.

Through monitoring Mr. Stilley's electronic communications, U.S. Probation identified approximately $4,000 received from M.W., apparently related to P.W., a federal inmate, between February and May 2024. Mr. Stilley did not deposit these payments into the Arvest Bank account. These payments included a $3,000 U.S. Bank Cashier's Check dated February 27, 2024, payable to an individual sharing

Mr. Stilley's surname. Doc. 802 p. 19. On May 20, 2024, M.W. texted Mr. Stilley that she had just sent him a $1,000 check, to which Mr. Stilley replied, "Perfect! Thank you!!" Doc. 802 p. 19. Mr. Stilley's communications with M.W. continued into August 2024.

4. Violation of Special Condition No. 7(b): Mr. Stilley failed to pay the costs related to the monitoring systems for his electronic devices

Following release from imprisonment following his first revocation, Mr. Stilley permitted the installation of monitoring systems on his cellular telephone and computer. On July 23, 2024, the monitoring company notified U.S. Probation that Mr. Stilley had revoked authorization for automatic payments for this service. The monitoring company placed Mr. Stilley on invoice billing. On August 30, 2024, Mr. Stilley told U.S. Probation he would not pay any bills for the monitoring systems.

Mr. Stilley refuses to pay for the monitoring systems despite being directed to do so by U.S. Probation. As of September 30, 2024, Mr. Stilley owes $259.56, with $86.52 monthly charges accruing the 23rd of each month. Mr. Stilley's stated reason for ceasing payment is that the price increased.

Despite Mr. Stilley's non-payment, monitoring continued. However, on September 4, 2024, communications ceased from Mr. Stilley's cellular telephone. The next day communications also ceased from Mr. Stilley's computer. The monitoring company notified U.S. Probation of the interruptions on September 8, 2024. When asked about this by U.S. Probation, Mr. Stilley would not answer.

Using Corrlinks, U.S. Probation determined that Mr. Stilley made numerous communications with incarcerated persons since September 8, 2024, confirming Mr. Stilley's use of an unmonitored internet-connected device without permission from U.S. Probation. Doc. 802 pp. 78-81.

5. Violation of Standard Condition No. 8: Mr. Stilley communicated and interacted with persons he knew had been convicted of felonies without permission of U.S. Probation.

Mr. Stilley communicated and interacted with at least five persons he knew had been convicted of felonies without U.S. Probation's permission, including the following:

On June 3, 2024, communicated with W.B.D. (convicted of discharging a firearm during a drug trafficking crime) Doc. 792 p. 82;

on May 27 and May 28, 2024, communicated with M.A.D., Jr (convicted of 21 U.S.C. §841(a)(1) and (b)(1)(A) and 18 U.S.C. §924(c)) Doc. 802 pp. 68-76;

on July 14, August 18 and 19, September 21 and 24, 2024, communicated with T.H. (convicted of 21 U.S.C. §841(a)(1) and 18 U.S.C. §924(c)(1)(A)(i)) Doc. 802 pp. 77-90;

on June 3, 2024, communicated with R.D.L.C-J (convicted of 21 U.S.C. §§963, 952, 846 and 841A) Doc. 792 pp. 86-89;

on August 27, 28 and 29, 2024, communicated with K.J.N. (convicted of A.C.A. 5-13-301(a)(1)(A) – Terroristic Threatening in the First Degree) Doc. 802 pp. 68-76;

between March 29 and October 3, 2024, communicated with J.M.P. (convicted of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846) Doc. 802 pp. 104-167; and

between September 12 and 29, 2024, communicated with P.M.W., Jr. (convicted of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 851 and 860(a), and 18 U.S.C. §§ 924(c)(1), 922(g)(1), 922(g)(3) and 924(a)(2). Doc. 802 pp. 167-256.

6. Violation of Special Condition No. 5: Mr. Stilley engaged in activity constituting the unauthorized practice of law.

The Arkansas Judiciary website provides that "[t]he practice of law includes any services of a legal nature rendered outside of courts and unrelated to matters pending in the courts, including conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all action taken for them in matters connected with the law." https://arcourts.gov/courts/supreme-court/boards-committees/committee-unauthorized-practice-law/home/faq#. Arkansas criminalizes the unauthorized practice of law with the intent to obtain an economic benefit as a Class A misdemeanor. A.C.A. § 16-22-501. Prohibited conduct includes "contact[ing] any person by telephone or in person for the purpose of soliciting business which is legal in nature, as set forth [in the statute]." *Id.*

On numerous occasions, and with respect to at least two individuals J.M.P. and P.M.W., Jr., Mr. Stilley engaged in activity constituting the unauthorized practice of law.

In early October 2024, Mr. Stilley engaged in a series of communications with J.M.P. providing legal advice and drafting legal papers:

October 1

J.M.P. at 7:19 p.m. the next email i send will have some Answer , I'm wasting hours re trying to find the other copy of that petition for forfeiture, recently during the shakedown and lockdown for 2 weeks flat they took 3 of my shelves out of my locker that I'm remaking again out of cardboard. there are hardly any shelves at all in most of our lockers. so to take our shelves that are only cardboard , and would only be in the same exact spot if they were not taken out is dubious. it sucks not having adequate organization or proper due process .

Stilley at 9:06 p.m. It is without controversy an attack on organization. Don't give up. Build back, just like beavers never give up and always build back. You absolutely have to have shelves.

Keep me posted on progress. The state of Missouri has made it nearly impossible to turn pleadings back into the original document, with Adobe Acrobat. Otherwise I'd email you the petition.

Use all your resourcefulness to keep access to me and the free world. Think. Think about what others need and what you need. Put your shoulder to the needs of other inmates. Work together. Things will get better.

J.M.P. at 10:49 p.m. hey tommorrow [sic] ill finish the rest up on defenses , and tort conversion.

October 2

Stilley at 8:58 a.m. Perfect! It's looking good so far.

J.M.P. at 11:35 a.m. The 2nd affirmative defense is it is not illegal for Mr [ ] to possess the united states currency that officers illegally seized in the first place. At the time officers first initially seized the currency it was not found in close promoxity [sic] to controlled substance and was not intended to be furnished for any controlled substance or to facilitate criminal activity. it must be strongly noted that at the time of officers first initial seizure of Mr. [ ] wallet and currency officers did not have any reasonable suspicion or probable cause to believe Mr. [ ] was involved in any criminal activity , it was not readily apparent that the wallet and phones were incriminating in character at the time officers reached into [ ] vehicle without a warrant or probable cause and seized those items of personal property out of the vehicle before an arrest was even confirmed or showing active. [ ] is the legal owner of the seized property and he is legally entitled to its return as this is evident by proof of his income , bank statements , irs tax records, bill of sell, etc ..

Stilley at 11:40 a.m. Subject Re: affirmative defenses

Got it. Are you now going to work on a counterclaim? I just want to know when you're ready for me to work.

J.M.P. at 10:50 p.m. do you think the duress and or fraud claim are worth adding in there? n i think it covers it , add more or take more from it , to make it worth for litigation. etc., and request for jury trial and declarartory relif?? [sic]

October 3

Stilley at 8:26 a.m. Let me draft something up for you. I'll send it on Trulincs. You'll see formatting issues. Everything will be ok when I send you the hard copy. I'll just want you to tell me what needs to be changed.

Stilley at 12:00 p.m. emailed draft of an amended answer and counterclaim for J.M.P. in Missouri state court.

Stilley at 12:34 p.m. Review the complaint. Compare it to what you sent me. Tell me what is redundant, such that I should take it out.

Tell me what is missing, and where I should put it in. Remember, I have everything you sent me. I can copy and paste. Make it as easy as you can on yourself.

Stilley at 12:36 p.m. I just looked it up. Blue360 sells a Missouri Criminal and Traffic Law Manual for $78. It comes with an electronic copy as well. Try at the law library, see if they'll take delivery, keep the digital version, and put that on their computers. That would leave you with the hard copy.

I know about the money situation. Someone else needs this or needs help getting the legal materials. Talk to your friends, try to find a way.

J.P.M. at 2:21 p.m. ok i got someone that may be calling you , that we ralked [sic] about, dude comes from a great family, smart, was successful out there tell [sic] the feds got him.

Stilley at 2:29 p.m. Subject: Re Demand for Jury Trial

That sounds complicated. Do you really want that kind of language? The statute is simple. Here's what it says.

513.612. Right to file motion to dismiss - jury trial. -Any party may bring one motion to dismiss at any time and such motion shall be heard and ruled on within ten days. Any party may demand a jury trial.

If you get too wordy and complex, the judge will take note.

J.M.P. at 4:49 p.m. Subject: the counterclaim

i only put some suggestions in there on tort of conversion, i used it from artifial [sic] intelligence, so with that i used two different copies, that i need your expertise on reformationg [sic] it to fit the facts of this case. because the element are dominion or control over the property that is inconsistent with the rights of the owner, as my rights were to leave it with my driver (as i was a passenger in the car i owned) , so to seize and impound the car from my driver who is not arrested is a clear violation of my rights cause the owner or owners representive [sic] have a clear right to control that vehicle because it is no safety hazard and as he was not arressested [sic] my operator always retained the ability and permission to keep the keys and car that he had for weeks. impounding the keys prevented my operator from making his own arrangements in a timely

manner for its safekeeping, my appeal attorney has a corrected brief that he filed with court of appeals that he done well , its the very last brief he filed , keep in mind is another true fact is our friend showed up with a license to remove the car in a timely manner BEFORE the POLICE TOW OPERATOR DID , and officercers [sic] refused to relinquish my car to my friend that showed up with a license , my operator had 48 hours according to policy to remove the car, officers refused to give the keys back to the operator that is unarrested [sic] and not ticketed.

J.M.P. at 4:49 p.m. Subject: paragraph ten

Dryden had expired license, so he could stay with the car and make his own arrangements so you need to change paragraph ten

Stilley: at 4:51 p.m. Tomorrow is Feast of Trumpets, so I won't work, and of course won't work on the weekly Sabbath. I think your deadline for getting something in the mail is Monday the 14th. I'll try to get things together for you on Sunday, although it may well take into Monday.

For your ready reference I'm pasting in a Missouri rule. I think you'll be ok, but want you to be comfortable with what you're doing. My thinking is that even if you feel the need to request an extension, you can do it next week. But I'm not making the call on that.

J.M.P. at 4:49 p.m. im not sure if defense four is against or for our argument for what the whole purpose is ? so if you think it will weaken the purpose , then leave it out , or if it will weaken our main arguments then take it out ? Please use discretion [sic] in deciding one way or other , as my experience is not great.

Stilley at 4:56 p.m. I got your three messages. I saved them, will go over them Sunday. I'll get this reworked for you and sent back for your review. I'm also working on some discovery."

Mr. Stilley also provided legal advice to P.M.W., Jr., including editing P.M.W., Jr.'s remedies request, drafting a Section 2255 motion, and sending P.M.W., Jr. legal materials between April 15 and September 17, 2024. Doc. 802 pp. 169-249.

7. <u>Violation of Mandatory Condition No. 1</u>: Mr. Stilley committed a crime.

On July 12, 2024, Mr. Stilley walked into the Crawford County Courthouse and presented a completed and signed Arkansas Voter Registration Application.

Mr. Stilley checked "no" to "Have you ever been convicted of a felony without your sentence being discharged or pardoned." Mr. Stilley handwrote "I have not been lawfully convicted of a felony by a lawful court." Immediately under the signature line the form contains the statement, "The information I have provided is true to the best of my knowledge. I do not claim the right to vote in another county or state. If I have provided false information, I may be subject to a fine of up to $10,000 and/or imprisonment of up to 10 years under state and federal laws." The Crawford County Clerk accepted Mr. Stilley's voter application and prepared a Registrant Information Card and Registrant Receipt for Mr. Stilley.

On September 24, 2024, the Crawford County Court issued an arrest warrant for Mr. Stilley on the charge of perjury, a Class C felony pursuant to A.C.A. §5-53-102. The Arkansas prosecuting attorney charged Mr. Stilley with perjury in an information filed October 8, 2024. Currently trial is scheduled for May 6, 2025.

In his response, Mr. Stilley asks "that this Court take judicial notice" of the charge, and asserts the charge consists of "gibberish in sentence fragments, and . . . verbatim reproduction of the Arkansas Code." Doc. 811 ¶¶52-53. Mr. Stilley's defense to the allegation appears to be his assertion that he has never been "lawfully convicted by a lawful court." *Id.* ¶58. A trial jury in the Northern District of Oklahoma convicted Mr. Stilley; Mr. Stilley served more than ten years in prison following his conviction, and the Tenth Circuit affirmed both Mr. Stilley's conviction

and sentence. Mr. Stilley lied when he falsely represented to the State of Arkansas on his voter application that he had never been convicted of a felony.

8. Violation of Standard Condition No. 9: Mr. Stilley failed to notify U.S. Probation of his arrest within 72 hours.

Mr. Stilley's response appears to admit to this violation. Despite being arrested for perjury, Mr. Stilley did not notify U.S. Probation. In his response, Mr. Stilley asserts he "listened to the prosecutor saying he was in contact with US Probation and they were considering a revocation hearing." *Id.* ¶ 60. Mr. Stilley then asserts he was in custody for more than 72 hours and did not have the wherewithal to telephone U.S. Probation. *Id.* ¶ 62. Mr. Stilley finally claims that "informing US Probation of this false arrest would have been tantamount to confessing to an infamous crime and a felony that carries up to 2 years in prison," and that "[t]he 5th Amendment protects against any such forced confessions." *Id.* ¶¶ 63-64. Had Mr. Stilley done as required by the terms of supervision (to which he did not object) and advised U.S. Probation of his arrest, he would not be admitting to the validity of the underlying charges. The Fifth Amendment Privilege against self-incrimination is not implicated. Instead of complying, Mr. Stilley made yet another conscious decision to violate the terms of his release.

9. Violation of Standard Condition No. 4: Mr. Stilley failed to make restitution payments.

To date, Mr. Stilley has paid $4,621.53 towards his $792,988.33 Court ordered restation. Mr. Stilley last made a payment towards his restitution obligation on July 8, 2024, in the amount of $131.00. Mr. Stilley appears to admit the violation, pointing out that the Arkansas Department of Revenue has been returning the restitution he paid. Doc. 811 ¶66. It appears during Mr. Stilley's incarceration the Arkansas Department of Revenue wrote off Mr. Stilley's tax obligations and therefore cannot accept payments on those written off debts. To that end, the Government the Court order Mr. Stilley's future restitution payments be paid to the Internal Revenue Service, to whom the Court ordered Mr. Stilley to pay $684,653 in restitution. Doc. 338.

**Guideline Calculations and Recommendation**

Mr. Stilley committed multiple violations of his terms of supervised release, the most serious for Guideline purposes being his commission of a felony. This qualifies as a Grade B violation. U.S.S.G. §7B1.1(a)(2). While the Guidelines state that "[u]pon a finding of a Grade A or B violation, the court shall revoke probation (U.S.S.G. §7B1.3), revocation is discretionary. With a Criminal History Category I, upon revocation for a Grade B violation the Guidelines recommend a term of imprisonment between four and ten months. U.S.S.G. §7B1.4.

The United States Code Section 3583 provides that upon revocation a Court may impose a maximum of a two-year term of imprisonment where, as here, the

conviction that resulted in the term of supervised release is a class D felony. U.S.C. §3583(e)(3).

Given Mr. Stilley's resistance to supervision, demonstrated by his twice violating the terms of release, the United States recommends the Court revoke his supervision, impose a two-year term of imprisonment, and not waste U.S. Probation's or the Court's time with any additional term of supervised release following the term of imprisonment.

## Conclusion

Based upon the foregoing, the Government respectfully requests this Court find that Mr. Stilley violated his terms of supervised release, revoke Mr. Stilley's supervision, and sentence him to two years imprisonment for the violation.

Respectfully submitted,
CLINTON J. JOHNSON
United States Attorney

*/s/ Charles A. O'Reilly*

Charles A. O'Reilly, CBA # 160980
United States Department of Justice, Tax Division
Trial Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
202-616-0115
charles.a.o'reilly@usdoj.gov

**Certificate of Service**

I certify that on November 10, 2024, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System which will send notification to the following ECF registrant:

Oscar Amos Stilley
Defendant *pro se*

*/s/ Charles A. O'Reilly*
Charles A. O'Reilly
Trial Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA PLAINTIFF

v. Case No. 4:09-CR-043

OSCAR AMOS STILLEY DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION TO DISQUALIFY STEPHEN P. FRIOT FOR BIAS AND INTEREST AND THE APPEARANCE OF SAME, WITH INCLUDED BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1. This revocation proceeding is a "criminal prosecution" within the meaning of the 6th Amendment.

2. This Court in the person of Stephen P. Friot is actually biased and prejudiced, and furthermore interested in the outcome of this proceeding, to such extent as to bar him from presiding.

3. There is an appearance that Stephen P. Friot is biased and interested in this litigation, such that the law forbids him to preside.

4. A brief in support of this motion is attached.

5. Stilley reserves and claims the right to rely on any other part of the official record in the captioned case, from the filing of the first docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP) 10(a), in support of his claims and arguments.

WHEREFORE, Stilley respectfully requests that Stephen P. Friot recuse himself from the captioned criminal case; that Judge Friot inform the district court clerk that a duly authorized OKND judge should be randomly selected; and for such other and further relief as may be appropriate whether or not specifically requested.

Respectfully submitted,

By: /s/ Oscar Stilley November 12, 2024
Oscar Stilley Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
oscarstilley@gmail.com

**BRIEF IN SUPPORT OF MOTION**

28 USC 455 provides in pertinent part:

**(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which **his impartiality might reasonably be questioned.**
**(b)** He shall also disqualify himself in the following circumstances:
**(1)** Where he has a **personal bias or prejudice** concerning a party, or **personal knowledge of disputed evidentiary facts** concerning the proceeding;
**(Emphases to show claims in this motion)**

This Court has committed many wrongful acts against Stilley, ***but for*** many of which Stilley would never have suffered his wrongful conviction and incarceration. Anyone interested in further information should feel free to read Stilley's bar complaint against Jeffrey Gallant. If that's not enough, that document leads the reader to other material, which at minimum would take many hours to read. It is neither necessary nor productive to say these things again.

**THE CORE OF STILLEY'S COMPLAINT – AN EMBEZZLEMENT SCHEME**

Judge Friot is knowingly protecting and facilitating an embezzlement scheme, described at pages 3-5 of a 5-16-2024 letter to Clinton J. Johnson, OKND US Attorney. This scheme is being used to steal from the US Treasury and also from the payors of criminal restitution.

On 05/25/2023 Stilley filed Dkt. 780, a motion to allow the use of www.pay.gov as a means of paying criminal financial obligations. On 5-26-2023 at 9:29 AM this Court by Minute Order 781 referred the matter to Magistrate Judge Jayne. Just over an hour later, at 10:34 AM the same day, this Court terminated the referral by Minute Order 782.

The likely basis for this event is as follows. As soon as this order hit the email accounts listed in #781, somebody with an email account at the domain @usdoj.gov made contact with the Court, whether directly or indirectly. They explained that this order is altogether untenable.

Why? Because the US Attorney's Office of the OKND, in concert with many other US Attorneys' offices, and the Administrative Office of the Courts embezzle money from the US Treasury. Stilley's plan to require the US Attorney and the OKND Clerk's office to accept www.pay.gov for criminal restitution payments would ruin their embezzlement scam altogether.

It would be perfect for payroll services and employers. They would no longer have to send checks or money orders. They would be able to set up automatic deductions, so that the money would be automatically paid, on time, every time, with minimal effort and cost.

For Stilley the benefit would be huge. He would never have to write another check for criminal restitution. He would set up his $131 per month payments, to be paid on the same day every month, reliably. He would have reliable records, both from his own bank and from www.pay.gov. Stilley's money would automatically be forwarded to the proper payee. There would be virtually no work involved with logging money orders or cashier's checks or cash. The computer would move the money efficiently and accurately.

The fly in this wonderful ointment? Certain lawless individuals in power in the OKND have been stealing the money and using it for their own personal benefit. The ***availability*** of www.pay.gov will put OKND Embezzlers, Inc., out of business.

What did this Court do? In the docket entry for Dkt. 784 we can see that the Court ordered the parties to take 28 days to have discussions and come up with:

> *... arrangements for the payment of dft's restitution installments which will be workable for all concerned and will avoid, to the extent possible, unnecessary transaction costs.*

Jeffrey Gallant filed Dkt. 785 as a ***sealed*** document,[1] inaccessible to the public and the press. Gallant's an incorrigible liar and a *freelance* thief, who doesn't want the public to see what he says. He knows *for a fact* that various officials and employees of the OKND run an embezzlement scheme – and wants to protect it. He most certainly could have told his co-conspirators that the gig is up, they can ***keep what they've got***, but can't embezzle *any more* money, because Stilley's about to bust their chops. He chose not to take that course.

This Court in Dkt. 786 *sua sponte* struck Dkt. 780 as moot. Stilley's pretty sure this was done because the principals of OKND Embezzlers, Inc., requested it. That's one of the reasons Stilley needs Stephen P. Friot as a witness – he has *personal knowledge* of relevant facts.

This Court will doubtless want some good evidence of these harsh accusations. That's perfectly fair and will be provided. Consider *US v. Shearer, et al*, Eastern District of California (CAED) Case No. 2:12-CV-02334.

The government presented declarations under penalty of perjury that all credits against the account of Dr. L. Richard & Diane Shearer had been accounted for. Dkt. 37-41.[2] They claimed that the Shearers owed $368,377.94 as of 9/30/2014. Dkt. 86. They got a partial summary judgment in that amount. *Id.*

A certain disbarred and disgraced former lawyer happened to notice that the Shearers hadn't gotten credit for the $5,000 paid as restitution in *US v. Bullock, et al*, Eastern District of California (CAED) 2:00-cr-00345.[3] Someone suggested that Diane Shearer proceed *pro se*. A

---

1 Note the lack of filemark headers at the top.

2 Most of the links are to the CourtListener docket. The reader can click through from there to the appropriate pleading.

3 CourtListener has at least the last two pleadings in this case, (167 & 168) but their buttons don't light up.

registered nurse by training and experience, she's an amazing legal writer – with a little help from her friends.

In late 2021 or early 2022, Attorney Joe Izen[4] called counsel for the government about the fact that their statements of account omitted the $5,000 criminal restitution payment.

They clammed up, but they got the memo! On 2-1-2022 they filed in the criminal case Dkt. 167, a motion for an order of disbursement of the $5,000. The motion was granted the next day, in Dkt. 168. None of the attorneys on the criminal case were served with the motion or the order.[5] There was no certificate of service. It appears that the failure to serve opposing counsel (including two lawyers of record on both the civil and criminal cases) was intentional, in furtherance of devious purposes.

On 2-11-2022, Attorney Joe Izen sent a letter to counsel for the government in the civil case. The government ignored this letter. They had already filed the motion and received the order in the criminal case but stayed strictly mum about that. It isn't reasonable to presume that the lack of service (and also a certificate thereof) of the criminal motion was an oversight. They didn't want the affected parties to know about the motion and order in the criminal case.

Diane Shearer discharged her attorney and proceeded pro se. On 9-19-2022 she wrote a letter to counsel for the government asking why they'd clammed up. Dkt. 141 pg. 23. This too was ignored. On April 5, 2023, she sent yet another letter, Id. at 26[6] suggesting fraud on the part

4 Representing certain other defendants in the case.

5 Nothing herein should be construed as a suggestion that the judge who signed the order was aware that the order wasn't going to be duly served, or aware of anything else nefarious.

6 The May 12, 2023 date on the letter is wrong. See the footnote at Dkt. 144, pg. 13. See also the first line of government's response letter April 11, 2023.

of government, amongst other things for refusing to respond to communications about the missing money.

By letter April 11, 2023 (Dkt. 141 pg. 31) -- the government sent an evasive and vapid response pretending that *the criminal judgment* mistakenly instructed Dr. Shearer to direct restitution payments to the *wrong party*.

Diane Shearer filed a 10-page brief (Dkt. 141-1) proving that the government obtained its partial summary judgment (Dkt. 86) by falsehoods they were duty bound to correct. The government responded in opposition. Dkt. 142. Diane Shearer replied on 6-12-2023. Dkt. 144.

The District Court in a minute order at 146 vacated the hearing on Diane Shearer's motion. The judgment at Dkt. 86 was reduced by exactly $5,000. *Id.*

We should all be satisfied, right? The judgment was reduced by $5,000. However, the value of $5,000 in 2005, approximately the time of payment, is equal to approximately $8,000 in cash at the time of the minute order in 2023. Plus that order ignored other amounts including but not limited to the prison wages of Dr. Shearer.

That's not the worst of it. *Not even close*.

Three defendants paid court-ordered restitution of $5,000 each. See Minutes for Dkt. 117, 118 and 120. The government knew exactly who had paid restitution. Look at the title of their motion. Dkt. 167. Look at the text of the motion, and the relief granted. Dkt. 168. The government had a duty to remit not $5,000 to the US Treasury, but $15,000.[7] The embezzlers had stolen the restitution money of ***all three defendants***. They got an order to pay the restitution

[7] Actually more than $15,000, because they collected and stole other funds as well.

***of all three*** over to the US Treasury. They only paid the $5,000 of Dr. L. Richard Shearer. They **did not** pay over the $5,000 payments of Dr. Bullock or Dr. Pfeiffer.

Why? Because the powerbrokers of CAED US Attorney's office, and others in that district and at many other US federal districts, and at the Administrative Office of the Courts, are *embezzlers*.

Does the government's theory of ***incapacity*** to pay the IRS, based on the language of a judgment *they most probably drafted or at least contributed to*, make any sense? Absolutely not. The restitution collected was held *in trust* for the US Treasury.

Here's how it works. They collect money in a way that will create the weakest possible paper trail. That's why they won't take personal checks. A bounced check will cost $53, and exposes the supervisee to 2 years in prison, an infamous crime if such thing exists. Criminal defendants have no interest in bouncing checks. The principals of Embezzlers, Inc.,[8] don't want checks because they create a paper trail. The criminal defendant can prove the exact amount and timing of the criminal restitution payments 10 or 20 years later. The banks ***have to keep the records***.

The use of www.pay.gov is pure poison to Embezzlers, Inc.[9] The money will hit the government's account ***every time on time***. Any auditor will insist that the money be disbursed – especially to payees such as the US Treasury – probably the next day, or at least within scant

---

8 The parent company of OKND Embezzlers, Inc.

9 While Stilley was making inquiry of the proper personnel of OKND, he learned that the pressure to refuse to allow www.pay.gov came from the Administrative Office of the Courts. That's how Stilley knows they're involved. People virtually always behave ***in ways they perceive to be in their own economic interests.***

days. The payments will be automated, and out of the reach of the sticky little fingers of federal prosecutors.

If www.pay.gov is an authorized method of payment, the thieves can't obfuscate the record. They can steal little if anything, and only at great risk to themselves. ***They're screwed***. They'll have to content themselves with their lavish taxpayer supplied salaries and luxurious perks.

How much did they steal in CAED? It's impossible to know, but the presence of over $600,000 (Dkt. 141, pg. 18-21) in unclaimed funds proves they've stolen that ***far more*** than that. They've been running their scam for at least two decades. Their *modus operandi* is to transfer it from one account to another, always but always making sure they have enough money to pay back any sums upon complaint by the aggrieved party.

Consider now the logic of saying that three slugs of $5,000, allegedly due to the US Treasury, are ***all*** unclaimed funds. The US Treasury is less than 2 miles from the US Department of Justice. In other words, the powerbrokers who have emails at the domain @usdoj.gov have their office literally in walking distance of one of their biggest clients. Yet they falsely claim that funds payable to the US Treasury are "unclaimed." It's their ***client***, for Pete's sake. They claim they can't find their ***own client*** – as soon as *the restitution check clears the bank*!

Why didn't they pay the ***other two*** $5,000 restitution payments, after getting caught with their hands in the cookie jar? Because they're convinced that the other two payors won't make an issue of it. They can use the prosecutorial might of the US Department of Justice, to bully their victims into silence.

How do we know that money wasn't paid? It's pretty easy to ask friends. If the government wants to claim that Stilley is lying or exaggerating, they should feel free to produce

evidence from official records, proving that the restitution of Dr. Bullock and Dr. Pfieffer was 1) paid over to the US Treasury, and 2) that these two good doctors got their constitutionally required ***due process notice*** that the money was paid. After all, Judge Friot said that all the facts are up for decision. Dkt. 807 pg. 2.[10]

Why? Because it is ***restitution***. They're entitled to show the $5,000 restitution as a deposit of taxes, essentially a prepayment, on a current tax return. A restitution payment to the IRS can be separated into two separate and distinct events: 1) the IRS gets tax money, 2) the restitution payor gets a credit against his tax liabilities. The embezzlers of OKND and CAED have stolen from the IRS, and ***also*** from the payors of criminal restitution.

The government holds restitution money ***in trust nevertheless***, for the benefit of the true owner. Restitution money collected ***is not*** the property of the Clerk, or the US Attorney's Office, or their "Financial Litigation Unit." Restitution money is held in trust for the injured party. In *US v. Bullock et al*, the injured party is the US Treasury.

What's the rule for trust funds? Justice Benjamin Cardozo said it well when he said trustees owe the beneficiaries *the punctilio of honor the most sensitive*. *Meinhard v. Salmon*, 164 NE 545, 249 NY 458, 229 NYS 345 (1928) If you don't know where the money goes, you do one of three things; 1) find the true owner and pay the money over, promptly, 2) move the court for instructions, with 5th Amendment due process notice and opportunity for the criminal defendant to be heard, or 3) return the money to the criminal defendant. Restitution orders in criminal judgments are not designed to enrich crooks in US Attorney's Offices, etc. They're designed to ***make injured parties whole***.

What does Stephen P. Friot stand to gain by sending Stilley to prison?

---

10 Defenses and affirmative defenses logically have to be included in that calculus.

1) Stilley's meritorious petition for certiorari to the US Supreme Court in *Stilley v. Thurston et al*,[11] Ark. Sup. Ct. 24CV453 is almost certainly destroyed. The dismissal of Stilley's petition was founded solely upon the theory that Stilley's voter registration wasn't valid – which requires the overruling of decades of 6th Amendment precedent.
2) Stilley's ability to defend State v. Stilley, a frivolous state perjury charge, gets bombed back into the stone age.
3) Stilley's ability to prosecute an appeal in this case is likewise rendered exceedingly difficult if not impossible.
4) Stilley's ability to prosecute a declaratory judgment action, in which requests for admissions must be ***actually answered***, is nearly destroyed.
5) Stilley's ability to appeal the denial of ethics charges to the California Supreme Court for all practical purposes vanishes.
6) Judge Friot silences Stilley's complaints about the embezzlement racket of *inter alia* the OKND.

Who disbelieves the guilt of Oscar Stilley? Consider this short list:

1) Five of the best hotshot lawyers at the Arkansas Attorney General's Office obviously don't believe Stilley's guilty – they defaulted on three motions, two of which were dispositive.
2) Six judges of the Arkansas Supreme Court – they didn't even acknowledge the defaulted motions or the pending discovery, in their *per curiam* dismissal order.

11 The official docket and pleadings are available here.

3) Kevin Holmes, Crawford County Prosecutor who stalled as long as possible, then charged Stilley with gibberish that does not even arguably allege a crime.

Judge Friot has already told the prosecutors in this case that they should feel free to disregard allegations "which question or challenge any aspect of the validity or legality of the underlying prosecution and convictions." Dkt. 775. In other words, they should feel free to disregard the oath of Oklahoma attorneys at law. Falsehoods once uttered must never be corrected. Furthermore, an unquestionably ***void*** judgment must be honored as if it were valid. If that's not proof of a belief that Stilley is innocent, please say what is.

What did Judge Friot say about the harsh effects of incarceration on a criminal defendant? See Sentencing TR 466-467:

> 24 On the issue of remand, let me first say, gentlemen, that
> 25 I am fully cognizant of the seriousness of this question,
> 466
> 1 especially as it applies in your situation having invoked your
> 2 right, as you have, and it's an important right, to represent
> 3 yourselves. And I am fully cognizant of the fact that
> 4 incarceration may well have some impact on your ability to
> 5 proceed representing yourselves. **To the extent that the Court**
> **6 can within the bounds of the law and common sense ameliorate**
> **7 that, then I will be happy to consider anything that the Court**
> **8 might properly address in that regard**.
> (Emphasis added)

Here's how the Court can ameliorate the hardships of incarceration. This is the hierarchy of best to worst, assuming a judgment of incarceration:

1) Stay pending appeal;
2) Home confinement, of which Stilley has already served almost 2 years, as a model prisoner;
3) Self-reporting to prison, preferably after a time to put affairs in order, perhaps 60 days;

4) Sending Stilley to jail immediately. In that case Judge Friot will inflict the maximum devastation on Stilley's ability to defend on appeal.

Defendant's father Ed Stilley had a saying that he used regularly. "Tell the truth if it takes the hair and the hide." Stilley assumes he could get a better deal by falsely confessing to a crime he did not commit. ***No deal!!*** Stilley wants due process, which includes an honest, competent tribunal not affected by bias, prejudice or interest, or the appearance of same.

Judge Friot has no right to sit on this case, because he has made himself the functional equivalent of the driver of a getaway car for a pack of thieves. He *knows* he's helping liars and thieves. Perhaps he forgets that Stilley was charged not only as principal but also as accessory. 18 USC 2. See the indictment at Dkt. 2 pg. 9 & 11.

Before Stilley's offer, consider Stilley's Freedom of Information Act (FOIA) request in his letter 5-16-2024 to Clinton J. Johnson.[12] Stilley on 5-20-2024 received an acknowledgement and extension of time. Almost 6 months later, Stilley has received no further communication. Stilley's FOIA request consists of only 4 paragraphs of rather simple information. The mighty bureaucracy of the US Department of Justice feigns inability to timely comply with the FOIA. We're witnessing stonewalling – neither more nor less.

Here's Stilley's offer to the US Department of Justice and the thieves within it. 1) Quit stealing, 2) Authorize www.pay.gov for criminal restitution on a national basis; 2) Give Stilley a chance to persuade the victims of the theft to forgive the trespasses of the thieves at the US Department of Justice. You ***read that right***. After all the money they've stolen, all the lives they've crushed, all the cruelty they've inflicted on others, they can ***walk away without paying back the money they've stolen***.

[12] US Attorney for the Northern District of Oklahoma.

To do this, Stilley needs access to an official at the US Department of Justice able to bind all persons with an email address at the domain @usdoj.gov.

Don't say it's impossible until Oscar Amos Stilley gets a chance. Stilley is speaking ***based on knowledge***. Stilley wants *peace in the valley* – the very thing Judge Friot claimed to want. See Revocation TR 10, lines 18-23.

It gets better. For every dollar of forgiveness to a thief in the US Department of Justice, the taxpayers will save at least $2 and probably a lot more. This isn't a zero sum game.

He who covers his sins will not prosper. Proverbs 28:13. Some people make a business of uncovering the sins of others. For example consider this article about a TV executive threatened with jail for running ads in favor of an abortion amendment. Or consider an article about a lawyer in a state agency who resigned rather than continue to sign such letters threatening persons for exercising 1st Amendment rights. The lawyer's best line? "A man is nothing without his conscience."

Will the press maintain silence if this Court incarcerates the ***one person*** with the right *and political will* to file a petition for certiorari to the US Supreme Court in *Stilley v. Thurston et al*? If jailing Stilley for that litigation isn't retaliation for 1st Amendment peaceful petition, etc., what does it take?

Stilley has a peculiar habit. He's written a book about it. Hunger Striker's Guide to Juice Fasting. Stilley has filled out the medical record releases and made them available to his friends and family. This isn't a threat to hunger strike – far from it. Stilley doesn't *threaten* hunger strikes. He either does one or he doesn't.

Stilley can be incarcerated without a hunger strike. If the Court rejects this motion and wishes to incarcerate Stilley while keeping "peace in the valley" here's how to do it.

1) Don't tolerate any degradation of Stilley's ability to appeal. Stilley has his files synched to the web via OneDrive. That would allow Stilley's files to follow him to any institution of confinement. Stilley depends on a computer with his chosen software, a printer, a scanner, supplies, unlimited phone and email access, and the ordinary requirements of an office, accessible at least 12 hours per day. Ensure that Stilley and all his fellow inmates have access to such tools for legal purposes, whether or not they're represented by counsel.
2) Don't allow anyone to starve out Stilley or his fellow inmates.
3) Don't allow anyone to deprive Stilley of a decent bed and pillow, something that won't degrade his sleep or destroy his back.

If that's any trouble, home confinement is easy. That degrades Stilley's litigation capabilities little to none.

At some point in time it occurred to Stilley that he's the best pretender at believing that the judgments against him are valid. The time for *pretending* is over. It's time for Stilley to *awaken his conscience*.

**CONCLUSION**

Judge Friot is disqualified by actual bias, personal interest, and prejudice against Oscar Stilley, along with the appearance of same. Recusal is mandatory.

Respectfully submitted,

By: /s/ Oscar Stilley November 12, 2024
Date

Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.

FILED
Nov 15 2024
Heidi D. Campbell, Clerk
United States District Court
Northern District of Oklahoma

AO 245D (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

Northern District of Oklahoma

UNITED STATES OF AMERICA
v.
OSCAR AMOS STILLEY

**JUDGMENT IN A CRIMINAL CASE**
(For **Revocation** of Probation or Supervised Release)

Case Number: 09-CR-043-002-SPF

USM Number: 10579-062

Oscar Stilley, pro se
Defendants Attorney

**THE DEFENDANT:**

☐ admitted guilt to violation of condition (s) ______________________ of the term of supervision.

☒ was found in violation of condition(s) Mandatory, Standard and Special Conditions after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| Special Condition 2(e) | Failed to provide complete financial information | 06/05/2024 |
| Special Condition 2(a) | Failed to disclose and deposit all income, monetary gains or other proceeds into a checking account | 06/07/2024 |
| Special Condition 7(b) | Failed to maintain computer monitoring software installation and pay for monitoring service | 07/23/2024 |
| Standard Condition 8 | Interaction with convicted felons and individuals involved in criminal activity | 07/23/2024 |
| Special Condition 5 | Engaging in unauthorized or unlicensed practice of law | 07/23/2024 |
| Mandatory Condition 1 | New law violation | 07/12/2024 |
| Mandatory Condition 4 | Failed to make restitution payments | 07/08/2024 |

The defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Act of 1984.

☒ The defendant has not violated condition(s) Standard Condition 7 and Standard Condition 9 and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States attorney of material changes in economic circumstances.

November 13, 2024
Date of Imposition of Judgment

[signature]
Signature of Judge

The Honorable Stephen P. Friot, United States District Judge
Name and Title of Judge

November 15, 2024
Date

DEFENDANT: OSCAR AMOS STILLEY
CASE NUMBER: 09-CR-043-002-SPF

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: Twenty-four months.

☒ The Court makes the following recommendations to the Bureau of Prisons:

The Court recommends that, if eligible, the defendant be designated to a facility located in or near FCI Yazoo City.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

- ☐ at __________ ☐ a.m. ☐ p.m. on __________ .
- ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

- ☐ before 2 p.m. on __________ .
- ☐ as notified by the United States Marshal.
- ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this Judgment as follows:

Defendant delivered on __________ to __________

at __________ ,with a certified copy of this Judgment.

____________________
UNITED STATES MARSHAL

By ____________________
DEPUTY UNITED STATES MARSHAL

AO 245D (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 4 — Criminal Monetary Penalties

DEFENDANT: OSCAR AMOS STILLEY
CASE NUMBER: 09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the Schedule of Payments set forth on Sheet 5.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | | | | $ 788,366.80 |

☐ The determination of restitution is deferred until __________________.
An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution | Priority or Percentage |
|---|---|---|---|
| As previously ordered in the Judgment imposed April 23, 2010. | | | |
| **TOTALS** | $ ____________ | $ ____________ | |

☐ Restitution ordered pursuant to Plea Agreement $ ______________________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the Judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The Court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
**Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245D (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 5 — Schedule of Payments

DEFENDANT: OSCAR AMOS STILLEY
CASE NUMBER: 09-CR-043-002-SPF

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payment of $ 788,366.80 due immediately, balance due

☐ not later than ______________ , or

☒ in accordance with ☐ C, ☐ D, ☐ E, or ☒ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after the date of this Judgment; or

**D** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within ____________, (e.g. 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay.

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:

Any monetary payment is due in full immediately, but payable on a schedule to be determined pursuant to the policy provision of the Federal Bureau of Prisons' Inmate Financial Responsibility Program if the defendant voluntarily participates in this program. If a monetary balance remains, payment is to commence no later than 60 days following release from imprisonment to a term of supervised release in equal monthly payments of $50 or 10% of net income (take home pay), whichever is greater, over the duration of the term of supervised release and thereafter as prescribed by law for as long as some debt remains. Notwithstanding establishment of a payment schedule, nothing shall prohibit the United States from executing or levying upon property of the defendant discovered before or after the date of this Judgment.

Unless the Court has expressly ordered otherwise, if this Judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA Assessments, (8) penalties, and (9) costs, including cost of prosecution and court costs.